UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREDERICK WEICHEL ) | |
| ) | C.A. 1:20-CV-11456-IT |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| TOWN OF BRAINTREE, BRAINTREE ) | |
| POLICE CHIEF JOHN VINCENT ) | |
| POLIO, BRAINTREE POLICE ) | |
| OFFICERS JAMES LEAHY, ESTATE ) | |
| OF ROBERT WILSON, ESTATE OF ) | |
| THEODORE BUKER and UNKNOWN ) | |
| BRAINTREE POLICE OFFICERS, ) | |
| ESTATES OF BOSTON POLICE ) | |
| OFFICERS EDWARD WALSH and ) | |
| WALTER DERBY, CITY OF BOSTON, ) | |
| MASSACHUSETTS, and STATE ) | |
| POLICE OFFICERS JOHN R. ) | |
| SPRAGUE AND EDWARD WHELAN ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT EDWARD WHELAN'S**
**MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT**

Defendant, Trooper Edward Whelan, in his individual capacity, respectfully submits this *Motion to Dismiss Plaintiff's Complaint* pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim against him. This case arises out of the investigation into the 1980 murder of Robert LaMonica. Trooper Whelan was so remotely related to this investigation that he is only named in 2 of the 253 paragraphs in Plaintiff's complaint and he is not specifically identified in any of the counts for relief. Plaintiff's complaint does not identify how Trooper Whelan specifically violated any of

1

Plaintiff's constitutional rights and thus should be dismissed on its face for failure to plead a claim. Even if Plaintiff had pled a claim, it should be dismissed because it is barred by issue preclusion, would fail because Plaintiff has not plausibly alleged a due process violation (or any other constitutional violation) and because Trooper Whelan is protected by qualified immunity.

## RELEVANT FACTS

Shortly after midnight on May 31, 1980, Robert LaMonica was shot twice and killed after getting out of his car in the parking lot of his home in Braintree, Massachusetts. Compl. at ¶¶ 38-39. By Plaintiff's own admission, according to the complaint, Trooper Whelan had no role in the initial investigation. *See* Compl. generally. After Plaintiff had been identified as a possible suspect by police and a witness, *Id.* at ¶¶ 52, 63, 89, 94, 99, Trooper Whelan drove in a van around South Boston on June 12, 1980 with another police officer and a witness, John Foley, to see if Mr. Foley recognized anyone as the man he saw running from the murder scene. *Id.* at ¶¶ 52, 101, 103. Mr. Foley identified Plaintiff, and a photograph of Plaintiff was taken from the van. *Id.* at ¶ 105. That photograph was used in Plaintiff's criminal trial. *Id.* at ¶ 107.

The Complaint asserts six counts, including violations of Plaintiff's Due Process pursuant to 42 U.S.C. § 1983 (Count I); Malicious Prosecution pursuant to 42 U.S.C. § 1983 (Count II); Conspiracy to Deprive of Constitutional Rights pursuant to 42 U.S.C. § 1983 (Count III), Failure to Intervene pursuant to 42 U.S.C. § 1983 (Count IV), Intentional Infliction of Emotional Distress (Count V), and a State-law claim for Indemnification (Count VI). Neither Trooper Whelan nor the van rides he allegedly participated in are mentioned in any of these counts.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The grounds of entitlement to relief set forth in the complaint must constitute "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Although the Court assumes the truth of "all well-plead[ed] facts," the Court must also consider documents referenced in the complaint. Conclusory allegations or "naked assertion[s]" devoid of "further factual enhancement" should be disregarded. *Id.* at 557. Thus, Plaintiff must do more than demonstrate "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted).

"The plausibility standard invites a two-step pavane." *A.G. ex rel Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited). *Id.* Second, the Court "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

Any claims against Trooper Whelan should be dismissed for failure to allege any facts showing how he allegedly violated Plaintiff's constitutional rights. Moreover, even

if Plaintiff had included more allegations, his claims would be barred by issue preclusion, would fail because he has not adequately alleged a plausible due process violation (or any other constitutional violation) and because Trooper Whelan is protected by qualified immunity.

I. **The Complaint Fails to Include Sufficient Allegations Against Trooper Whelan.**

Trooper Whelan is only mentioned in two (2) paragraphs (¶¶ 101 and 103) in the complaint, and only vaguely and tentatively, and not at all in any of the six counts. Neither of these paragraphs (or any other paragraph in the complaint) details how Whelan in particular violated Plaintiff's constitutional rights. This dearth of allegations pertaining to Trooper Whelan's conduct plainly fails to "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera*, 521 F.3d at 84.

In an effort to defeat this motion to dismiss, Whelan anticipates that Plaintiff may attempt to tie the vague and, at best weak, allegation that an unnamed defendant allegedly said "isn't he the one" or words to that effect in reference to Plaintiff during the van ride. Compl. ¶ 105. Plaintiff does not allege, however, that Trooper Whelan made this statement. *See id*. It is axiomatic that Plaintiff must plead what wrong each defendant committed and cannot rely on group pleading. *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 67-68 (1st Cir. 2004) (notice pleading standard for civil rights actions requires "minimal facts as to who did what to whom, when, where, and why [. . .]"). This is especially true in cases seeking to attach individual Section 1983 liability; Plaintiff cannot survive a motion to dismiss by grouping Whelan with the four other people in the van and alleging that one of them made the statement in question. *Ortiz v. Saez*, 939 F.Supp.2d 69, 74 (D. P.R. 2012) ("*each* defendant's role [ . . .] must be

sufficiently alleged to make him or her a plausible defendant") (emphasis in original) (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 16 (1st Cir. 2011)). Plaintiff's group pleading is especially egregious here; the underlying record of Plaintiff's criminal trial from 1981 specifically shows that it was not Trooper Whelan who made that statement, but rather Mr. Foley who said, "that's him." [1] *See* Exhibit A at 9.

Nor can Plaintiff attach liability to Trooper Whelan based on allegations of an earlier van ride. *See* Compl. at ¶ 102. There is no allegation that Whelan took part in that van ride, nor does the complaint provide any details regarding the date, time, or specific destination of this alleged ride. *Id*. Moreover, there are no allegations that a contrary identification was made or that Plaintiff was even out to be seen during this undated first van ride. *Id*. The vague idea, and suspect allegation, of multiple van rides is also contrary to record in this case. [2] *See* Exhibit B at 13-14.

Plaintiff has not met "the make-or-break-standard" to state any plausible case for relief against Trooper Whelan and his complaint should be dismissed at this early stage for those pleading deficiencies alone pursuant to Federal Rule 12(b)(6). *Sepulveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.).

---

[1] Judge Mulkern found, after an evidentiary hearing, that it was Mr. Foley who said "that's him." Exhibit A at 9. Plaintiff's quotation in paragraph 105 is undermined both by Judge Mulkern's findings of fact and by the allegation that follows the quotation "or words to that effect." Compl. ¶ 105.

[2] Judge Veary clearly set forth that there was a single "ride-around" South Boston with Mr. Foley: "Additionally, the investigator, again making no effort to distinguish among the four witnesses, testified that "they" had been driven in a van along the streets of South Boston and, upon seeing the defendant, stated that "they" thought him to be the man they saw running in the parking lot. In fact, only Foley among the four witnesses was in the van, and only Foley made an identification." Exhibit B at 13-14.

## II. Plaintiff Cannot Show Any Constitutional Violation by Trooper Whelan

Even if Plaintiff had included more allegations specific to Trooper Whelan, he cannot show that Whelan committed any constitutional violation. As outlined above, none of Plaintiff's six counts specifically mention either Whelan or the van ride that he allegedly participated in. Nor do they provide any basis for a credible allegation that Whelan somehow violated Plaintiff's constitutional rights.

### A. Any Due Process Claim is Barred by Issue Preclusion.

Plaintiff's Count I claims that Defendants in general violated his due process rights, including by allegedly using suggestive identification techniques. Compl. at ¶ 189. Any claim relating to, or based on, the alleged suggestiveness of the June 12, 1980 identification of Plaintiff from the surveillance van, however, is barred by issue preclusion. In *Commonwealth v. Weichel*, Norfolk No. 76394, the Superior Court denied Plaintiff's motion to suppress, finding that while the "pre-indictment quasi-lineup" was unusual, it was not suggestive. *See* Findings, Rulings and Order on Defendant's Motion to Suppress (July 2, 1981), attached as Exhibit A, at 11. Plaintiff did not appeal that specific holding, making it a final judgment on the issue.

"It is 'well-established' that the doctrine of issue preclusion applies to civil rights claims brought under § 1983." *Echavarria v. Roach*, 2017 WL 3928270, at *9 (D. Mass. Sept. 7, 2017) (quoting *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005)). "Federal courts must give to state-court judgments the same preclusive effect as would be given by the courts of the state from which the judgments emerged. *Johnson*, 424 F.3d at 93 (citations omitted). In Massachusetts, the doctrine of issue preclusion provides that when

an issue has been actually litigated and determined by a valid and final judgment, that determination is conclusive in a subsequent action between the parties whether on the same or a different claim. *Jarosz v. Palmer*, 766 N.E.2d 482, 487-88 (Mass. 2002).

In this case, the issue of whether the identification of Plaintiff on June 12, 1980 was unduly suggestive was challenged by Plaintiff prior to his criminal trial through a motion to suppress the identification testimony. *See* Ex. A. Plaintiff challenged multiple aspects of Mr. Foley's identification, including the June 12, 1980 identification from the surveillance van. *Id.* at 1. After a multi-day evidentiary hearing with witness testimony occurring in February 1981, Judge Robert V. Mulkern of the Superior Court denied Plaintiff's motion on July 2, 1981 and allowed the Commonwealth to use Mr. Foley's identification evidence at trial, including the June 12, 1980 identification from the surveillance van. *Id.* at 12.

The Court found the following facts regarding what Judge Mulkern called a "Quasi Line-up":

> 33. On July 12, 1980, beginning around 6:30 pm, witness Foley accompanied Trooper Sprague and Trooper Edward Whelan on a drive through the South Boston area in a police van equipped with one-way glass windows. Also present in the van were Paul LaMonica, Jr. and Frank J. LaMonica, brothers of the victim. *Id.* at 8

> 35. Mr. Foley was instructed to look out of the window at groups of people and to indicate whether he saw anyone resembling the man he had seen on the night of Robert LaMonica's murder. Trooper Whelan was to take photographs of anyone pointed out by Foley.

> 36. Conversation during the trip was limited to directions such as "turn left and turn right," given to Trooper Sprague by the LaMonica brothers, and directions by Trooper Sprague to John Foley to note groups of people (such as "group on the left, group on the right").

> 37. It was a warm evening, and the streets of South Boston were full of people. The van passed approximately two hundred people, many of whom were white males in their twenties.
>
> 38. At the corner of Fifth Street and "I" Street, Foley asked Sprague to circle around and pass the area again. At this point Foley pointed out the defendant Weichell, who was standing in the street and said, "that's him." Trooper Whelan took a picture of Weichell standing in the street just after Foley identified him.

*Id.* at 9.

The court held that the quasi-lineup "though somewhat unusual, was not suggestive" reasoning that "no steps were taken to prompt the witness to identify the defendant. In fact, during the course of the drive through South Boston, the witness saw many young men approximately resembling the defendant." *Id.* at 11-12.

Plaintiff's appeal of his criminal conviction did not challenge Judge Mulkern's holding regarding the "quasi line-up" identification, despite challenging other evidentiary rulings from the trial. *See Commonwealth v. Weichell*, 453 N.E.2d 1038, 1040 (Mass. 1983). Plaintiff was granted a new trial in 2017 based on the nondisclosure of the Leahy Memorandum, which was ruled to be exculpatory evidence found among the records in the custody of an agent of the prosecution. *See* April 10, 2017 Order of Judge Raymond P. Veary, Jr., attached as Exhibit B. Judge Veary's holding that granted Plaintiff a new trial did not turn on whether the "ride-around procedure" on June 12, 1980 was unduly suggestive. *Id.* at 42-45.

Accordingly, Plaintiff is barred from relitigating the issue to support any of his claims because (1) it was fully adjudicated and decided by Judge Mulkern's July 2, 1981 order (2) Judge Mulkern's order is the final judgment on that particular issue and (3) the parties are the same here as they were there. As such, Plaintiff cannot show that the van

ride Whelan allegedly participated in was suggestive, nor can he show that it somehow violated his due process rights.

### B. The Complaint Fails to Plausibly Allege Facts Showing Trooper Whelan Violated Plaintiff's Due Process Rights.

Even if Plaintiff's due process claim was not barred by issue preclusion, he has not adequately alleged how Trooper Whelan himself violated Plaintiff's due process rights. Trooper Whelan had no role in the investigation at all other than riding in a van; he thus could not have committed any *Brady* violations, fabricated evidence, destroyed or failed to disclose evidence. Moreover, Plaintiff does not allege any acts that Whelan in particular took during the van ride that were impermissibly suggestive.

Even assuming the van ride were impermissibly suggestive, that is not the end of the analysis as to whether Plaintiff has plausibly alleged a due process claim. *United States v. Nava-Ruiz*, 515 F.Supp.2d 198, 202 (D. Mass. 2007) (quoting *United States v. de Jesus-Rios*, 990 F.2d 672, 677 (1st Cir. 1983)). To violate the fairness required by the Due Process Clause, the out-of-court identification must also be unreliable under the totality of the circumstances. *Manson v. Braithwaite*, 432 U.S. 98, 113 ("fairness as required by the Due Process Clause of the Fourteenth Amendment" applied to identification evidence): *de Jesus-Rios*, 990 F.2d at 677-78 (factors examined together in a "totality of the circumstances" inquiry). Here, there is no allegation that Trooper Whelan was involved in any aspect of the investigation other than the van ride. Trooper Whelan is not alleged to have been informed about the witnesses' prior identifications such that he could assess the reliability of the June 12, 1980 identification in light of the totality of the circumstances.

As such, on these facts, Plaintiff cannot show a due process violation by Whelan.

9

### C. The Complaint Fails to Plausibly Allege Facts Showing Trooper Whelan Violated Any Other of Plaintiff's Federally Protected Rights.

Plaintiff asserts three other Section 1983 claims: Malicious Prosecution (Count II), Conspiracy to Deprive Plaintiff of Constitutional Rights (Count III), and Failure to Intervene (Count IV). Trooper Whelan is not named in any of those counts nor is the June 12, 1980 identification of Plaintiff from the surveillance van specifically cited as a basis for any of these claims. At most, Plaintiff's complaint contains conclusory allegations of "unduly suggestive" identification procedures, which are both precluded and not sufficient to establish liability against Whelan.

#### i. The Complaint Fails to Allege Facts Showing Trooper Whelan Engaged in Malicious Prosecution of Plaintiff.

To state a claim for federal malicious prosecution, Plaintiff must allege that Trooper Whelan caused Plaintiff's seizure pursuant to legal process unsupported by probable cause, and that criminal proceedings terminated in plaintiff's favor. *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (2013). The Complaint fails to allege that Trooper Whelan caused Plaintiff's seizure. There are no allegations in the complaint that Trooper Whelan participated in anything other than the June 12, 1980 van ride. Trooper Whelan is not alleged to be involved with search warrant affidavits or the arrest warrant for Plaintiff.[3] Nor was Plaintiff seized on June 12, 1980; indeed, he was not arrested until August 13, 1980. Compl. at ¶ 157. Accordingly, no malicious prosecution claim can be brought against Whelan.

---

[3] These facts are known to Plaintiff but left out of the Complaint. There exists an arrest report and warrant reports, which Plaintiff has had in his possession since at least 1981.

> **ii.  The Complaint Fails to Allege Facts Showing Trooper Whelan Engaged in a Conspiracy to Deprive Plaintiff of his Constitutional Rights.**

To state a claim for a civil conspiracy, Plaintiff must allege plausible facts that show: (1) an agreement between two or more state actors; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Williams v. City of Boston*, 771 F.Supp.2d 190, 204 (D. Mass. 2011). Additionally, to sufficiently allege a conspiracy under Section 1983, Plaintiff must support that claim with "material facts, not merely conclusory statements." *Id.* (quoting *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir. 1980)).

Here, there are no material facts alleged that Trooper Whelan had any agreement with any other state actor to inflict a constitutional injury on Plaintiff. The conclusory allegations that "Defendants" reached an agreement is insufficient to show which defendants were allegedly part of any agreement and what the parties were agreeing to do. Moreover, there is no allegation showing any overt act by Trooper Whelan in furtherance of any agreement. Indeed, Count III fails to even mention Trooper Whelan; only the Braintree Police Defendants are specifically referenced. Accordingly, Count III fails to state a claim against Trooper Whelan.

> **iii.  The Complaint Fails to Allege Plausible Facts Showing Trooper Whelan Failed to Intervene.**

Plaintiff also cannot sustain a failure to intervene claim against Trooper Whelan. "First Circuit cases have primarily, if not exclusively, concerned allegations of failure to intervene in the excessive force context." *Echavarria*, 2017 WL 3928270 at * 10. And, while the First Circuit has not "explicitly limit[ed] failure-to-intervene claims to excessive force cases" and occasionally described actionable failure to intervene claims

11

in terms that could encompass a broad range of constitutional rights, *id.*, the Complaint does not plausibly allege facts suggesting that this is one of the rare non-excessive force cases where the failure to intervene doctrine should be applied.

For example, there are no allegations that Trooper Whelan witnessed any *Brady* violations or fabrication of evidence yet failed to act.  Moreover, even if the court were to assume that the identification in the van was suggestive, there are no allegations suggesting that there was a sufficiently clear constitutional violation such that Trooper Whelan could be liable for not intervening in to stop it.

### D. The Complaint Fails to Plausibly Allege any State Law Claims Against Trooper Whelan.

Plaintiff's state law claims against Trooper Whelan should also be dismissed.  To make out a claim for intentional infliction of emotional distress (IIED) against Trooper Whelan, the Plaintiff must allege plausible facts that show (1) Trooper Whelan intended, knew or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe.  *Polay v. McMahon*, 10 NE.3d 1122, 1128 (Mass. 2014).

Trooper Whelan is only alleged to have participated in van rides.  There are no factual allegations that Trooper Whelan's conduct during those van rides was extreme or outrageous; even if plaintiff alleged that Whelan did anything during the van rides (which he does not), surveilling a suspect and taking a photograph of him is not "extreme and outrageous" conduct.  Moreover, getting his photograph taken on June 12, 1980 is not what caused Plaintiff his alleged emotional distress, nor is it alleged to have been "fabricated."  Trooper Whelan's conduct, if any, is so far removed from Plaintiff's

12

alleged emotional distress that if fails to meet the basic pleading requirement on that element.

Moreover, there are no specific, well-pled factual allegations that Trooper Whelan had the requisite intent on June 12, 1980 to know or be on notice that being in a van with a "quasi line-up" confrontation would cause Plaintiff emotional harm even if, as Plaintiff alleges, he was not the running man. Accordingly, the complaint fails to plausibly allege a claim of IIED against Trooper Whelan.

Similarly, Count VI, Plaintiff's claim for indemnification, applies only to public entities and appears to be focused on the Braintree Police Defendants and the Boston Police Defendants. No allegations in the Complaint plausibly allege that Trooper Whelan is liable for state law indemnification.

### III.     Trooper Whelan is Shielded by Qualified Immunity.

Finally, even if Plaintiff had adequately pled a claim against Trooper Whelan, Whelan is protected by qualified immunity because he did not violate any clearly established statutory or constitutional rights.

Qualified immunity protects state officials like Trooper Whelan from liability for damages under Section 1983 when their conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). "This doctrine gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Hunt v. Massi*, 773 F. 3d. 361, 367 (1st Cir. 2014) (internal citations omitted). In the First Circuit, courts follow a two-part test to assess qualified immunity. This Court must consider "(1) whether the

13

facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (citation omitted).

The second prong has two elements. The first "focuses on the clarity of the law at the time of the alleged civil rights violation." *Cosenza v. City of Worchester,* 355 F.Supp.3d 81, 94, (D. Mass. 2019) (citing and quoting Maldonado, 568 F.3d at 268-69*).* "To overcome qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right" *Id*. The second element focuses on the facts of the particular case and "whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Id.* at 94-95. Importantly, "this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 95. In short, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.*

### A. Qualified Immunity Applies to Plaintiff's Due Process Claim.

Trooper Whelan is shielded from liability for Count I (to the extent it even applies to him) because as of 1980 when the alleged unduly suggestive identification occurred, *Manson v. Brathwaite* controlled the issue at hand. *See* 432 U.S. 98 (1977). The rule established by *Manson* is that "even where officers utilize unnecessarily suggestive identification procedures, a pre-trial identification does not violate a defendant's due process rights unless under all the circumstances of [the] case there is a very substantial likelihood of irreparable misidentification." *Cosenza,* 355 F.Supp.3d at 95 (quoting *Manson*, 432 U.S. at 116). That is not the case here.

Here, Plaintiff does not allege Trooper Whelan engaged in any violative conduct, but just that he was in a van when an unnamed person allegedly said "isn't he the one." Compl. at ¶ 105. That allegation is not consistent with the evidence adduced in 1981, which was that Mr. Foley said "that's him." Exhibit A at 9. What is clear is that Plaintiff does not allege that Trooper Whelan did or said anything in the van and there was no clearly established law suggesting anything Trooper Whelan is specifically alleged to have done in the that van was obviously unconstitutional. Accordingly, Trooper Whelan is entitled to qualified immunity.

### B. Qualified Immunity Applies to Plaintiff's Malicious Prosecution Claim.

Qualified immunity would also bar Plaintiff's malicious prosecution claim. It was not until 2013 that the First Circuit made it explicit that the Fourth Amendment guarantees the right to be free from malicious prosecution. *Hernandez-Cuevas v. Taylor*, 723 F.2d 91, 98-100 (1st Cir. 2013). Prior to that 2013 decision, it was an open question in the First Circuit and "[s]uch uncertainty in the legal landscape entitled state actors to qualified immunity." *Rodriguez-Mateo v. Fuentes-Agostini*, 66 Fed.Appx. 212, 214 (1st Cir. 2003) (internal citations omitted); *see also Williams v. City of Boston*, No. 1:10-CV-10131, 2012 WL 5829124, at *10 (D. Mass. Sept. 21, 2012 (holding that constitutional right to be free from malicious prosecution was not clearly established in 2002, thus defendants entitled to qualified immunity."). Here, since Trooper Whelan's conduct occurred in 1980, he is entitled to qualified immunity for Count II.

### C. Qualified Immunity Applies to Plaintiff's Failure to Intervene Claim.

Finally, qualified immunity would also bar Plaintiff's Count IV alleging that Trooper Whelan failed to intervene. In the First Circuit "it remains uncertain whether an

15

officer has a duty to intervene in cases that do not concern excessive force." *Echavarria*, at *11. This case does not allege excessive force; therefore, it is not clearly established that Trooper Whelan had any duty to intervene and he is thus entitled to qualified immunity for Count IV.

## CONCLUSION

For the reasons set for above, Defendant Trooper Whelan respectfully requests that the Court dismiss all claims against him pursuant to Federal Rule 12(b)(6), the doctrine of issue preclusion, and the doctrine of qualified immunity.

## LOCAL RULE 7.1(a)(2) AFFIRMATION

Pursuant to Local Rule 7.1(a)(2), Counsel for Defendant Whelan spoke with Counsel for Plaintiff on Monday, December 21, 2020 telephonically and sought to resolve and narrow the issues presented in this Motion. The parties were unable to narrow the issues or obviate Defendant's need to file this motion.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Counsel for Defendant Whelan believe that oral argument will assist the Court in adjudicating this motion and therefore respectfully request a hearing.

              Defendant,
              EDWARD WHELAN
              By his Attorneys

              MAURA HEALEY
              ATTORNEY GENERAL

              */s/ Kate R. Isley*
              Jeffrey T. Collins, BBO # 640371
              Kate R. Isley, BBO # 666371
              Assistant Attorneys General
              Government Bureau/Trial Division
              One Ashburton Place, Room 1813
              Boston, MA 02108
              (617) 727-2200, Exts. 2776, 2109
              Jeffrey.Collins@mass.gov
              Kate.Isley@mass.gov

Date:  March 12, 2021


## **CERTIFICATE OF SERVICE**

I, Kate Isley, Assistant Attorney General, hereby certify that I have this day, March 12, 2021, served the foregoing **Motion to Dismiss**, upon all parties, by electronically filing to all ECF registered parties and by sending a copy, first class mail, postage prepaid to all unregistered parties.

              /s/ Kate Isley
              Jeffrey T. Collins, BBO 640371
              Kate R. Isley, BBO # 666371
              Assistant Attorneys General