UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 1:20-cv-11456-IT

FREDERICK WEICHEL,
    Plaintiff,

v.

TOWN OF BRAINTREE, BRAINTREE POLICE CHIEF JOHN VINCENT POLIO, BRAINTREE POLICE OFFICERS JAMES LEAHY, ROBERT WILSON, THEODORE BUKER, and UNKNOWN BRAINTREE POLICE OFFICERS, ESTATES OF BOSTON POLICE OFFICERS EDWARD WALSH, WALTER DERBY, MASSACHUSETTS, and STATE POLICE OFFICERS JOHN R. SPRAGUE and EDWARD WHELAN,
    Defendants.

**DEFENDANT TOWN OF BRAINTREE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS ALL CLAIMS ASSERTED IN-NAME-ONLY AGAINST DECEASED INDIVIDUALS, ROBERT WILSON, VINCENT POLIO AND THEODORE BUKER PURSUANT TO FED. R. CIV. P. 12(B)(4)(5) and (6)**

**I.   INTRODUCTION**

NOW COMES the Defendant Town of Braintree and moves pursuant to Fed. R. Civ. P. 12(b)(4), (5) and (6) to dismiss all claims asserted against deceased Town of Braintree police officers, Robert Wilson, Vincent Polio and Theodore Buker ("Deceased Defendants") in Plaintiff Frederick Weichel's ("Plaintiff") Amended Complaint. Plaintiff alleges that the Deceased Defendants have no active estates and that each have been deceased for several years.[1] In his Amended Complaint, Plaintiff asserts several claims directly against the Deceased Defendants

---

[1] Plaintiff has alleged in his Motion for Leave to File Amended Complaint [ECF #90] that no Deceased Defendant has an active estate or administrator to represent any estate in this action.

1

in-name-only by seeking to pursue these claims through the Town of Braintree ("Town") via G.L. c. 190B, § 3-803(d)(2). Plaintiff has also served process in pursuit of these claims against the Deceased Defendants upon the City Clerk of the Town of Braintree.[2] Further, he seeks indemnification by the Town to satisfy any potential judgment against the Deceased Defendants.

Plaintiff cannot pursue claims "in-name-only" against the Deceased Defendants through the Town under § 3-803(d)(2) and may not serve process of these claims upon the Town because the Town has no obligation to satisfy any judgment recovered against the Deceased Defendants, Plaintiff failed to commence his action within three years of it accruing, and with respect to Deceased Defendant Wilson, Plaintiff has failed to show that there exists no personal representative for his estate. Additionally, Plaintiff's claims are barred by the one-year statute of limitations under G.L. c. 190B, § 3-803(a) and the three-year statute of limitations for § 1983 and state law tort claims. Finally, the Deceased Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims alleging "failure to intervene" and malicious prosecution.

## II. FACTS ALLEGED IN PLAINTIFF'S AMENDED COMPLAINT[3]

In his Amended Complaint, Plaintiff asserts the following claims against the Deceased Defendants pursuant to 42 U.S.C. § 1983: violation of due process (count I), malicious prosecution (count II), conspiracy to deprive constitutional rights (count III), and "failure to intervene" (count IV). Plaintiff also asserts a Massachusetts state law claim for intentional infliction of emotional distress (count V). Each of these claims arises from Plaintiff's alleged wrongful 1981 conviction for the murder of Robert Lamonica. Plaintiff alleges that in 1980, as

---

[2] See ECF # 91, 96 and 97, which are proofs of service of summonses for Polio, Wilson and Buker respectively, each made upon Town of Braintree Clerk James Casey.
[3] The Town assumes each of the facts asserted within Plaintiff's Amended Complaint to be true for purposes of this motion only.

part of the murder investigation, Deceased Defendant Wilson engaged in unduly suggestive identification procedures in order to coerce an eyewitness into identifying Plaintiff as the murderer. Plaintiff's Amended Complaint at ¶¶ 20, 91. Plaintiff further alleges that each of the Deceased Defendants withheld the existence of a June 1980 report written by Defendant James Leahy, which Plaintiff refers to as the "Leahy Report" and contends was exculpatory. Id. at ¶¶ 70-76. In August 2010, Plaintiff's counsel obtained a copy of the Leahy Report from the Town through a public records request. Id. at ¶¶ 143-144. On April 10, 2017, the Massachusetts Superior Court granted Plaintiff's third motion for a new trial, vacating his 1981 murder conviction, and granting him a new trial. Id. at ¶26. On July 21, 2017, the Supreme Judicial Court of Massachusetts affirmed the Superior Court's order on appeal. Id. at ¶ 181. On August 7, 2017, the Norfolk County District Attorney's Office entered a nolle prosequi dismissing all charges against the Plaintiff. Id. at ¶ 182. Plaintiff filed the instant action in the United States District Court for the District of Massachusetts on August 3, 2020.

**III.   STANDARD OF REVIEW**

A complaint or count therein must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) where it fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). "To survive such a motion, the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Kersey v. Avery Dennison Corp., 456 F. Supp. 3d 288, 292 (D. Mass. 2020), citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"A party moving to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(5) is essentially contesting the sufficiency and the manner in which process of service was performed. A motion filed under said provision addresses, in particular, the delivery or the lack of delivery of the

summons and the complaint." Pena-Vega v. MVM, Inc., 2008 WL 11357900, *3 (D.P.R. June 19, 2008), citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1353, pp. 276 (3d ed. 2004).  The party raising the insufficiency of service argument has the burden of specifically establishing how plaintiff failed to satisfy the requirements of the service provision utilized. Taite v. Bridgewater State Univ., 236 F. Supp. 3d 466, 472 (D. Mass. 2017), citing 2 Moore's Federal Practice § 12.33[1] (3d ed.2013).  Once challenged, the burden shifts to the plaintiff to prove proper service. Rivera–Lopez v. Municipality of Dorado, 979 F.2d 885, 887 (1st Cir. 1992).  Fed. R. Civ. P. 12(b)(4) challenges the content of the service made. Taite, 236 F. Supp. 3d at 472.

IV.   **ARGUMENT**

   **A. Plaintiff's claims against the Deceased Defendants are barred by the one-year statute of limitations under G.L. c. 190B, § 3-803(a).**

Massachusetts law is clear that with some limited exceptions, a litigant may not bring an action against a deceased's estate or its personal representative "unless such action is commenced within one year after the date of the death of the deceased." G.L. c. 190B, § 3-803(a).  Section 3-803(a) of the Massachusetts Uniform Probate Code further requires that process be properly served on the personal representative within the one-year limitation period. G.L. c. 190B, § 3-803(a).[4]  This one-year statute of limitations is a "special" statute that controls over the claim-specific statute of limitation that would otherwise govern. Abrahamson v. Estate

---

[4] "Under the Massachusetts Uniform Probate Code, a personal representative is not subject to an action by a creditor of the deceased unless: (1) the action is commenced within one year after the date of death of the deceased and (2) before the expiration of the one-year period, the process in such action has been served by delivery in hand upon the personal representative or service has been accepted by him or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim and the court in which the action has been brought has been filed with the Register of Probate." § 18:47. Creditors' claims—Limitations period, 14E Mass. Prac., Summary of Basic Law § 18:47 (5th ed.).

4

of LeBold, 89 Mass. App. Ct. 223, 224-225, 47 N.E.3d 686, 688 (2016), rev. denied 60 N.E.3d 1172, 475 Mass. 1102.  The shortened one-year statute of limitations for actions by a creditor of the deceased against the deceased's estate applies rather than the three-year limitations periods generally applicable to the tort claims.  Id.; See Guilbault v. Estate of Gregory Jasinskas, No. CV 15-11733-FDS, 2015 WL 5447754, at *3 (D. Mass. Sept. 16, 2015) (one-year special stature limitations period applicable to 42 U.S.C. § 1983 civil rights action brought against an estate or the personal representative of an estate rather than three-year statute of limitations).  "The purpose of Section 3-803(a) and its predecessor statute[5] "is to expedite the settlement of estates" Abrahamson, 89 Mass. App. Ct. at 226, 47 N.E.3d at 689 (2016), quoting, Gates v. Reilly, 453 Mass. 460, 466, 902 N.E.2d 934 (2009), and to "protect[] estate[s] of the deceased from claims that are too remote."  Cross v. Hewitt, 52 Mass. App. Ct. 538, 541, 754 N.E.2d 1075, 1077 (2001).  An executor or administrator of an estate has no power to waive a special statute of limitation against the estate.  Stebbins v. Scott, 172 Mass. 356, 362, 52 N.E. 535, 538 (1899).  The burden is on the creditor to establish that her action was commenced within the one-year time period.  Parker v. Rich, 297 Mass. 111, 113, 8 N.E.2d 345 (1937).

**B. Plaintiff may not pursue his claims against the Deceased Defendants through the Town of Braintree under G.L. c. 190B, § 3-803(d)(2).**

Since G.L. c. 190B, § 3-803(a) would bar any potential claim against the Deceased Defendants' estates, Plaintiff has sought to pursue his claims against the Deceased Defendants "in-name-only" through the Town of Braintree under G.L. c. 190B, § 3-803(d)(2).  Plaintiff has

---

[5] G.L. c. 197, § 9A, which is the predecessor to G.L. c. 190B, §§ 3-803(a) was repealed, effective March 31, 2012 (St. 2011, c. 224).  The Massachusetts Uniform Probate Code replaced it with G.L. c. 190B, §§ 3-803.

5

also sought to serve the requisite process required by Fed. R. Civ. P. 4 upon the Deceased Defendants through the Town of Braintree by making service upon the Town's Clerk.

Pursuant to G.L. c. 190B, § 3-803(d)(2) the one-year limitation imposed by § 3-803(a) will not apply to:

> "an action for personal injury or death, if commenced more than 1 year after the date of death of the decedent, brought against the personal representative; provided further, that *the action is commenced not later than 3 years after the cause of action accrues*; and provided further, that *a judgment recovered in that action shall only be satisfied from the proceeds of a policy of liability bond or liability insurance, if any, and not from the general assets of the estate*; and provided further, that if a personal representative has not been appointed, then an action otherwise allowed pursuant to this chapter may be maintained without such appointment, and shall be maintained naming the decedent as the defendant; and provided further, that in that event *any service of process that may be necessary shall be made upon the entity providing the insurance or bond*." (Emphasis added). G.L. c. 190B, § 3-803(d)(2).

Therefore, in order for Plaintiff to be able to pursue claims against the Deceased Defendants "in-name-only" through the Town and by making service of process upon the Town under § 3-803(d)(2), he bears the burden of showing: 1) there exists no personal representative for the Deceased Defendants' estates, 2) Plaintiff's suit was commenced within three years of when his cause of action accrued, 3) a judgment recovered against the Deceased Defendants shall be satisfied from the proceeds of a policy of liability bond or liability insurance, and 4) the Town is the entity providing the bond or insurance.  Plaintiff cannot make any of these showings; therefore, his claims against the Deceased Defendants fail as a matter of law and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  Further, since the Town has not issued the Deceased Defendants a bond or insurance, the proceeds of which will satisfy a judgment recovered against them in this action, the Plaintiff may not serve process upon the Deceased Defendants through the Town and his claims must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(4) and (5).

        **i.**        **The Town of Braintree has no obligation to satisfy any judgment recovered against the Deceased Defendants.**

In order to pursue claims against the Deceased Defendants through the Town and by making service upon the Town under § 3-803(d)(2), Plaintiff must show that the Town has some obligation to satisfy a judgment recovered against the Deceased Defendants. The Town has no such obligation to satisfy any judgment recovered against the Deceased Defendants and Plaintiff's Amended Complaint identifies none. Plaintiff alleges that "Defendant Town of Braintree is responsible under Massachusetts law for any judgment entered against [the Deceased] Defendants" but identifies no legal or factual basis for this conclusion. Amended Complaint at ¶34. In prior pleadings, Plaintiff has relied upon the Rosario case[6] to assert that the indemnity provisions contained within G.L. c. 258, § 13 constitute a "liability bond" obligating those municipalities that have adopted Section 13 to satisfy potential judgments against their employees. Rosario v. Waterhouse, No. 1:19-CV-10532-LTS, 2019 WL 4765082, at *1 (D. Mass. Sept. 27, 2019). However, the Town of Braintree has not adopted G.L. c. 258, § 13 or its predecessor statute G.L. c. 41, § 100I and it is therefore not bound by any of the mandatory indemnification language contained within these statutes. See Affidavit of Town of Braintree Clerk James Casey, attached as **Exhibit 1 [ECF #37-1]**. Therefore, Plaintiff cannot assert claims against the Deceased Defendants through the Town or by serving process upon the Town under § 3-803(d)(2).

        **ii.**       **Plaintiff's action was not commenced within three years after his cause of action accrued, and it is therefore barred by the applicable**

---

[6] Rosario appears to be the only reported case ever in which a plaintiff has been permitted to pursue claims against a deceased defendant under G.L. c. 190B, § 3-803(d)(2) through the existence of a liability bond and the only case which has examined whether the mandatory indemnification provisions contained within G.L. c. 258, § 13, if adopted by a town, could constitute a liability bond for purposes of § 3-803(d)(2). Rosario, No. 1:19-CV-10532-LTS, 2019 WL 4765082.

> **statute of limitations and may not be pursued through G.L. c. 190B, § 3-803(d)(2).**

Plaintiff's § 1983 due process claim, and his other § 1983 claims, to the extent they are based on a deprivation of due process, as well as his claim for intentional infliction of emotional distress were not filed within three years of these causes of action accruing. "There is no federal statute of limitations for § 1983 claims, but instead, § 1983 borrows the forum state's statute of limitations for personal injury claims, which in Massachusetts is three years." McGunigle v. City of Quincy, 944 F. Supp. 2d 113, 119 (D. Mass. 2013). The date of accrual for § 1983 claims, however, "is a question of federal law that is not resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007). A § 1983 accrues "when the plaintiff knows, or has reason to know of the injury on which the action is based." Alamo–Hornedo v. Puig, 745 F.3d 578, 581 (1st Cir. 2014). "[A] plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt." Morán Vega v. Cruz Burgos, 537 F.3d 14, 20 (1st Cir. 2008). "Furthermore, for statute of limitation purposes, each section 1983 claim is analyzed independently." Coll. Hill Properties, LLC v. City of Worcester, 135 F. Supp. 3d 10, 14 (D. Mass. 2015), aff'd, 821 F.3d 193 (1st Cir. 2016), citing Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001).

"Under the rule set forth in Heck v. Humphrey, 512 U.S. 477, 486–90 (1994), a plaintiff may not bring suit under § 1983 where his claims would implicate the validity of a criminal conviction unless that conviction has been reversed or vacated, and thus a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Echavarria v. Roach, No. 16-CV-11118-ADB, 2017 WL 3928270, at *6 (D. Mass. Sept. 7, 2017). Specifically, a cause of action based on wrongful conviction does not accrue until "the conviction or sentence has been reversed on direct

8

appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486-87. "The Heck rule for deferred accrual is called into play only when there exists a conviction or sentence that has not been ... invalidated, that is to say, an outstanding criminal judgment. It delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn." (Internal quotations omitted). Wallace v. Kato, 549 U.S. 384, 393-384 (2007).

Plaintiff's third motion for a new trial was granted by the Massachusetts Superior Court on April 10, 2017, setting aside his extant 1981 conviction and granting him a new trial. On July 21, 2017, the Supreme Judicial Court of Massachusetts ("SJC") affirmed the Superior Court's order on appeal. Plaintiff did not file the instant action until August 3, 2020, more than three years later. His claims were therefore not filed within three years of their accrual and are time-barred.

To the extent Plaintiff argues that his cause of action did not accrue until August 7, 2017, when the Commonwealth entered a nolle prosequi, he is without support. Plaintiff's conviction was "set aside" by the Superior Court's order granting him a new trial and the SJC's subsequent ruling affirming this order. The Heck deferred accrual rule only applies where there exists and "outstanding criminal judgment." Wallace v. Kato, 549 U.S. at 393. Where a conviction has been set aside, but the charges remain pending, Heck does not bar an action that would "impugn an anticipated future conviction." Id.

The First Circuit has not indicated that entry of a nolle prosequi, as opposed to the allowance of a motion for new trial, which has been affirmed by the Commonwealth's highest court on direct appeal is necessary to lift the Heck bar on a § 1983 due process claim or state law

9

tort claims arising from alleged wrongful convictions. Indeed, other circuits have held the opposite. In Buckley, the plaintiff's 1999 conviction for drug-related offenses was vacated by the trial court in November 2010. Buckley v. Ray, 848 F.3d 855, 865 (8th Cir. 2017). One month later, the prosecutor entered a nolle prosequi dismissing the charges against plaintiff; however, under the law of the state where the conviction occurred, plaintiff could be retried for the same offense up to a year after the nolle prosequi was entered. Id. In December 2014, plaintiff filed a § 1983 action asserting violations of his rights to due process and equal protection under the Fourteenth Amendment arising from his alleged wrongful conviction. Id. at 866. Although plaintiff would not escape jeopardy of retrial on his charges until December 6, 2011—one year after the nolle prosequi dismissal of the charges against him, the Eighth Circuit held that the Heck bar was lifted and his § 1983 causes of action accrued on the date his conviction was set aside by the trial court and not when the nolle prosequi entered or when he became immune from re-trial. Id. at 866-67. Relying on Wallace v. Kato, 549 U.S. 384 (2007), the Court held that Plaintiff's § 1983 action, filed more than three years after his conviction was set aside by the trial court was time barred:

> "The Supreme Court's decision in Wallace controls [plaintiff's] claim. The trial court invalidated [his] 1999 conviction on November 1, 2010. No extant conviction exists for his § 1983 claims to impugn. The possibility that the State may have re-tried and convicted him of the cocaine charges—"an anticipated future conviction"—does not implicate the Heck rule.
> ….
>
> The Brady violation committed against [plaintiff] by the Law Enforcement Defendants caused him damage when he was convicted and incarcerated in 1999. The trial court vacated his conviction on November 1, 2010. That is the date on which his cause of action accrued. Id. at 867."

In Fultz, the plaintiff's state court conviction was reversed on appeal in June 2012 and remanded for a new trial. Fultz v. Horton, No. 14-CV-5132, 2017 WL 449161, at *2 (N.D. Ill.

10

Feb. 2, 2017). It was not until October 2013, more than a year after the remand, when the prosecution entered a nolle prosequi, dismissing the charges against plaintiff. Id. In June 2014, Plaintiff filed a § 1983 due process action arising from his alleged wrongful conviction. Id. The court held that where the state's two-year statute of limitations governed § 1983 actions, plaintiff's § 1983 due process action was untimely because it had accrued on the date his conviction was set aside on appeal and when he was granted a new trial not when the nolle prosequi was entered, regardless of whether he faced possible conviction on the same charges. Id. at *5. See also Davis v. Zain, 79 F.3d 18 (5th Cir. 1996) (finding § 1983 claim by plaintiff whose murder conviction was reversed on appeal and who was granted a new trial was not barred by Heck, even though he faced re-trial on the same charge).

In Echevarria, the plaintiff sought to pursue § 1983 claims arising from his alleged wrongful conviction after being granted a motion for a new trial by the Massachusetts Superior Court. Echavarria, No. 16-CV-11118-ADB, 2017 WL 3928270, at *2. The order for a new trial was not challenged by the Commonwealth on appeal but rather, the Commonwealth entered a nolle prosequi approximately two months later. Id. In examining when the Heck bar on plaintiff's § 1983 claim was lifted and his cause of action accrued, the court held that "pursuant to Heck, [plaintiff's] cause of action did not accrue until his motion for a new trial was granted." Id. "Plaintiff's claims did not accrue until, at the earliest, the date his motion for a new trial was granted." Id. at *7.

The Plaintiff's § 1983 due process claim, and his other § 1983 claims, to the extent they are based on a deprivation of due process, as well as his claim for intentional infliction of emotional distress all arise from his alleged wrongful conviction. Each of these claims accrued when the Superior Court set aside the conviction and ordered a new trial in April 2017 or, at the

11

latest, when the SJC affirmed the order on appeal in July 2017.  The Superior Court's order setting aside Plaintiff's conviction left outstanding only an indictment but no existing criminal judgment.  Further, the SJC's order on appeal affirming the trial court's order overturning the conviction is akin to a reversal on direct appeal.  Plaintiff may not therefore pursue these claims under G.L. c. 190B, § 3-803(a), and these claims are also barred by the three-year state of limitations.[7]

> iii. **With Respect to Deceased Defendant Wilson, Plaintiff has failed to show that there exists no personal representative for his estate.**

In order to pursue claims against a deceased individual through G.L. c. 190B, § 3-803(d)(2), a plaintiff bears the initial burden of demonstrating that there exists no personal representative for the deceased's estate.  Rosario, 2019 WL 4765082, at *4.  Plaintiff has failed to make such a showing for Deceased Defendant Wilson.  In prior pleadings, Plaintiff has indicated that he has conducted research regarding the existence of any estate or representative thereof for Wilson; however, his findings pertained to a different individual who is also named Robert Wilson but died in 2017 after retiring from the *City of Quincy* Police Department.  Without the necessary showing that no personal representative for the Deceased Defendant's estate exists, Plaintiff cannot pursue claims against him through § 3-803(d)(2).

> C. **The Deceased Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims alleging "failure to intervene" (count IV) and malicious prosecution (count II).**

The Deceased Defendants are entitled to qualified immunity on Plaintiff's § 1983 "failure to intervene" claim.  "Qualified immunity shields federal and state officials … unless a plaintiff

---

[7] Plaintiff's Massachusetts state law claim for intentional infliction of emotional distress (count V) which is also based on his alleged wrongful conviction is time-barred for the same reasons as his § 1983 claims.  See Tinsley v. Town of Framingham, 485 Mass. 760, 761, 152 N.E.3d 713, 717 (2020) (extending Heck accrual doctrine to state law claims).

pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The First Circuit has recognized a cause of action for failure to intervene primarily in the context of a police officer's use of excessive force. See, e.g., Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002) ("An officer may be held liable not only for his personal use of excessive force, but also for his failure to intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers"); Davis v. Rennie, 264 F.3d 86, 98 (1st Cir. 2001) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance"). However, as previously indicated by this court in its May 14, 2021 order on Defendant Robert Whalen's motion to dismiss [ECF # 88], the First Circuit has not explicitly required officers to intervene—other than in excessive force cases—when an individual's constitutional rights are being violated. "As a result, it was not clearly established in 1980 that Whalen had a duty to intervene, and he is therefore entitled to qualified immunity as to that claim." See also Echavarria, 2017 WL 3928270, at *11 (deceased defendants entitled to qualified immunity on the failure to intervene claim because it remains uncertain in First Circuit whether officer has duty to intervene other than in excessive force cases).

The Deceased Defendants are also entitled to qualified immunity on Plaintiff's §1983 malicious prosecution claim. It was not until 2013 that the First Circuit explicitly held that the Fourth Amendment guarantees the right to be free from malicious prosecution. Hernandez-Cuevas v. Taylor, 723 F.2d 91, 98-100 (1st Cir. 2013). Prior to the 2013, the First Circuit had described it as an " 'open question whether the Constitution permits the assertion of a section

1983 claim for malicious prosecution on the basis of an alleged Fourth Amendment violation,' " and accordingly, held that "[s]uch uncertainty in the legal landscape entitles state actors to qualified immunity." Rodriguez-Mateo v. Fuentes-Agostini, 66 Fed.Appx. 212, 214 (1st Cir. 2003), quoting Nieves, 241 F.3d at 54; Harrington v. City of Nashua, 610 F.3d 24, 30 (1st Cir. 2010) ("It remains an unanswered question whether a malicious prosecution claim is cognizable under the Fourth Amendment and section 1983[.]")

This court has therefore held on several recent occasions that individual defendants are entitled to qualified immunity from federal claims of malicious prosecution based on actions occurring prior to 2013. See Echavarria v. Roach, No. 16-CV-11118-ADB, 2017 WL 3928270, at *8 (D. Mass. Sept. 7, 2017) ("Since the Fourth Amendment right to be free from malicious prosecution was not clearly established until 2013, the individual defendants are entitled to qualified immunity from Plaintiff's § 1983 claim that Defendants engaged in malicious prosecution of him in violation of his constitutional rights in or before 1996."); Schand v. City of Springfield, 380 F. Supp. 3d 106, 135 (D. Mass. 2019) (deceased defendants entitled to qualified immunity on malicious prosecution claims arising from acts that occurred in 1986); Williams v. City of Boston, No. 1:10-CV-10131, 2012 WL 5829124, at *10 (D. Mass. Sept. 21, 2012) (constitutional right to be free from malicious prosecution was not clearly established in 2002, and thus defendants entitled to qualified immunity); Rodriguez–Mateo v. Fuentes–Agostini, 66 Fed. Appx. 212, 213–14, 2003 WL 21243479, at *1 (1st Cir. May 28, 2003) (uncertainty as to whether the Constitution supports the assertion of a Section 1983 claim for malicious prosecution under the Fourth Amendment entitles state actors to qualified immunity); Sheppard v. Aloisi, 384 F. Supp. 2d 478, 491 (D. Mass. 2005) (§ 1983 malicious prosecution claim barred by qualified immunity because right not clearly established as of 2000). The Deceased

Defendants are therefore entitled to qualified immunity on Plaintiff's malicious prosecution claim.  Further, to the extent Plaintiff's § 1983 claim alleging that the Deceased Defendants engaged in a "conspiracy to deprive constitutional rights" is grounded in the theory that they conspired to maliciously prosecute Plaintiff, they are entitled to qualified immunity on this claim as well.

## V.    CONCLUSION

For these reasons, the Town of Braintree respectfully requests that this Honorable Court dismiss all claims in Plaintiff's Amended Complaint against Deceased Defendants Robert Wilson, Vincent Polio and Theodore Buker, which Plaintiff seeks to assert through the Town of Braintree pursuant to G.L. c. 190B, § 3-803(d)(2).

Respectfully submitted,

Defendant,
TOWN OF BRAINTREE,
By its attorneys,

*/s/ Evan C. Ouellette*
Evan C. Ouellette, BBO #655934
BRODY, HARDOON, PERKINS & KESTEN, LLP
699 Boylston Street
Boston, MA 02116
(617) 880-7100
eouellette@bhpklaw.com

Dated: June 10, 2021

## CERTIFICATE OF SERVICE

      I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent to those participants indicated as non-registered participants.

                                                       */s/ Evan C. Ouellette*
                                                       Evan C. Ouellette, BBO #655934

Dated: June 10, 2021