# EXHIBIT D





Library Copy
OFFICE OF LABOR RELATIONS
ROOM 624, NEW CITY HALL
BOSTON, MA. 02201

Unsigned

# A G R E E M E N T

### between

### CITY OF BOSTON

### and

### BOSTON POLICE DETECTIVES BENEVOLENT SOCIETY

Effective:  July 1, 1984
Expiring:  June 30, 1987





TABLE OF CONTENTS

PAGE

| | | | |
|---|---|---|---|
| Article I | Persons Covered by This Agreement | 2 |
| Article II | Non-Discrimination | 3 |
| Article III | Payroll Deduction | 3 |
| Article IV | Employee Rights | 4 |
| Article V | Management Rights | 8 |
| Article VI | Grievance Procedure and Arbitration | 8 |
| Article VII | No Strike Clause | 11 |
| Article VIII | Stability of Agreement | 12 |
| Article IX | Hours of Work and Overtime | 12 |
| Article X | Court Time | 19 |
| Article XI | Holidays | 21 |
| Article XII | Paying Police Details | 22 |
| Article XIII | Fitness to Return to Work | 26 |
| Article XIIIA | Redemption of Sick Leave | 27 |
| Article XIV | Labor-Management Committee | 28 |
| Article XV | Other Leaves of Absence | 30 |
| Article XVI | Miscellaneous | 32 |
| Article XVII | Compensation | 40 |
| Article XVIIA | Education Incentive | 44 |
| Article XVIII | Duration | 46 |

# A G R E E M E N T

## W I T N E S S E T H:

WHEREAS; the Detectives employed by the City have duly designated the Society as their exclusive bargaining representative for the purpose of collective bargaining with the City with respect to wages, hours and conditions of employment; and

WHEREAS; the Society and the City desire to cooperate in establishing conditions which will tend to secure standards and conditions of employment consistent with the dignity of Detectives, and to provide methods for fair and peaceful adjustment of disputes that may arise between the Society and the City; and

WHEREAS; as a result of collective bargaining the parties have reached an Agreement which they desire to reduce to writing;

NOW, THEREFORE, in consideration of the mutual promises and agreements herein contained, the parties mutually agree as follows:

## ARTICLE I.

### PERSONS COVERED BY THIS AGREEMENT

The City recognizes the Society as the exclusive representative, for the purpose of collective bargaining relative to wages, hours and other conditions of employment, of all detectives, pursuant to a certificate issued by the Massachusetts Labor Relations Commission in Case No. MCR-3286 on April 20, 1982.

3

## ARTICLE II.

## NON-DISCRIMINATION

The City and the Society agree not to discriminate in any way against employees covered by this Agreement on account of race, religion, creed, color, national origin, sex, age, or membership or non-membership in the Society.

## ARTICLE III.

## PAYROLL DEDUCTION OF ASSOCIATION DUES

Section 1.  In accordance with the provisions of Section 17A, Chapter 180 of the General Laws (Chapter 740 of the Acts of 1950), accepted by the City Council of the City of Boston on January 15, 1951, and approved by its Mayor on January 17, 1951, Society dues shall be deducted by the City weekly from the salary of each employee who executes and remits to the City a form of authorization for payroll deduction of Society dues.  Remittance of the aggregate amount of dues deducted shall be made to the Society Treasurer within twenty-five (25) working days after the month in which dues are deducted.  For the purpose of this Article, "dues" shall be deemed to include initiation fees and uniform assessments.

Section 2.  Payroll Deduction of Agency Service Fee.

(a)  Pursuant to G.L. c. 150E, Section 12, and to assure that employees covered by this Agreement shall be adequately represented by the Society in bargaining collectively on questions of wages, hours, and other conditions of employment, the Collector-Treasurer of the City shall deduct from each payment of salary made to each such employee during the life of this collective bargaining Agreement and pay over to the Society, the exclusive bargaining

4

agent of such employee, as an agency service fee, a sum equal to the amount required to be a member of the Society, which amount is proportionately commensurate with the cost of collective bargaining and contract administration in conformance with the rules and regulations of the Massachusetts Labor Relations Commission. The Society certifies that this collective bargaining Agreement is formally executed pursuant to a vote of a majority of all employees in the bargaining unit, as provided by M.L.R.C. Rules and Regulations.

(b) The Society agrees to indemnify the City for damages which the City may be required to pay by an administrative agency or court of competent jurisdiction of last resort as a result of the City's compliance with the above section, provided that any such sum of damages is limited to the amount deducted from and payable to the particular suitors (claimants) who are named party or parties plaintiff but to no other persons.

## ARTICLE IV.

### EMPLOYEE RIGHTS AND REPRESENTATION

Section 1. Employees have, and shall be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to join and assist the Society. The freedom of employees to assist the Society shall be recognized as extending to participation in the management of the Society and acting for the Society in the capacity of a Society officer or representative, or otherwise, and including the right to present Society views and positions to the public, to officials of the City and the Department, to members of the City Council of the City of Boston and of the General Court, or to any other appropriate authority or

official.

Without limiting the foregoing, the City agrees that it will not aid, promote, or finance any labor group or organization purporting to engage in collective bargaining or make any agreement with any such group or organization which would violate any rights of the Society under this Agreement or the law. Further, no representative, Department official, or agent of the City shall:

1. Interfere with, restrain, or coerce employees in the exercise of their rights to join or refrain from joining the Society;

2. Interfere with the formation, existence, operations, or administration of the Society;

3. Discriminate in regard to employment or conditions of employment in order to encourage or discourage membership in the Society;

4. Discriminate against an employee because he has given testimony or taken part in any grievance procedures, or other hearings, negotiations or conference for or in behalf of the Society; or

5. Refuse to meet, negotiate, or confer on proper matters with officers or representatives of the Society as set forth in this Agreement.

Section 2. The members of the Society Bargaining Committee, not to exceed five (5), shall be granted leave of absence without loss of pay or benefits for all meetings between the City and the Society for the purpose of negotiating the terms of a contract or supplements thereto. Society officers, shift representatives, and Bargaining Committee members, not to exceed three (3) in any instance, shall be granted leave of absence without loss of pay or

6

benefits for time required to discuss and process grievances or incidents which could lead to grievances, with the employee or others involved, and to attend all "standing committee" meetings with the City as provided in Article XIV, and may enter any premises of the Department at any reasonable time for such purposes provided they give notice of their presence immediately upon arrival to the person in charge. Such officers, shift representatives, and Bargaining Committee members who work with any night platoon shall have their hours of schedule of work accordingly adjusted to effectuate the purposes of this section.

Section 3. Society officers and shift representatives shall be permitted to discuss official Society business with employees prior to on-duty roll call or following off-duty roll call.

Section 4. The Society shall provide the Department and keep updated a list of its Officers, Bargaining Committee members, and shift representatives.

Section 5. Society officers, shift representatives, and Bargaining Committee members, up to a maximum total of five (5) in any one instance, shall be granted leave of absence, without pay but with no loss of benefits, if they so request, to attend meetings of the City Council of the City of Boston, the General Court or other public body.

Section 6. Society officers, representatives and committee members shall not be transferred out of their unit, district, division or bureau, nor be reassigned nor detailed permanently from one platoon to another except upon their own request or in normal 42-day rotation of night men or except for purposes other than the purpose of discriminating against any such Society officer, shift

7

representative or committee member for the exercise of the rights specified in Section 1 of this Article or for interfering with the structure or institutional life of the Society. Specific reasons, in writing, for any such transfer, detail or reassignment shall be given by the Police Commissioner or his delegate to an employee on request within three (3) days of such request. Any dispute hereunder shall be subject to the grievance and arbitration procedure.

Section 6A.  Stability of Society Representatives.

Notwithstanding any contrary provision of this Agreement, and in addition to the restrictions contained in Section 6, Society officers and shift representatives who, during the life of this Agreement, become ex-officers or ex-shift representatives, shall not be involuntarily transferred for six (6) months after leaving office except for malfeasance or misconduct as charged by the Police Commissioner.

Section 7.  The City agrees to recognize the following shift representatives of the Society:

(a) Districts      -  five (5)
(b) Headquarters  -  two  (2)
(c) Miscellaneous -  one  (1)
    (D.A., Arson,
     Technical Services)

Section 7A.  Employee Rights and Representations.  The Society shall be allowed to have a shift representative at any new full service police stations. A full service police station is defined as one where bargaining unit members are both permanently assigned and where bargaining unit members attend roll call.

Section 8.  Shift Representatives shall be excused from

8

reporting and performing their tours of duty to attend all regular and not more than three (3) special meetings per year of the Society without loss of pay or benefits for the period of said meetings and reasonable time to travel to and from said meetings.

### ARTICLE V.

### MANAGEMENT RIGHTS

Subject to this Agreement and applicable law, the City (and its Mayor and Police Commissioner) reserves and retains the regular and customary rights and prerogatives of municipal management.

### ARTICLE VI.

### GRIEVANCE PROCEDURE AND ARBITRATION

Section 1.  Definition.  The term "grievance" shall mean any dispute concerning the interpretation, application, or enforcement of this Agreement.

Section 2.  Grievances shall be processed as follows:

Step #1.  The employee and/or the Society, with or without the presence of the aggrieved employee, shall present the grievance orally to the Superintendent of the Bureau of Investigative Services who shall attempt to adjust the grievance informally.

This first step may be omitted by mutual agreement.

Step #2.  If the grievance is not resolved at Step #1 within three (3) days, exclusive of Saturday and Sunday, the grievance shall be submitted in writing to the Police Commissioner. A meeting between the Commissioner and/or his designated representative(s) and the Grievance Committee of the Society, and/or its designated representatives, composed of not more than three (3)

9

persons, shall be held within five (5) calendar days after submission of the grievance to the Commissioner. If the grievance is not satisfactorily adjusted at this meeting, the Commissioner shall give his written explanatory answer within five (5) calendar days of the meeting.

Any grievance of a general nature affecting a large group of employees may, at the option of the Society, be filed at step #3 of the grievance procedure.

Step #3. If the grievance is not resolved at step #2 within ten (10) calendar days, the grievance shall be submitted in writing to the City's Grievance Committee which may consist of (without limitation) the following officials: the Supervisor of Personnel, the Mayor's Labor Relations Representative, and/or a representative of the Corporation Counsel. A meeting between the City's Grievance committee and the Society grievance Committee as aforesaid shall be held within ten (10) calendar days after referral to the City's Grievance Committee. If the grievance is not satisfactorily adjusted at this meeting, the City's Grievance Committee shall give its answer or reason within ten (10) calendar days of the meeting.

Step #4. If the grievance is not resolved at Step #3, the Society, and only the Society, may in any instance submit the grievance to arbitration by the American Arbitration Association. Such submission must be made within thirty (30) calendar days referred to in Step #3. Within the said 30 calendar days written notice of said submission shall be given to the City by delivery in hand or by mail, postage prepaid, addressed to the attention of the Office of Labor Relations. Expenses for the arbitration shall be



shared equally by the parties.

By mutual agreement, the State Board of Conciliation and Arbitration may be substituted for the American Arbitration Association.

Any matter which is subject to the jurisdiction of the Civil Service Commission (as, for example, discharge or suspension) or any Retirement Board established by law, and any incident which occurred or failed to occur prior to the effective date of this Agreement shall not be the subject of any grievance or arbitration hereunder.

Section 3. Written submissions of grievances at Step #3 and step #4 shall be in not less than triplicate, on forms to be agreed upon jointly, and shall be signed by the representative of the Society filing the grievances. If a grievance is adjusted at Step #3 or Step #4 of the grievance procedure, the adjustment shall be noted on the grievance form and shall be signed by the respective City representative(s), as the case may be, and the Society representatives reaching the adjustment. If the City exceeds any time limit prescribed at any step in the grievance procedure, the aggrieved employee and/or the Society may invoke the next step of the procedure.

Section 4. Grievances shall be filed at Step #1 within twenty-one (21) calendar days after knowledge or reason to know of the occurrence or failure of occurrence of the incident upon which the grievance is based.Grievances not appealed to any next step within fifteen (15) calendar days after presentation at each step, or to arbitration within forty (40) calendar days after presentation at Step #4, shall be deemed settled. All time limits may be shortened or extended by mutual agreement. Presentation shall be

11

defined as the date of the hearing before a City representative.

Section 5. The decision of the arbitrator shall be final and binding upon the parties, except that the arbitrator shall make no decision which alters, amends, adds to, or detracts from this Agreement, or which recommends a right or relief for any period of time prior to the effective date of this Agreement, or which modifies or abridges the rights and prerogatives of municipal management under Article V of this Agreement.

## ARTICLE VII

### NO-STRIKE CLAUSE

Section 1. No employee covered by this Agreement shall engage in, induce, or encourage any strike, work stoppage, slowdown, or withholding or services. The Society agrees that neither it nor any of its officers or agents will call, institute, authorize, participate in, sanction or ratify any such strike, work stoppages, slowdown, or withholding of services.

Section 2. Should any employee or group of employees covered by this Agreement engage in any strike, work stoppage, slowdown, or withholding of services, the Society shall forthwith disavow any such strike, work stoppage, slowdown, or withholding of services and shall refuse to recognize any picket line established in connection therewith. Furthermore, at the request of the City, the Society shall take all reasonable means to induce such employee or group of   . employees to terminate the strike, work stoppage, slowdown, or withholding of services and to return to work forthwith.

Section 3. In consideration of the performance by the Society of its obligations under Sections 1 and 2 of this Article, there shall be no liability on the part of the Society nor of its officers



or agents for any monetary damages resulting from the unauthorized breach of the agreements contained in this Article by individual members of the Society.  Any employee who breaches the agreements contained in this Article shall be subject to disciplinary proceedings under Civil Service law and rules.

## ARTICLE VIII.

### STABILITY OF AGREEMENT

Section 1.  No amendment, alteration or variation of the terms of provisions of this Agreement shall bind the parties hereto unless made and executed in writing by the parties hereto.

Section 2.  The failure of the City or the Society to insist, in any one or more situations, upon performance of any of the terms or provisions of this Agreement shall not be considered as a waiver or relinquishment of the right of the City or of the Society to future performance of any such term or provision, and the obligations of the Society and the City to such future performance shall continue in full force and effect.

## ARTICLE IX.

### HOURS OF WORK AND OVERTIME

Section 1.  Scheduled Tours of Duty or Work Shifts.  Employees shall be scheduled to work on regular work shifts or tours of duty and each work shift or tour of duty shall have a regular starting time and quitting time.  Work scheduled shall be posted on all Department bulletin boards at all times and copies shall be given to the Society.

The tours of duty (work shifts) shall be as follows:

    Shift 1 - 11:45 p.m. to 7:30 a.m.

            12:45 a.m. to 8:30 a.m.

    Shift 2 -  7:30 a.m. to 4:00 p.m.

           8:30 a.m. to 5:00 p.m.

    Shift 3 -  4:00 p.m. to 11:45 p.m.

           5:00 p.m. to 12:45 p.m.

           5:30 p.m. to  1:00 a.m.

In addition to the above basic tours of duty or work shifts there are the following additional tours of duty or work shifts:

        6:30 p.m. to 2:00 a.m.

        7:30 p.m. to 3:00 a.m.

        1:00 p.m. to 9:00 p.m.*

*The 1:00 p.m. to 9:00 p.m. shift shall be only for those detectives assigned to the burglary task force pursuant to a prior agreement between representatives of the Society and the Superintendent of the Bureau of Investigative Services.

The City agrees to bargain collectively with the Society concerning the impact of any proposed change in any tour of duty or shift specified or referred to in this Section. In equal right, the Society agrees to bargain collectively with the City concerning the impact of any proposed change in any tour of duty or shift specified or referred to by this Section.

The City agrees to give the Society two (2) weeks' notice before it implements the provisions of this Section.



Section la.  Day-Off or Squad Schedules and Lunch Hours.

(i)  All current day-off or squad schedules in force and effect
for employees as of March 3, 1971, as established under Special
Order dated September 10, 1980 (4 and 2 work schedule), shall
continue in force and effect during the term of this Agreement,
provided, that day-off or squad schedules may be changed from time
to time by mutual agreement between the Police Commissioner and the
Society.

(ii)  All day shifts or tours shall include a half hour paid
lunch period for all bargaining unit employees.  During their paid
lunch period, officers will remain on call in accordance with the
existing "Code 10" directive dated September 18, 1979.

Compensation for each half hour lunch period shall be calculated
at a straight time rate [(regular weekly compensation/40) x .5]
except when a lunch period occurs during an overtime shift or tour
in which case the overtime rate will apply.

Such compensation shall be included in the employee's regular
weekly pay for the purposes of computing sick pay, injured pay,
holiday pay, and vacation pay and shall be considered regular
compensation for pension and retirement purposes to the extent
permitted by law.

Section 2.  Scheduling of Overtime.  In emergencies or as the
needs of the service require, employees may be required to perform
overtime work, provided that employees regularly scheduled for a day
off or a vacation day will be the last to be called for mandatory
overtime on scheduled events.  Employees shall be given as much
advance notice as possible of overtime work.  Scheduled overtime
shall be posted and distributed to all employees on a equitable and

15

fair basis, in the same manner as set forth in Article XII hereof. Employees, other than those required to work beyond their normal tour of duty due to the exigencies of their workday (such as a late ambulance run, etc.) shall have the option of declining offered overtime; but in the event that sufficient personnel do not accept such offered overtime on a voluntary basis, or in the event of emergency situations where time is of the essence in executing the overtime job, such additional personnel as are deemed necessary by the City may be required to work overtime on an assigned basis. All employees shall be afforded the opportunity to accept overtime service, but there shall be no discrimination against any employee who declines to work over time on a voluntary basis. The Department will seek to avoid assigning overtime (as contrasted with voluntary overtime) to employees working a "short day", so called, on days off, or working with night platoons who are required to attend court, etc. (see Article X), between their tours of duty or on days off, so that such employees may be afforded every opportunity for required rest or to attend to their personal business before and after working hours or on a day off.

Section 3. Overtime Service. All assigned, authorized or approved service outside or out of turn of an employee's regular scheduled tour of duty (other than paying police details), including service on an employee's scheduled day off, or during his vacation, and service performed prior to he scheduled starting time for his regular tour of duty, and service performed subsequent to the scheduled time for conclusion of his regular tour of duty, including court time as set forth in Article X, shall be deemed overtime service subject to the following rules:

16



A.   If duty requires an employee to work beyond the normal quitting time of his scheduled tour of duty:

(1)   The first fifteen (15) minutes of such service shall not be deemed overtime service.  The City agrees that this provision will not be used as a basis of discrimination against or punishment of individual employees.

(2)   If an employee works more than fifteen (15) minutes but thirty (30) minutes or less of such service, he shall be deemed to have performed one-half hour of overtime service.

(3)   If an employee works more than thirty (30) minutes of such service, such overtime service shall be rounded off (and paid for) to the next quarter hour.

B.   If an employee who has left his place of employment or last duty assignment after having completed work on his regular tour of duty is recalled to his unit, district, division, or bureau, or to any other place, and he reports thereat, or if an employee is so recalled on a scheduled day off or during his vacation, he shall be paid on an overtime basis for all such time and shall be guaranteed a minimum of four (4) hours of overtime recall pay.  It is understood that the four-hour guarantee does not apply when an employee is called in early to work prior to the normal starting time of his scheduled tour of duty and works continuously from the time he reports into his normal scheduled tour of duty, in which event such employee shall receive overtime pay only for the actual time worked prior to the commencement of such tour.

C.   Overtime service shall not include:

(1)   An out-of-turn tour of duty which is substituted for a regularly scheduled tour of duty by mutual agreement between the

17

Department and the employee;

(2) Swapped tours of duty between individual employees by their mutual agreement (subject to District approval);

(3) A change in the schedule of an employee who is shifted from one platoon to another platoon or from one shift (tour) to another shift (tour) for a period of fourteen (14) or more consecutive calendar days, or a change in the schedule of an employee who is shifted from one platoon to another platoon or from one shift (tour) to another shift (tour) for a period of less than fourteen (14) consecutive calendar days if for the purpose of (a) in-service training or courses, (b) bringing prisoners back into the City's jurisdiction, or (c) appearance at hearing(s) before Police Commissioner as a defendant on charges pursuant to Chapter 31, Section 43 of the General Laws;

(4) An out-of-turn tour of duty which is substituted for a regularly scheduled tour of duty for the purpose of appearance at hearing(s) before the Police Commissioner as a defendant on charges pursuant to Chapter 31, Section 43 of the General Laws.

D. The scheduled tours of duty of individual detectives or groups of detectives will not be changed or altered for the purpose of avoiding the overtime provisions of this Article.

Section 4. Method of Compensation for Overtime Service.

A. A detective who performs overtime service in accordance with the provisions of this Agreement shall receive, in addition to his regular weekly compensation, time-and-one-half straight time hourly rate for each hour of overtime service. The straight time hourly rate shall be computed as one fortieth of a detective regular weekly compensation.



B.    Detectives shall not be required to accept compensatory time off in lieu of monetary compensation for overtime service.

C.    Pay for overtime service shall be in addition to and not in lieu of holiday pay or vacation pay, and shall be remitted to detectives as soon as practicable after the week in which such overtime service is performed.

D.    A detective who is not scheduled to work on a holiday but who is called in to work on such holiday shall receive double his straight time hourly rate for each hour of such service in lieu of the time-and-one-half rate specified in Paragraph A of this Section (but not in lieu of holiday pay).  A detective who is called in for overtime service during his vacation shall receive, in addition to the overtime compensation otherwise provided under Paragraph A of this Section, a compensatory day off for each such day of vacation on which he performs overtime service.

Section 5.    In the event that, during a situation of an emergency nature, two 12-hour tours of duty are put into effect, all service in excess of eight hours on any such tour shall be deemed overtime service.

Section 6.    Overtime, court time and holiday pay shall be paid within thirty (30) days from the conclusion of the overtime, court time or holiday pay payroll period in which it is earned.  The City agrees to pay interest at the annual rate of eight (8) percent for any amounts owed  and not paid within such thirty day period.

19



## ARTICLE X.

### COURT TIME

Section 1.  A detective on duty at night or on vacation, furlough, or on a day off, who attends as a witness or in other capacity in the performance of duty for or in behalf of the Commonwealth or the City or in response to a lawful subpoena served by a private litigant in a criminal or other case pending in any district court, including the municipal court of the City of Boston, any juvenile court, or any superior court, or before any grand jury proceedings, or in conference with a District Attorney or Assistant District Attorney, or at any pretrial conference of any other related hearing or proceeding, or who is required or requested by any city, county, town, state, or the federal government or subdivision or agency of any of the foregoing to attend or appear before any department, agency, board, commission, division or authority, or official, of the state or federal government, or subdivision or agency of any of the foregoing, or who attends as a witness or in other capacity in the performance of his duty for the government of the United States, the Commonweatlh or the City or in response to a lawful subpoena served by a private litigant in a criminal or other case pending in a federal district court, or before a grand jury proceeding, or a United States Commissioner, or in conference with a United State Attorney or Assistant United States Attorney, or at any pre-trial conference or any other related hearing or proceeding, shall be entitled to overtime compensation for every hour or fraction thereof during which he was in such attendance or appearance, but in no event less than three



(3) hours such pay on an overtime service basis; effective January 1, 1987, in no event less than four (4) hours such pay on an overtime service basis provided, however, that if he so attends or appears, during any one day, on more than one such occasion, he shall be entitled to such additional pay from the first such attendance on such day to the time of last such attendance on such day; provided, further, that if any such occasion occurs on a holiday which falls on a detective's day off or during his vacation, the detective shall receive the additional pay due him under the holiday and vacation provisions of this Agreement. The attendance must be related to the detective's job.

Section 2. A detective performing court time duty after completing a last-half tour and scheduled to report for his next regular tour of duty at 4:30 p.m. on the same day may at his option report for work at 6:30 p.m. and work until the end of his scheduled tour of duty, provided he has notified his district, division, unit, or bureau to such effect prior to 2:00 p.m. on such day.

Section 3. A detective who is scheduled to be off duty and who is required by the Department to make a delivery of drugs to, or a pick-up of drugs from the Food and Drug Administration for use in court as evidence, shall receive two (2) hours' pay on an overtime service basis for each such delivery or pick-up, in addition to pay for court time otherwise provided under this Article.

21

## ARTICLE XI.

### HOLIDAYS

<u>Section 1</u>.  The following days shall be considered holidays for the purposes enumerated below:

| | |
|---|---|
| New Year's Day | Independence Day |
| Martin Luther King, Jr. Day | Labor Day |
| Washington's Birthday | Columbus Day |
| Evacuation Day | Veterans' Day |
| Patriots' Day | Thanksgiving Day |
| Memorial Day | Christmas Day |
| Bunker Hill Day | |

or the following Monday if any date aforesaid falls on Sunday.

For the purposes of this Article, the "holiday" is the twenty-four (24) hour period commencing at 8:00 a.m. of each day listed in this Section.

<u>Section 2</u>.  When any of the aforementioned holidays falls on an employee's scheduled workday or on an employee's scheduled day off or during his vacation or during any period of an employee's paid injured leave not exceeding twenty-four (24) consecutive months, he shall receive, for each such holiday, in addition to his regular weekly compensation, an additional day's pay, computed as one-fourth (1/4) of his regular weekly compensation.  Such Holiday Pay shall be considered part of regular weekly compensation for purposes of sick leave, injured leave, vacation and other authorized leave compensation and for pension contribution computation.

<u>Section 3</u>.  Notwithstanding anything in the preceding Section to the contrary, if an employee is absent on account of illness (other than paid injured leave) on a holiday which is his scheduled workday, or if an employee is absent on account of illness both on his scheduled tour of duty immediately subsequent to a holiday which falls on a scheduled day off, or if an employee is granted

22



permission to take an unscheduled day off on a holiday which is his scheduled workday, such employee shall receive his regular weekly compensation for the week in which such holiday falls but shall not receive additional compensation for such holiday.

### ARTICLE XII.

### PAYING POLICE DETAILS

#### Definition

> A paid detail is a police service performed by a full-time sworn Boston Police Officer during his off-duty time which is paid for by the person or persons making the request for such service and which is related in any way to the performance of police duties such as, but not limited to, security or traffic control, whether performed in uniform or in plainclothes.

The following procedure will be adhered to in the assignment and recording of all paying police details:

(a)  All employees will signify in writing from time to time their desire to accept or not to accept paying police details and a current file on this subject will be maintained in each unit, district, division, and bureau.  The exchanging of paying details or the use of substitutes between employees is permitted provided it is done in accordance with the existing procedure.

(b)  All assignments to paying police details shall be made in accordance with the existing procedure.  Employees shall be given the maximum possible advance notice of paying detail assignments. Any employee who refuses a paying detail shall not be removed from the detail list, but any such refusal shall be recorded for purposes of detail assignment as a detail actually worked under the heading "detail refusal" (DR) with the detail hours thereof noted, in

determining the equitable and fair distribution of details to such employee.

(c) The recording and posting of paid details shall be done in accordance with the existing procedure. Details shall be posted on detail distribution forms acceptable to the parties hereto, which forms shall set forth the employee's name, details worked, name of person, firm, corporation or entity service, number of hours worked, and compensation received per detail, detail refusals, and applicable dates.

(d) Any employee who performs a paying detail not officially assigned by a superior officer and recorded and reported as required by this Agreement will not be protected by the provisions of G.L. (Ter. Ed.) Chapter 41, Section 100, as amended.

(e) Any detective who knowingly performs a paying detail not officially fully recorded and reported on such forms within twenty-four (24) hours after performance may be subject to Department disciplinary action. The assignment of such a detail may, at the Society's option, constitute a grievance under this Agreement.

(f) An employee's claim that he has not received his fair share of details pursuant to the provisions of this Article shall constitute a grievance under this Agreement. The Society's claim that paying details are not being distributed fairly and equitably shall similarly constitute a grievance under this Agreement.

(g) Detail distribution forms shall be official records of the Department and shall be made available to the Society for its inspection and use upon its request when and if removed from the bulletin board or other place of posting.

(h)   No paying detail assignments shall be made until the person, firm, corporation, or entity requesting or required to have such details has agreed to pay the following rates of pay per employee thereof, namely:

1.   Effective upon the execution of this Agreement, the paid detail rate shall be $14.00 per hour, with a guarantee of a minimum of four (4) hours' pay per detail for each employee so assigned.

2.   Effective January 1, 1983, the paid detail rate shall be $14.50 per hour, with a guarantee of a minimum of four (4) hours' pay per detail for each employee so assigned.

Effective July 1, 1983, the paid detail rate shall be $15.00 per hour, with a gurantee of minimum of four (4) hours' pay per detail for each employee so assigned.

3.   Effective upon execution of this agreement by the Mayor the paid detail rate shall be $17 per hour, with a guarantee of 4 hours pay per detail for each employee so assigned.

3(a).   Paid detail rates for outdoor detail shall include a $1.00 per hour differential in addition to the rates set forth above.

4.   Effective with the signing of this Agreement, the Police Commissioner agrees to restore Paying Police Details in licensed premises under such conditions as the Police Commissioner may determine.

5.   The Society and the Police Commissioner hereto may, by mutual agreement, from time to time revise upward said hourly rate and the minimum number of guaranteed hours per detail aforementioned, and establish premium rates of pay for certain details.

6.   The City agrees to assign one additional officer to the

(i) Police cadets and reserve police officers shall not be entitled to receive extra paying details.

(j) Upon the execution of this Agreement, the City agrees to enforce any existing City ordinances with respect to the use of Boston police officers on paid details. Failure of a vendor to comply with the aforementioned ordinances either at the licensing stage or compliance stage will not result in liability to the City if it has made a good faith effort to require such compliance.

(k) The City of Boston and the Department herein agree to create a Paid Detail Fund pursuant to the provisions of G.L. c. 44, Section 53C. Said Paid Detail Fund shall be created and in operation no later than October 1, 1984.

Employees performing a lawful paid detail shall be compensated for that paid detail out of the Paid Detail Fund no later than fourteen working days after the employee has performed the paid detail provided said employee has submitted a paid detail card to the Paid Detail Fund stating that the employee in fact performed the detail for which payment is requested.

(l) Notwithstanding any other provisions of this Agreement to the contrary, for Paid Detail purposes only, Division F shall be deemed to consist of all members of the bargaining unit assigned to Police Headquarters.

All excess paid detail opportunities from other Areas or Divisions will be forwarded to Division F for distribution. In the event these paid detail opportunities are not filled by Division F, the opportunities will then be forwarded to the Paid Detail Service for distribution.

26

## ARTICLE XIII.

### FITNESS TO RETURN TO WORK AFTER
### SERVICE-CONNECTED SICKNESS, INJURY OR DISABILITY

A detective absent from duty on account of sickness, injury or disability incurred in the performance of his duty shall be entitled to examination and treatment by a physician of his own choice. His physician shall be afforded full opportunity to consult with the City's Police Department physician prior to any determination by such City physician as to the employee's fitness to resume police duty. If the employee's physician and such City physician disagree as to such "fitness", they shall thereupon jointly designate a physician agreeable to both who, at the City's expense, shall examine the employee and render an advisory written medical opinion as to the employee's fitness to return to duty, copies of which shall be transmitted by him to both the City's physician and the employee's physician. In the event of their inability to agree upon a third physician, a physician shall be jointly selected by them from a list or panel of physicians established or suggested by the Commissioner of Public Health for the Commonwealth of Massachusetts in cooperation with the parties hereto, upon which event such physician, at the City's expense, shall so examine the employee and render his opinion as aforesaid. Pending receipt of such advisory opinion and action of the City physician thereupon, the City shall not require the employee to return to duty and shall continue to fully compensate him on paid injured leave for lost time due to any such absence.

27



It is understood that "sickness" as used herein means sickness incurred in the line of duty resulting in paid injured leave and does not include sickness not incurred in the line of duty which may result in sick leave.

### ARTICLE XIIIA.

### REDEMPTION OF SICK LEAVE

Section 1.  Annual Redemption.  A detective who has used fewer than five (5) sick days in the twelve-month period ending June 30th of any year may elect to redeem sick days in a lump sum cash payment in accordance with the following schedule:

| Annual Sick Days | Sick Days Used | Redemption |
|---|---|---|
| 15 | 0 | 10 |
| 14 | 1 | 8 |
| 13 | 2 | 7 |
| 12 | 3 | 5 |
| 11 | 4 | 3 |
| 10 | 5 | 0 |

The per diem rate will be the detective's rate on June 30th but will not exceed the per diem rate for the rank of detective as specified in Column 3 of the Salary Schedule in force on June 30th.

During July, the City will notify each qualifying employee of his redemption options.  An employee may elect to redeem all or part of his entitlement in full days.  Unredeemed sick days will be accumulated in the normal manner.

Section 2.  Retirement Redemption.  Effective July 1, 1981, upon retiring from service in a classification covered by this Agreement, a detective shall be paid for 15 percent of the accumulated, unused sick days credited to such employee at the time of retirement up to a maximum of 200 days, at the daily rate in effect as of the



employee's retirement date.

### ARTICLE XIV.

### LABOR-MANAGEMENT COMMITTEE

Section 1. The City and the Society shall jointly maintain and support a Labor-Management Committee. The Committee shall consist of not more than six (6) members who shall serve for the term of this Agreement. The Society shall designate three (3) members and the police Commissioner shall designate three (3) members, at least one of whom shall be the rank of Superintendent. Vacancies for designated members shall be filled respectively by the Society and the Police Commissioner for the balance of the term to be served. Each party may designate alternates. At each meeting, the Committee shall select a chairman from among is members. The selection shall be made alternately from the group of members designated by the police Commissioner and the group of members designated by the Society. A quorum shall consist of a majority of the total membership of the Committee. The Committee shall meet monthly on the second Wednesday of each month or on any other day mutually agreeable. Each party shall provide to the other party, at least one week in advance of the meeting, a written agenda of matters to be discussed.

Section 2. The Committee shall make its recommendation to the Police Commissioner in writing and the members designated by each party shall state their position(s) in writing. The Police Commissioner shall give his answers to the recommendation and/or statement of position of the Committee or its members in writing. If such recommendation and/or statement of position is received by

the Police Commissioner on or before the tenth calendar day following any such meeting, his written answer shall be given at the next scheduled meeting. In the event that any such recommendation and/or statement of position is received by the Commissioner after the tenth calendar day following any such meeting, his written answer shall be given on or before the second next scheduled meeting following his receipt of such recommendation and/or statement of position.

Section 3. The function and role of the Labor-Management Committee shall extend to the following:

A. Matters concerning the administration or interpretation of this Agreement or any supplement or amendment thereto:

B. Department projects, programs, personnel policies and practices which may effect or bear upon wages, hours, or conditions of employment of employees covered by the Agreement, including matters not subject to the grievance and arbitration procedure. The parties shall freely exchange information to facilitate the function and role of the Labor-Management Committee.

Section 4. The provisions of this Article shall not preclude the establishment of other committees by mutual agreement, nor in any way or manner limit or derogate from the function and purpose of the Society's Grievance Committee established pursuant to Article VI of this Agreement.

Section 5. The President of the Society and the Police Commissioner shall meet once a month to discuss matters of mutual interest.

30

ARTICLE XV.

## OTHER LEAVES OF ABSENCE

<u>Section 1.</u>  Subject to the operating needs of each unit, district, division, or bureau, determined by the superior officer in charge, leave of absence without loss of pay will be permitted for the following reasons:

(a)   Attendance by an employee who is a veteran as defined in Section 21, Chapter 31, of the General Laws as a pallbearer, escort, bugler, or member of a firing squad or color detail, at the funeral or memorial services of a veteran, as so defined, or any person who dies under other than dishonorable circumstances while serving in the armed services of the United States in time of war or insurrection;

(b)   Attendance by an employee who is a veteran as defined in Section 21, chapter 31, of the General Laws, as a delegate or alternate to state or national conventions or certain veterans' organizations as designated from time to time, during the life of this Agreement, by the Mayor;

(c)   Inoculation required by the City;

(d)   Red Cross blood donations authorized by the Department;

(e)   Promotional examinations conducted under Civil Service law and rules for promotion to any position in the service of the Department;

(f)   Medical examination for retirement purposes;

(g)   Attendance at educational programs required or authorized by the City.

<u>Section 2.</u>  <u>Military Leave.</u>  Every employee covered by this Agreeement who is a member of a reserve component of the armed forces of the united States shall be granted, in accordance with Section 59 of Chapter 33 of the General Laws, leave of absence with pay, during the time of his annual tour of duty as a member of such

reserve component; provided, however, that such leave shall not exceed seventeen (17) calendar days.

### Section 3.   Death in the Immediate Family.

(a)   Effective upon the execution of this Agreement, five days' leave of absence, with pay, will be allowed an employee in the case of the death of his spouse, or anybody in either of the following relationships to the employee or the employee's spouse:   father, mother, brother, sister, child, grandchild, daughter-in-law, son-in-law, or grandparents.   These leaves shall begin at the morning roll call following receipt of notice of death, and employees affected shall be excused from tours of duty intervening between receipt of notice of death and the morning roll call. Sufficient time to attend the funeral of other near relatives may be allowed without loss of pay, with an extension of such time in any particular case at the discretion of the Police Commissioner.

If an employee entitled to leave without loss of pay under this Section requires additional leave for such purposes, leave for such purpose shall be deducted from sick leave.

### Section 4.   Pregnancy-Maternity Leave.   Whenever a female

employee shall become pregnant, she shall furnish the Police Commissioner with a certificate from her physician stating the expected date of her delivery.   She may continue to work so long as her physician certifies that she is able to do so provided that the Commissioner does not find her work performance is impaired. Maternity leave without pay shall be granted commencing with cessation of actual work under the preceding sentence, for a period not to exceed one (1) year after date of delivery.



ARTICLE XVI.

### MISCELLANEOUS

Section 1.  Space will be provided in units, districts, divisions, and bureaus at places of assembly of the employees for Society bulletin boards of reasonable sizes to be supplied by the Society for the posting of announcements relating to Society business.

Section 2.  Copies of general orders, special orders, and personnel orders shall be supplied to the Society upon request and copies of such orders issued subsequent to the effective date of this Agreement shall be supplied to the Society at time of issuance.

Section 3.  Should any provision of this Agreement or any supplement thereto be held invalid by any court or tribunal of competent jurisdiction, or if compliance with or enforcement of any such provisions should be restrained by any court, all other provisions of this Agreement and any supplement thereto shall remain in force, and the parties shall negotiate immediately for a satisfactory replacement for any such provision.

Section 4.  Except as improved herein, all benefits specified in the published rules and regulations, general and special orders in force on the effective date of this Agreement shall be continued in force for the duration of this Agreement.  No employee shall suffer a reduction in such benefits as a consequence of the execution of this Agreement.  "Benefits" hereunder shall be deemed to include by way of example and not by way of limitation, sick leave, vacation leave, and paid injured leave.

33

Section 5.  The provisions of this Agreement supersede any
conflicting or inconsistent rule, regulation, or order promulgated
by the Police Commissioner.  In the event any statute(s) relating to
members of the Police Department provides or sets forth benefits or
terms in excess of or more advantageous than the benefits or terms
of this Agreement, the provisions of such statute(s), to the extent
not forbidden by law, shall prevail.  In the event this Agreement
provides or sets forth benefits or terms in excess of or more
advantageous than those provided or set forth in any such statue(s),
provisions of this Agreement shall prevail.

Section 6.  Safety and Health.  Both parties to this Agreement
shall cooperate in the enforcement of Safety rules and regulations.
Complaints with respect to unsafe or unhealthy working conditions
shall be brought immediately to the attention of an employee's
superior officers and shall be a subject of grievance hereunder.

The City and the Society shall establish a joint safety
committee consisting of not more than three (3) representatives of
each party for the purpose of promoting sound safety practices and
rules.

Section 7.  The City's Group Insurance Plan (health and life
insurance) in force on the effective date of this Agreement shall
remain in force for the duration of this agreement, unless changed
by mutual agreement, and the City further agrees to maintain its
contribution thereto, including 75 percent of the total premium for
Master Medical.

34



Section 7a.  Accidental Death Insurance.  Pursuant to the provisions of General Laws Chapter 32B, Section 11D, the City shall pay 99 percent of the premium cost for service-connected group accidental death insurance of twice the maximum amount which each eligible employee would be entitled if insured for the maximum amount of group accidental death and dismemberment insurance provided under General Laws Chapter 32B, Section 11A.

Such insurance coverage shall be provided as soon as insurance can be obtained from a carrier in accordance with public contract bidding laws and the terms of said insurance have been approved by the Massachusetts Group Insurance Commission as required by General Laws Chapter 32B, Section 11D.

It is understood that the City may decide to be a self-insurer, in which case coverage shall be effective as of July 1, 1972.  In the absence of an effective insurance policy, the City shall be deemed a self-insurer hereunder.  If not already accepted, the City agrees to submit Chapter 383 of the Acts of 1967 to the City Council for acceptance.

Section 8.  In requesting funding for this Agreement, the Mayor shall request funds for the creation of the position of Police Department Chaplain, with the appointment to said position to be made by the Police Commissioner.

Section 9.  Access to Personnel Files.

(a)  No material originating from the City derogatory to an employee's conduct, service, character, or personality shall be placed in the personnel files unless the employee has had an opportunity to read the material.  The employee shall acknowledge that he has read such material by affixing his signature on the

35



actual copy to be filed. Such signature does not necessarily indicate agreement with its contents, but merely signifies that the employee has read the material to be filed.

(b) The employee shall have the right to answer any material filed and his answer shall be attached to the file copy.

(c) No material which contains an allegation of misconduct against an employee shall be included in his/her personnel file until the charges have been verified by affidavit and a hearing held. If a determination is made that the allegation is without substance, then the allegation shall not be included in the employee's file.

(d) Any Detective shall have the right, on request at reasonable times, and on his own time, to examine all material in his personnel file which is neither confidential or privileged under law, in the presence of an official in the Personnel Office. A copy of any such material shall be furnished the employee at his request.

Section 11. Personal Leave. All Detectives covered by this Agreement may take up to three (3) of their fifteen annual sick days as personal days, provided that the employee shall schedule any such personal days in advance with the approval of his commanding officer. Such approval will not be unreasonably withheld. Personal days used under this Section shall be deducted from sick leave but shall not count as sick days used by an employee for the purpose of Article XIIIA, Section 1, or in any way affect a Detective's right to annual sick leave redemption under that provision.

Section 11A. Effective July 1, 1986, one personal day used pursuant to Article XVI, section 11, shall not be considered as a

36

sick day used for the purpose of either sick leave accumulation or for the purpose of retirement redemption, Article XIIIA, section 2.

Section 12.  Physician's Certificate.  Notwithstanding any departmental rule or regulation or practice to the contrary, if a physician's certificate is required by the Commissioner as evidence of an employee's absence from work due to illness, for five (5) consecutive days or more than ten (10) days in a calendar year, the Department must afford such employee an opportunity to obtain such certificate from a physician in the Department or a physician at Boston City Hospital.  The Department will assume the full cost charged by such physician(s) or by Boston City Hospital in connection with the certificate.  If a Detective so chooses, he may obtain a certificate from a physician other than a physician described above, in which case he will assume the cost thereof.

Section 13.  Reimbursement for Legal Fees.  In the event that any employee is charged with committing a criminal offense in the course of his work performance and is subsequently found not guilty of such accusations in a court of law or if such accusations against him are dismissed by a court of law or by an authorized clerk of such court, the City will reimburse such employee for reasonable attorneys' fees and related court costs including but not necessarily limited to stenographic fees and witness fees incurred by him in defending himself against those charges.  Such payment will be made after review by the Corporation Counsel of the City of Boston.

Section 14.  Hospital Liaison Notification.  The hospital liaison officers will notify the Society Grievance Committee Chairman in writing when a bargaining unit employee is absent from

37

duty due to injuries or illness requiring admission to hospital. The Society Grievance Committee member shall be granted leave of absence with pay and with no loss of benefits for time required to discuss and process grievances on an incident which could lead to grievances with the sick or injured employee or others involved.

Section 15.   Vacation Starting Time.   Effective July 1, 1979, vacations for Detectives under this Agreement will start at 8:00 A.M. on Monday and shall run to 8:00 A.M. on the following Monday or a subsequent Monday, depending upon the length of the vacation.

Section 16.   Special Duty or Duty less than Full Duty.

(A)   If, in the opinion of the City's physician after an examination, a Detective on injured status is capable of performing less than full police duty, the Commissioner may assign the Detective to such duty consistent with the responsibilities of a Detective.   The Commissioner shall inform the Detective in writing of the assignment and the responsibilities of the assignment and shall order the Detective to report for duty thereat within not less than five (5) working days.   The City physician shall consider available reports of the Detective's physician when determining the Detective's fitness to perform such duty.

During this duty assignment, the Commissioner or the Detective may request the City's physician to examine the Detective to determine the Detective's fitness to return to full duty consistent with the provisions of this Agreement.

If the Detective at any time declines or is unable to perform such duty assignment, he shall immediately notify the Director of Personnel who shall place the Detective on sick leave.   In the event the Detective's physician and the department's physician disagree as

38

to the Detective's ability to perform such duty, the Director of Personnel shall arrange for an examination of the Detective by a physician designated by the Commissioner and the Society. The physician, at the expense of the City, shall examine the Detective and render an advisory medical opinion as to the Detective's fitness to perform such duty assignments, copies of which shall be transmitted by the physician to both the City's and the Detective's physician. The City physician will then reexamine the Detective and based upon all the evidence before him make a recommendation to the Commissioner whether to continue such duty assignment or to restore the Detective to injured on status. In the event the Society believes the decision of the Department is arbitrary or capricious, this dispute may be processed through the grievance procedure.

A Detective on such duty shall be assigned to the work location to which he/she was assigned prior to the injury or to a Headquarters Unit (which shall include the Indentification Section).

The Department shall attempt to assign the Detective to the same shift to which he/she was assigned prior to the injury and if the Detective is assigned to a different shift, such assignment shall not be arbitrary or capricious.

(B) If an employee on sick or injured status wishes to return to less than full duty, and his physician certifies that he is fit for such duty and the department physician disagrees, then the process for resolving such dispute shall be the same as in Section A . above.

(C) Subject to the approval of the City physician, detectives on less than full duty as defined in this section may be eligible to perform paid details consistent with the terms of this section and his/her physical condition.

Section 17. The right of the Department to temporarily assign members of the bargaining unit to uniformed duty (such as but not limited to parades, marathons, demonstrations, and emergency situations) shall not be diminished by this agreement provided that such temporary assignment shall be made fairly and equitably and in a manner to ensure fundamental fairness and equality of treatment of the employee in the bargaining unit, and that such assignments shall not be made for punitive or disciplinary purposes. In the event a member is so assigned he/she shall be paid at his/her regular rate of pay, including detectives' differential.

Section 18. This Agreement specifically incorporates the provisions of St. 1982, c. 190, Section 18.

Section 19. Physical Standards. Members of the bargaining unit employed by the Boston Police Department subsequent to the execution of this Memorandum of Agreement shall abide by and be subject to the physical standards established by the Department of Personnel Administration in document 80-4, known as "Physical Standards for Public Safety Officers" (attached hereto and incorporated herein). No amendments to the attached document, 80-4 shall apply to the bargaining unit unless mutually agreed upon.

It is understood between the parties that no member of the bargaining unit employed prior the the execution date of this contract shall be expected to comply with this section so long as the bargaining unit member remains employed by the Boston Police Department.

This section, subject to the exception above only, shall apply to all members of the bargaining unit.

40

Section 20.   Vacation Leave and Buyback

A.   Members of the bargaining unit who have completed at least twenty-one years of active service, pursuant to the present practice, shall be entitled to five (5) weeks of vacation, in the calendar year January 1 to December 31, as of January 1, 1986.

B.   Subject to the operating needs of the Department, the Department may elect to offer members of the bargaining unit, who are entitled to a fifth week of vacation an option to use this vacation time or be compensated therefore.

ARTICLE XVII.

COMPENSATION

Section 1.   The pay schedule for patrolmen set forth in Rule 1 of the Police Department Compensation Plan date January 6, 1965, as amended (hereafter called "the 1965 Plan") shall be amended to provide the following salary schedules:

Section 1A.   Effective on, and retroactive to July 1, 1982, the regular weekly compensation for all members of the bargaining unit shall be increased by 6%.

Effective on, and retroactive to July 1, 1983, the regular weekly compensation for all members of the bargaining unit shall be increased by an additional 5%.

Effective July 1, 1984, the regular weekly compensation for all members in the bargaining unit shall be increased five (5%) percent.   .

Effective July 1, 1985, the regular weekly compensation for all members in the bargaining unit shall be increased four (4%) percent.

Effective July 1, 1986, the regular weekly compensation for all members in the bargaining unit shall be increased five (5%) percent.

41

## Section 2.  Detective Differential.

Effective April 20, 1982, each Detective shall receive a differential of twenty-four dollars ($24.00) per week.

a.  Effective on and retroactive to July 1, 1982, each detective shall receive a differential of $27.50 per week.

b.  Effective on and retroactive to July 1, 1983, each detective shall receive a differential of $30 per week.

Section 5.  Uniform Allowance.  The annual uniform and clothing allowance, which is payable in January, shall be four hundred forty dollars  ($440.00).

1.  An employee shall retain a record of his expenditures and complete a clothing inventory form supplied by the City.

2.  Uniforms so purchased must conform to Department specifications.

3.  Upon termination of an employee due to retirement or death, the allowance payable for that calendar year will be prorated and paid to him or, in case of his death, his estate, in the manner provided by law for the payment of vacation pay on death or retirement.

Section 6.  Night Shift Differential.  An employee who is regularly scheduled to work on a night shift (any shift or tour commencing at or after 4 P.M. and prior to 7:30 A.M.) shall receive, in addition to his regular weekly salary, a weekly night shift differential in the amount equal to nine percent (9%) of his base plus weekend differential.  Night shift differential shall not be included in base pay for the purposes of computing overtime but



shall be so included for the purpose of determining holiday pay, vacation pay, sick and injured leave pay, and pay for inservice training, and shall be considered as regular compensation for retirement and pension purposes to the extent permitted by law. The provisions of this section shall apply to the special burglary task force if assigned to the 1:00 p.m. to 9:00 p.m. shift.

Section 7.  Annual Honorarium.  Those patrolman who have received or who will receive the Department Medal of Honor for performing extraordinary police service shall receive a $50 annual honorarium each December so long as they remain active members of the Department.

Section 8.  Weekend Differential.  In addition to any other regular or premium compensation to which Detectives are entitled, all Detectives shall receive the following weekend differential to be considered as part of regular weekly compensation and shall be included in base pay for the purpose of computing overtime, court time, sick pay, injured pay, holiday pay, vacation pay, paid lunch time, and night differential and shall be considered regular compensation for pension and retirement to the extent permitted by law.

The weekend differential is computed as four point five six percent (4.56%) of the base, weekly compensation in effect as of July 1, 1981, which reflects the following weekly dollar amounts:

43

|   | Effective July 1, 1981 | | |
|---|---|---|---|
|   | 1 | 2 | 3 |
| Detective | $14.27 | 15.99 | 17.71 |

> (Note:  Detectives not regularly scheduled to work weekend shifts receive the equivalent of the foregoing weekend differential in combined recognition of their comparatively singular work schedule and their availability  to work such weekend shifts.)

Section 8A.  Effective January 1, 1987, the weekend differential shall be increased to five and six one-hundreths percent (5.06%) of the base weekly compensation in effect as of January 1, 1987.

## ARTICLE XVIIA

### EDUCATION INCENTIVE

The City, the Police Commissioner, and the Society agree that better to assure orderly economic growth of business and industry in our community and the security of life and property of all our people, it becomes necessary to establish career incentive programs to advance the entry, production and retention within the Police Department of qualified and professional police officers.

Section 1.  Education Incentive Plan.  Detectives who have earned education points in accordance with the following schedule shall receive an annual payment according to the following schedule:

44



| Education Points Earned | Annual Payment |
|---|---|

60 points for an Associate Degree or

toward a Baccalareate Degree...........................$ 950

120 points for a Baccalaureate Degree................$1,300

150 points for a degree of Master or

a degree in Law ....................................$1,900

    Points and degrees must be earned and credited in the manner specified by Chapter 835 of the Acts of 1970. The Police Commissioner shall administer this Section

    Section 2.   Transitional  Career Awards Program.   A transitional career awards program is hereby established as follows:

        Detectives with the following requisite year of service shall receive an annual payment in accordance with the following schedule:

```
Commencing with the  5th year..................$  350
Commencing with the 10th year..................$  700
Commencing with the 15th year..................$  900
Commencing with the 20th year..................$1,000
Commencing with the 25th year..................$1,200
```

    Detectives who attain the required years of service set forth above during the life of this Agreement shall be entitled to such higher pay under the schedule set forth above in Section 2.

    Section 3.   All payments under the plan or the Program are annual payments, but they shall be prorated based on the number of weeks a patrolman is on the payroll in a particular year.

    Section 4.   Payments under the Program shall be made weekly, shall be included in base pay for the purpose of computing overtime,

court time, sick pay, injured pay, holiday pay, vacation pay, lunch pay and shall be considered regular compensation for pension and retirement purposes to the extent permitted by law.

Payments under the Plan shall be made weekly and shall be included in base pay for the purpose of computing overtime, court time, sick pay, injured pay, holiday pay, vacation pay, lunch pay and shall be considered regular compensation for pension and retirement purposes to the same extent that payment under Chapter 835 of the Acts of 1970 could be so included under the law.

Section 5.  Those Detectives who qualify for payment under both the Plan and the Program shall receive the higher payment to which they are entitled, but not both.

Section 5A.  In the event that Chapter 835 of the Acts of 1970 shall be accepted by the City of Boston, said Chapter 835, so accepted, shall supersede Section 1 of this Article (Education Incentive Plan).

Section 6.  The Police Commissioner and the Society's Executive Board shall select a committee of outstanding citizens to work with them in further development of police career incentive programs.

ARTICLE XVIII

DURATION

Duration of Agreement.  This Agreement shall take effect as of the date of execution of this Memorandum by the Mayor of the City of Boston, except as otherwise stated herein, and shall remain in effect until superseded by a new collective bargaining Agreement.

46

Either party shall notify the other of its proposals for an Agreement to become effective on July 1, 1987, and the parties shall proceed forthwith to negotiate with respect thereto.   Notification by the City shall be accomplished by delivering three copies of its proposals to the President of the Society.   Notification by the Society shall be accomplished by delivery of three copies of its proposals to the City of Boston Office of Labor Relations.

47