# EXHIBIT E

<u>MEMORANDUM OF AGREEMENT</u>

This Memorandum of Agreement, entered into by and between the City of Boston, hereinafter called the "City," and The Boston Police Patrolmen's Association, Inc., hereinafter called the "Association," is the product of collective bargaining conducted pursuant to Chapter 150E of the Massachusetts General Laws for the purpose of reaching a successor collective bargaining agreement to the Contract as amended between the City and the Association.  Except where specifically amended by the provisions of this Memorandum of Agreement, all terms and provisions and conditions of the Agreement, as amended, in effect on June 30, 1987, are to remain in full force and effect, are incorporated into this Memorandum of Agreement and are made a part of this Memorandum of Agreement.  Upon execution by the Association, the provisions of this Memorandum of Agreement are effective July 1, 1987, unless specifically stated otherwise.

Amend ARTICLE IX by deleting Section 1 and inserting in place thereof the following:

<u>HOURS OF WORK AND OVERTIME</u>

<u>Section 1.</u>   <u>Scheduled Tours of Duty or Work Shifts</u>

Employees shall be scheduled to work on regular work shifts or tours of duty and each work shift or tour of

-1-



duty shall have a regular starting time and quitting time. Work schedules shall be posted on all Department bulletin boards at all times and copies shall be given to the Association.

On or after July 1, 1988, the Department may implement the following tours of duty and hours of work to be staffed according to the seniority clause of the Agreement.

(a)   11:45 P.M. to  7:30 A.M.

(b)   12:45 A.M. to  8:30 A.M.

(c)    7:30 A.M. to  4:00 P.M.

(d)    8:30 A.M. to  5:00 P.M.

(e)    4:00 P.M. to 11:45 P.M.

(f)    5:00 P.M. to 12:45 A.M.

(g)    5:30 P.M. to  1:00 A.M.

CANINE UNIT

Day shift or tour

11:00 A.M. to 6:00 P.M.

Night shift or tour

 6:00 P.M. to 12 midnight

12:00 midnight to 6:00 A.M.

If the Department implements the aforementioned shifts, all existing shifts, at the time of implementation, are eliminated and the new shifts shall be staffed by strict seniority.  The existing "Four and Two Work Schedule" shall remain in full force and effect.

-2-



The City agrees to bargain collectively with the Association concerning any proposed change in any tour of duty or shift specified or referred to by this section. In equal right, the Association agrees to bargain collectively with the City concerning any proposed change in any tour of duty or shift specified or referred to by this section.

Amend ARTICLE IX by inserting the following Section 1(b).

Section 1(b)    SHIFT SELECTION BASED UPON SENIORITY

Subsection 1.  Commencing on July 1, 1988, the Department and the Union agree that all police officers who have completed their probationary period shall be assigned to all permanent shift vacancies on the basis of strict seniority, as these terms are defined below. The Police Commissioner reserves and retains the right to determine the personnel requirement to be assigned to any particular shift and nothing in this Article shall be construed to limit the Commissioner's authority to determine numerical personnel requirements within a district or bureau, or to transfer personnel between districts or bureaus.

Subsection 2.  A shift vacancy is defined as a personnel requirement which the Department intends to fill. Such vacancies may be created by, but are not limited to, the removal from service of a police officer due to the resignation, retirement, or death of a police officer, the permanent promotion of a police officer to another bargaining

-3-



unit, or the permanent assignment of a police officer to another station, providing the Department intends to fill the vacancy. This section shall not be interpreted to limit the Commissioner's ability to determine the numerical personnel requirement of any shift. Not included within the definition of permanent vacancy is a vacancy caused by the assignment of a police officer to the Medically Incapacitated Section, by the designation of the police officer as sick or "injured on," by the provisional promotion of a police officer to a higher rank, or similar temporary absences.

"Police officer" as used herein does not include officers serving their probationary period.

Subsection 3. Seniority as described in this Article shall apply only to shift selection within a station and shall not apply to assignments between stations, units, districts, divisions, or bureaus.

Subsection 4. Police Officers assigned to the Medically Incapacitated Section shall not exercise seniority rights pursuant to this Article.

Subsection 5. For purposes of this Article only, seniority shall be defined as the employee's length of service in the Department, as determined by the date of their permanent appointment as a police officer. If two or more employees possess the same date of permanent appointment, seniority shall be determined by the

-4-

date of first employment with the Department.  If two or more employees possess the same date of first employment with the Department, seniority shall be determined by date of first continuous and uninterrupted employment by the City of Boston. If two or more employees shall possess the same date of continuous and uninterrupted employment by the City of Boston, seniority shall be determined by the date of application for the position of police officer with the Personnel Administrator for the Commonwealth.

Time devoted to authorized military or maternity leave of absence from the Department shall be included in the calculation of seniority.  Any disciplinary suspension from service of more than five (5) days shall be deducted from the seniority date.  Employees returning to duty following duty related disability retirement, other authorized leaves of absence, or following a voluntary resignation, shall retain their original seniority date, minus time spent out of service.

The Department shall maintain a seniority list in all stations, districts or bureaus and shall provide a copy to the Union every six months.

-5-



Subsection 6.  When the Department determines that a shift vacancy exists in a station, notice of such vacancy shall be posted for ten (10) days and read at all roll calls in such station for a period of three (3) calendar days.  It shall be the obligation of the police officer desiring the vacant position to indicate in writing his or her desire to fill that vacancy no later than ten (10) days from the date the Department first announced the vacancy.  At the expiration of the then (10) day period referred to in the preceding sentence, the Department shall fill the shift vacancy on a seniority basis in accordance with this section.  A police officer scheduled to go on vacation shall complete an approved form prior to departing on vacation in which the police officer shall indicate his or her desire to be considered for a shift vacancy which may arise.

Seniority shall not apply to the acquisition of speciality ratings.  When the Department implements the fixed shift concept set forth in ARTICLE IX (Hours of Work), all shifts will be staffed in accordance with this section.

Medical Hardship cases are the only exception to seniority requirements and may be permitted for a limited period of time upon agreement of the commanding officer and the shift representatives of the station involved.



Employees shall have the right and option to pick their shift by seniority, with preference given to employees in the order of their seniority. A seniority pick shall be made once in each fiscal year after July 1, 1988. On or before March 1, 1988 the initial seniority pick shall be made to be effective July 1, 1988. Each seniority pick after July 1, 1988 shall remain in force for a one (1) year period. At the end of such one (1) year period and at the end of every consecutive one (1) year period thereafter, there shall be a new pick. When a shift opening becomes available because of a transfer or leave of absence, retirement, death, resignation, or because of a newly authorized or created position(s), or for any other reason, it shall be posted for fifteen (15) days thereafter, and a seniority pick in accordance with the above provision terms of bidding for the shift opening shall thereafter be made, notwithstanding the provisions afore-mentioned that seniority picks shall be made on a yearly basis after July 1, 1988. The Commissioner shall assign employees to shifts in accordance with such pick within ten (10) days after the pick is completed. All employees shall be required to make their pick within ten (10) days of notice therefor. All picks shall be made within one (1) month after first posting of the pick. Employees not electing to exercise their seniority rights to fill a shift opening or to make a



seniority pick shall maintain their then shift assignment and their seniority rights vis-a-vis other employees in the event of other shift openings or to make a seniority pick. When an employee is transferred from one station or unit to another, the employee may not exercise station shift seniority rights until a shift vacancy occurs after said transfer. For the purposes of this Section, shift seniority shall flow from night shift to day shift. Because of the fixed seniority staffing concept, there shall be no rotating early and late shifts.



Amend ARTICLE IX by adding the following new section 6:

<u>Section 6.</u>   Overtime, court time, holiday pay, and paid detail pay shall be paid within thirty (30) days from the date earned.  The City agrees to pay interest at an annual rate of twelve percent (12%) for any amount owed and not paid within such thirty (30) day period.

NEW ARTICLE

The Department and the Union agree to commence, through the Joint Health and Safety Committee, a project which will lead to the formulation of a contractual provision relative to police officers who contract infectious diseases. The Joint Health and Safety Committee will accomplish this project no later than six months from the date of ratification of this agreement and the parties hereto mutually agree to bargain collectively with respect to the findings and recommendations of the Joint Health and Safety Committee.

Amend ARTICLE XI by adding the following new section:

Bullet Proof vests.

The department shall provide to all employees who shall request same a bullet proof vest at no expense to the employee. The wearing of said vest shall be solely and exclusively at the option of the employees, and the failure of an employee to wear said vest shall in no way be construed to be negligence or fault on the part of the employee.

The union and the department shall jointly take all reasonable measures to encourage employees to wear said vests.



-11-

Amend ARTICLE XII as follows:

Effective upon ratification of this Agreement, the following paid detail rates shall be in force and effect:

A. Outside Details        $23.00 per hour

B. Inside Details         $20.00 per hour

-12-



Amend ARTICLE XIII to provide as follows:

## FITNESS TO RETURN TO WORK AFTER SERVICE—CONNECTED SICKNESS, INJURY OR DISABILITY

An employee absent from duty on account of sickness, injury or disability incurred in the performance of his duty, without fault on his part, shall be entitled to examination and treatment by a physician of his own choice. His physician shall be afforded full opportunity to consult with the City's Police Department physician prior to any determination by such City physician as to the employee's fitness to resume full or partial police duty. If partial police duty is in question, the Police Commissioner shall specify the particular partial police duty to be performed. If the employee's physician and such City physician disagree as to such "fitness", they shall thereupon jointly designate a physician agreeable to both, who at the City's expense, shall examine the employee and render an advisory written medical opinion as to the employee's fitness to return to duty, copies of which shall be transmitted by him to both the City's physician and the employee's physician. In the event of their inability to agree upon a third physician, a physician shall be jointly selected by them from a list of panel of physicians established or suggested by the Commissioner of Public Health for the Commonwealth of Massachusetts in cooperation with parties hereto, upon which event such

-13-



physician, at the City's expense, shall examine the employee and render his opinion as aforesaid. Pending receipt of such advisory opinion and action of the City physician thereupon, the City shall not require the employee to return to duty and shall continue to fully compensate him on paid injured leave for lost time due to any such absence. It is understood that "sickness" as used herein means sickness incurred in the line of duty resulting in paid injured leave and does not include sickness not incurred in the line of duty which may result in sick leave.

If an employee is ordered to perform partial duty under this Section, said duty shall be performed at the work location to which the employee was assigned at the time of the injury. Forty-five working days after an employee commences partial duty, the employee may be assigned to partial duty at Police Headquarters. Upon return to full police duty, the employee shall return to the work location to which the employee was assigned at the time of the injury. Employees retain herein all rights under Article VI and Article XIII of this Agreement.

Subject to the approval of the City physician, an employee on less than full duty as defined in this Section may be eligible to perform paid details.

-14-



Amend  ARTICLE XIII to provide the following new section.

The requirement that injured/sick officers remain at home unless permitted to go elsewhere by the Police Commissioner is abolished upon ratification of this Agreement.  The Police Commissioner shall immediately rescind all rules and regulations with respect to the foregoing requirement.



Amend  ARTICLE XIIIA by adding the following:

Sick leave buy back or redemption payments shall be paid to the employee no later than December 1 of each year.

-16-

Amend ARTICLE XVI by inserting new Article 11A:

PERSONAL LEAVE BENEFIT:

In each fiscal year, each employee shall be credited with and shall be entitled to four (4) personal leave tours.

B.     At the option of each employee, all or any part of any employee's annual personal leave entitlement can be taken in the year of entitlement, can be redeemed for cash payment or, can be placed in a bank of accumulated, unused personal leave.

1.   If an employee elects to redeem for cash all or any part of the annual personal leave entitlement, the employee must notify the City on each occasion of such election during the fiscal year involved; provided that the final election notice must be given by the employee no later than June 1st of each fiscal year.

The city will compensate the employees within thirty (30) calendar days of each such notice of redemption, on the basis of one-fourth (1/4th) of the employee's regular weekly compensation for each redeemed personal leave tour.

2.   If an employee elects neither to take nor redeem all or any part of the employee's annual personal leave entitlement, during the accrual year, all such portion of unused or unredeemed leave shall be accumulated for the employee's death or retirement, the employee, or, in

-17-



the event of the employee's death, then the beneficiary
of the employee as designated on the form provided for
the State-Boston Retirement System, shall receive a lump
sum cash payment equal to one-fourth (1/4th) of the
employee's regular weekly compensation at the time of
such death or retirement for each accumulated personal
leave tour to a maximum of twenty-four (24) such tours.
Such payment shall be made no later than thirty (30)
calendar days following the date of death or retirement.
Employees who retire with more than twenty-four (24)
accumulated personal leave tours will be allowed to use
all such tours in excess of the twenty-four (24) tours
to be compensated as leave in the year of and prior to
the employee's retirement.

3.    The employee must provide the Police Department
with notice of an intention to take a personal leave
tour no later than noontime on the calendar day
immediately prior to the personal leave tour involved.

-18-

Amend ARTICLE XVI by adding the following new Section 20: *starting when*

## VACATIONS

Effective on and after (January 1, 1988,) any employee who prior to January 1st, 1988, has commenced his or her twentieth (20th) year of service, shall receive one week of vacation in addition to the vacation leave to which such employee is already entitled under this agreement.

Vacation leave shall not be accumulated beyond the end of a calendar year, except that in the event that where sickness or duty related injury prevents an employee from taking his or her vacation leave in any particular year, such vacation leave may be taken in the next succeeding year, but in no event thereafter. If the employment of any employee entitled to a vacation under this agreement is terminated by dismissal through no fault or delinquency of his part or by resignation, retirement or death, without his having been granted such vacation, he, or in the case of his death, his estate, shall be paid as provided by law an amount in lieu of such vacation provided that no monetary or other allowance has already been made therefor.

If the employment of any employee entitled to vacation leave under this agreement is terminated by retirement or death without the employee having been granted such vacation, he, or in the event of his death, his estate, or his widow or next of kin, shall be paid as provided by Section 111 of Chapter 41 of

-19-



the General Laws, an amount in lieu of such vacation; provided, that no monetary or other allowance has already been made therefor. Employees entitled to a fifth week of vacation under the agreement may elect to redeem said week in cash in lieu of utilizing said week as vacation. Redemption and payment will be made in accordance with the "Personal Leave Benefit" clause of this Agreement.

-20-

Amend  ARTICLE XVII by deleting Section 1 and inserting in place

thereof the following:

COMPENSATION

Section 1.

      The pay schedule for police officers set forth in rule

1 of the Police Department Compensation Plan dated January 6,

1965, as amended (hereinafter called "The 1965 Plan") shall be

amended to provide the following salary schedules:

SALARY SCHEDULE

EFFECTIVE July 1, 1987 (6.5%)

| | **1** | **2** | **3** |
|---|---|---|---|
| | 425.41 | 476.65 | 527.93 |
| Patrolman* | | | |

EFFECTIVE July 1, 1988 (6.5%)

| | | | |
|---|---|---|---|
| | 453.87 | 507.63 | 512.25 |
| Patrolman | | | |

EFFECTIVE July 1, 1989 (6.5%)

| | | | |
|---|---|---|---|
| | 482.52 | 540.63 | 598.80 |
| Patrolman | | | |



-21-



delete Section 2 and

Amend ARTICLE XVII, Section 21, by

inserting the following:

Hazardous Duty Compensation. Effective and retro-active to July 1, 1987, in addition to any other regular or premium compensation to employees are entitled, all members of the bargaining unit shall receive hazardous duty compensation. Such hazardous duty compensation shall be considered as a part of regular weekly compensation for purposes of overtime and holiday pay and for purposes of sick, injured, vacation, and other authorized leave compensation computation and for pension contribution computation. Effective July 1, 1987 the hazardous duty compensation shall be computed as one and twenty-five one-hundredths percent (1.25%) of the base weekly compensation.

Effective July 1, 1988, hazardous duty compensation shall be computed as two and twenty-five one-hundredths percent (2.25%) of the base weekly compensation.

Effective July 1, 1989, hazardous duty compensation shall be computed as three and twenty-five one-hundredths percent (3.25%) of the base weekly compensation.

This section shall be without prejudice to the rights or interests of either party, and in the event the Association prevails, after final judicial review, in Suffolk Superior CA No. 60048, 60440, 63167, grievance #16-891, or any other grievance pertaining to the issues contained in these matters, the provisions of this section shall terminate.

-22-

Amend ARTICLE XVII, Section 2(a) by deleting section 2(a) and inserting the following:

The department shall establish and conduct, no later than March 3, 1988, a competitive examination process for the appointment of police officers to the position of police officer-detective.  The process shall consist of:  (1) a written examination (which shall consist of at least 60% of the total examination mark), and  (2) training, education and experience. Appointments as a detective shall be made only according to rank by mark after the examination process has been completed and the results thereof published on a list by the Police Commissioner.

Until such time as the Police Commissioner puts into effect the aforementioned process, the existing Article XVII, Section 2(a) shall remain in full force and effect, and will terminate only after the competitive examination process has been completed.

-23-

Amend   ARTICLE XVII, Section 3 so as to provide as follows:

"Patrolman – Headquarters Dispatcher"   $40.00

Amend  ARTICLE XVII, Section 3 by adding the following:

Field Training Officer   $10.00

Field Training Officers shall be subject to the seniority process of the agreement. Their appointment shall be made in the same manner as any other title listed in this section.  However, Field Training Officers must be designated from an existing shift which has already been staffed by seniority.  A probationary officer will be assigned to the Field Training Officers on a shift which has been staffed by seniority.

A Field Training Officer shall receive the $10.00 specialist rate as long as said officer is designated as a Field Training Officer.  Compensation will commence with the designation of an officer as a Field Training Officer.



Amend  ARTICLE XVII, Section 6 as follows:

Uniform and Clothing Allowance.  Effective July 1, 1987 the annual uniform and clothing allowance shall be increased from $440.00 to $500.00.

Effective July 1, 1988 the annual clothing allowance shall be increased from $500.00 to $550.00.

Effective July 1, 1989 the annual clothing allowance shall be increased from $550.00 to $650.00.

Effective upon ratification of the Agreement, the City of Boston and the Boston Police Department shall incur the complete initial cost of all new equipment and clothing required by the Boston Police Department.  In the event that the Department requires new pants, shirts (long sleeve and short sleeve), each officer shall be provided with three sets of each.



Amend ARTICLE XVII, Section 8, Weekend Differential, by deleting Section 8, as amended, and inserting in place thereof the following:

Section 8.

In addition to any other regular or premium compensation to which police officers are entitled, all members of the bargaining unit shall receive the following weekend differential to be considered as part of regular weekly compensation and shall be included in base pay for the purposes of computing overtime, court time, sick pay, injured pay, holiday pay, vacation pay, paid lunch time, and night differential and shall be considered regular compensation for pension and retirement to the extent permitted by law.

Effective July 1, 1987, the weekend differential is computed as five and thirty-one one-hundredths percent (5.31%) of the base weekly compensation in effect on July 1, 1987.

Effective July 1, 1988, the weekend differential is computed as five and eighty-one one-hundredths percent (5.81%) of the base weekly compensation in effect on July 1, 1988.

Effective July 1, 1989, the weekend differential is computed as six and six one-hundredths percent (6.06%) of the base weekly compensation in effect on July 1, 1989.



Amend  ARTICLE XVII by inserting the following new section:

911 Response Specialist.  In addition to any other regular or premium compensation to which police officers are entitled, all members of the bargaining unit ~~not receiving any other specialist pay~~ shall receive the following 911 Response Specialist Rate to be considered as part of regular weekly compensation and shall be included in base pay for the purposes of computing overtime, court time, sick pay, injured pay, holiday pay, vacation pay, paid lunch time, and night differential and shall be considered regular compensation for pension and retirement to the extent permitted by law.

Effective July 1, 1987, the 911 Response Specialist Rate is computed as seventy one-hundredths percent (.70%) of the base weekly compensation in effect on July 1, 1987.

Effective July 1, 1988, the 911 Response Specialist Rate is computed as seventy one-hundredths percent (.70%) of the base weekly compensation in effect on July 1, 1988.

Effective July 1, 1989, the 911 Response Specialist Rate is computed as seventy one-hundredths percent (.70%) of the base weekly compensation in effect on July 1, 1989.



Amend  ARTICLE XVIII, by deleting Section 1 and 2 and inserting in place thereof:

DURATION OF AGREEMENT

## Section 1.

This Agreement shall be effective as of and, unless otherwise expressly stated, fully retroactive to July 1, 1987, and shall continue in full force and effect until superseded by a new collective bargaining agreement.

## Section 2.

Either party shall notify the other of its proposals for an Agreement to become effective on July 1, 1990, and the parties shall proceed forthwith to negotiate with respect thereto.  Notification by the City shall be accomplished by delivering three copies of its proposals to the President of the Association.    Notification by the Association shall be accomplished by delivery of three copies of its proposals to the City of Boston Office of Labor Relations.

DATED:  February 17, 1988

In the presence of:

_Francis M. Roache_
Francis M. Roache,
Commissioner

_Raymond C. Dooley_
Raymond C. Dooley, Director
Administrative Services

CITY OF BOSTON

_Raymond L. Flynn_
RAYMOND L. FLYNN,
MAYOR

-29-

THE BARGAINING COMMITTEE FOR
THE BOSTON POLICE PATROLMEN'S
ASSOCIATION, INC.

Louis Scrima, Esq.
Office of Labor Relations

Robert T. Guiney, President

Donald L. Murray, Vice Pres.

Richard S. Ingersoll, Secy.

Keith K. Carlson, Member

Approved as to form:

Stephen E. O'Malley, Member

Joseph I. Mulligan, Jr.,
Corporation Counsel

Frank J. McGee, Esq.
Legal Counsel, BPPA

-30-

compensation is tabulated.

There are three salary schedules which are:
1. Police Officers with less than one years service.
2. Police Officers with more than one years service but less than two years service.
3. Police Officers with more than three years service.

Salary Schedule
Effective 7-1-84

| 1 | 2 | 3 |
|---|---|---|
| $365.80 | $409.85 | $453.95 |

Effective 7-1-85

| 1 | 2 | 3 |
|---|---|---|
| $380.43 | $426.24 | $472.11 |

Effective 7-1-86

| 1 | 2 | 3 |
|---|---|---|
| $399.45 | $447.56 | $495.71 |

Your compensation on the following sheets have been tabulated using the following formulas.

A. Lunch Pay for all day officers: take your weekly pay scale and divide it by 40 then multiply by .5 then multiply by 5 .

B. Night differential for all night officers: multiply your base salary plus your weekend differential by 9%.

C. Annual Salary: multiply your gross salary times 52.2 weeks.

D. Weekly Salary: your base pay plus weekend differential plus hazardous duty plus career awards or educational level plus specialist rate.

E. Gross Salary: your weekly salary plus night differential or lunch pay.

F. Holiday Rate: your gross pay divided by 4.

G. Hourly Rate (T): your weekly rate divided by 40.

H. Overtime Rate (T1/2): one and a half times your hourly rate

I. Weekend Differential: multiply your base pay times 4.50% . Effective 1/1/87 you multiply your base pay times 5.06% .

J. Hazardous Duty: multiply your base pay by .5% .

I hope these formulas will aide you in your own computations. If there are still questions in your mind please contact your representative or the Union office.