# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


_____

FREDERICK WEICHEL,                    )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )    Civil Action No.
                                      )    1:20-cv-11456-IT
TOWN OF BRAINTREE, et al.,            )
                                      )
        Defendants.                   )
                                      )
_____


BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE


MOTIONS HEARING BY VIDEOCONFERENCE


Wednesday, May 12, 2021
10:05 a.m.


John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts


Robert W. Paschal, RMR, CRR
Official Court Reporter
rwp.reporter@gmail.com

**A P P E A R A N C E S**

On behalf of the Plaintiff:

    LOEVY & LOEVY
    BY:  MARK LOEVY-REYES
    311 North Aberdeen Street
    Third Floor
    Chicago, IL  60607
    (312) 243-5900
    mark@loevy.com


On behalf of the Defendants Town of Braintree and James Leahy:

    BRODY HARDON PERKINS & KESTEN, LLP
    BY:  EVAN C. OUELLETTE
    699 Boylston Street
    Boston, MA  02116
    (617) 880-7100
    eouellette@bhpklaw.com


On behalf of the Defendant Edward Whelan:

    OFFICE OF THE ATTORNEY GENERAL
    BY:  JEFFREY T. COLLINS
    One Ashburton Place
    18th Floor
    Boston, MA  02108
    (617) 727-2200
    jeffrey.collins@state.ma.us


On behalf of the Defendant City of Boston:

    CITY OF BOSTON LAW DEPARTMENT
    BY:  NIEVE ANJOMI
        NICOLE M. O'CONNOR
    One City Hall Plaza
    Room 615
    Boston, MA  02201
    (617) 635-4098
    nieve.anjomi@boston.gov
    nicole.oconnor@boston.gov

**P R O C E E D I N G S**

(In open court at 10:05 a.m.)

THE DEPUTY CLERK:  United States District Court is now in session, the Honorable Judge Indira Talwani presiding.

This is Case Number 20-cv-11456, Weichel versus Town of Braintree, et al.  Will counsel please state their names for the record.

MR. LOEVY-REYES:  Certainly.  On behalf of plaintiff, Mark Loevy-Reyes.  Good morning, Judge.

THE COURT:  Good morning.

MR. COLLINS:  Good morning, Your Honor.  Assistant Attorney General Jeffrey Collins on behalf of Edward Whelan.

THE COURT:  Good morning.

MR. COLLINS:  Good morning.

MR. OUELLETTE:  Good morning, Your Honor.  Evan Ouellette on behalf of Defendant Town of Braintree and James Leahy.

THE COURT:  Good morning.

MR. ANJOMI:  Good morning, Your Honor.  Nieve Anjomi on behalf of the City of Boston.

THE COURT:  Good morning.

MS. O'CONNOR:  Good morning, Your Honor.  Nicole O'Connor, also on behalf of the City of Boston.

THE COURT:  Good morning.

So I have a number of motions here, and I was going

to try to make my way through them all.  And I wanted to start with the two -- with Boston and Braintree's motion to dismiss the indemnity claim.  So if one of the moving counsel would like to start in on that?

MR. OUELLETTE:  I'm happy to start on behalf of the Town of Braintree, if that would be all right with the counsel for the City of Boston.

So Count 7 is a count alleging, quote, "indemnification," quote, against the Town of Braintree.  And our argument is essentially that, one, the plaintiff lacks standing to bring a claim of indemnification against the town.  We cited the *Stull v. Weymouth* case that, I think, stands for that exact proposition, which -- I'm quoting -- "only the Officer Defendants, if found liable to Plaintiffs, have standing to sue the Town Defendants for indemnification. Plaintiffs themselves have no standing to claim indemnification on behalf the Officer Defendants."

And that's exactly what the plaintiff is seeking to do in that one count against the Town of Braintree, which is bring a claim against the Town, requiring it to indemnify a future judgment against the defendants, either deceased or alive, if there is a future judgment against those defendants.  And the Town --

THE COURT:  So let me stop you with a question.  You said standing.  I understood your argument to be

statutory standing, that there's no standing under the statute, or is it Article III standing that you're alleging, arguing?

MR. OUELLETTE:  I think it would be -- no, I don't know if it's that.  It's standing in that they simply do not have a claim.  There is no obligation for a defendant municipality to pay the proceeds of a judgment to the plaintiff; rather, the duty would be, if there was a duty to indemnify, which I'll get to in a moment -- and for Braintree, there is none -- that duty would be owed to the employee who was the defendant, not the plaintiff.

THE COURT:  So my question was really a procedural one.  Do you see it as a 12(b)(1) or a 12(b)(6) argument?

MR. OUELLETTE:  Oh, I see what you mean.  I guess it would be 12(b)(1), but we also have a 12(b)(6) argument.

And the 12(b)(6) argument, which I -- probably my main argument, which is, one, that the complaint does not include a single fact which would demonstrate that the Town had obligated itself to pay any future judgment against any of the Braintree employees.  In fact, I think, in a motion, the defendants -- the plaintiffs, rather, admit that they have no factual basis for alleging that the Town of Braintree has an obligation to indemnify its employees.

And the obligation that typically exists for municipalities in Massachusetts is under 258, Chapter 258,

Section 13, which if a town adopts that section or its predecessor statute, it obligates itself to indemnify its employees. And it's undisputed the Town of Braintree has not adopted Chapter 258, Section 13, or its predecessor statute. Rather, it is bound only by Chapter 258, Section 9, under which indemnity of any employee for any claim of liability against them is purely discretionary.

THE COURT: Okay. So let me stop you.

For plaintiff's counsel, I think I agreed with you that this is really not a 12(b)(1). It's really a 12(b)(6) issue. But I don't understand any argument for why you would have a direct claim against the cities here. Regardless of 9, 9A, 13, whichever way you go, all of them, it seems to me, are issues that the employee may have a claim, but not that you have a direct claim against the City.

MR. LOEVY-REYES: What plaintiff would contend, Judge, is that Section 258 doesn't limit the indemnification to be brought only by the employee. And I agree, we are on weaker footing if it's a Section 9 case versus a Section 13 case. But what I would ask the Court to do is what --

THE COURT: Well --

MR. LOEVY-REYES: Oh, go ahead, Judge. I'm sorry.

THE COURT: I guess -- I guess my question would be -- you're saying there's nothing that limits it. I guess my question is, what is it that -- what statute are you suing

on?  What gives you a right to indemnity?

MR. LOEVY-REYES:  Sure.  We would contend that Section 258 does give the right to indemnity, even if it's a Section 9 case.  What we would ask the Court to do is what Judge Burroughs did in *Echavarria*, which is to not dismiss the claim at this stage, allow plaintiff to pursue discovery against the municipalities to determine the extent to which they have taken on the obligation to indemnify, and then revisit the issue when it comes time for motions.

THE COURT:  Isn't that an argument as to why I should allow you to proceed against the individual defendants, and we can get to that when we get to that argument?  Right now, my question is, you want to state a claim against the municipality directly?

MR. LOEVY-REYES:  Yes.

THE COURT:  And it would seem to me, in order to state a claim against the municipality directly, you would have to have some basis for saying they have an obligation they owe to you.  And I'm having a hard time finding that.

And the case law -- the statute doesn't say that, and the case law that the cities have cited seems to suggest that they're correct here, that the person with a claim can't go directly under the statutes to the person who is supposedly indemnifying their wrongdoer.  I mean, essentially, what you've done is sort of try to create

respondeat superior liability under 1983, which we all know we can't do that.  So --

MR. LOEVY-REYES:  Well, essentially, what we've done is we've claimed that the statute gives a separate basis for collecting any judgment against the municipalities.

THE COURT:  But that's a different question.

MR. LOEVY-REYES:  Right.

THE COURT:  When you have a judgment -- once you have a judgment, then you have a question of, where does one get one's judgment from, right?  You maybe go to seize someone's house.  You're going to do various different things once you have the judgement.  But right now we're just at the stage of, who are the parties to this litigation?  And the fact -- I mean, the fact that you may ultimately want to go after someone else to satisfy a judgment doesn't make them a defendant in the first instance.

MR. LOEVY-REYES:  And it's plaintiff's position that the statute itself makes them equally liable and that a judgment can be obtained.  But I guess, just to back up, I do want to point out that there is also a separate *Monell* claim against the Town of Braintree, so --

THE COURT:  And they haven't moved to dismiss it.

MR. LOEVY-REYES:  No, exactly.  I just want to make that clear that there is still going to be the Town as a defendant itself.  But we do think that the statute does

allow for the claim.  And as I had mentioned, Judge Burroughs, in *Echavarria,* allowed plaintiff in that case to pursue discovery with regard to the extent of the indemnification obligation.

THE COURT:  Okay.  So I think my inclination here -- and I will go back and revisit everything on the papers after we talk, but I -- or after this hearing.  But I think where I'm heading here is that the indemnity argument, the indemnity claim goes away.

But I think the next thing to then talk about is your interest in going after the dead -- the deceased individuals.  And so let's talk about that motion next, which brings up the same issues of -- in some way, some of the same issues of what the cities are or are not ultimately on the hook for.

MR. LOEVY-REYES:  Sure.

THE COURT:  So that is your motion, so I'll let you start on that one.

MR. LOEVY-REYES:  Yes, it is, Judge.  And as the Court is well aware, Section 1983 and the cases that interpret it recognize the importance of claims such as Mr. Weichel's claim and the importance of trying to bring all those cases before the Court.

One of the things that we're seeking to do here is to allow plaintiff to proceed against various deceased

defendants, and Massachusetts law allows a mechanism for that to be able to pursue claims against the holder of a liability bond.

In this situation, we claim that, because of the indemnification stuff, which we talked about previously, the municipalities have taken on what's akin to a liability bond, which is undefined in the Massachusetts statute.  We believe that that allows us a basis to proceed against those municipalities.  And to be clear, plaintiff does not seek to pursue any claims against any estates, and that's another requirement that's under the Massachusetts statutes.

So under that statute and under the -- certainly, as Judge Sorokin analyzed in the *Rosario* case, it serves the interest of justice to allow a plaintiff to proceed against deceased defendants by substituting in parties -- in this case, either the municipality parties or allowing for there to be the naming of a representative for purposes of defending this case.

THE COURT:  Okay.  So let's break all of that into a bunch of different pieces here.  Detective Walsh died recently.

MR. LOEVY-REYES:  Yes.

THE COURT:  So Section 3-803(2) doesn't apply because that's for an action for personal injury or death if commenced more than one year after the death.  So why aren't

you just proceeding against Detective Walsh's estate?

MR. LOEVY-REYES:  Well, the reason why we are not is because we have not been able to identify a personal representative or an estate for Mr. Walsh.

THE COURT:  Okay.  So why isn't the effort here, then, to identify the personal representative for Detective Walsh and then allow that action to pursue however it's going to unfold?  Why isn't that the right move here, rather than -- I mean, I don't see a provision that allows me to jump the gun on a recent death.

MR. LOEVY-REYES:  Sure.  And plaintiff is certainly -- certainly willing to proceed in that fashion to see if there's a personal representative -- representative on behalf of Mr. Walsh.  Like I said, we have not been able to locate one.  You know, perhaps -- perhaps counsel could provide some assistance.  I'm sure that they have some information regarding Mr. Walsh's, you know, last whereabouts and, you know, perhaps his estate.  There might be some pension information that perhaps the defense might have.  We just don't have sufficient information about Mr. Walsh, but we're happy to proceed that way, Judge.

THE COURT:  So it does seem like I'd like to get this question resolved and get the people in front of me who should probably be in front of me and not play games with trying to figure this out.  I do know -- so under 3-803(a),

which is the one-year statute of limitations, it says, "Except as provided in this chapter, a personal representative shall not be held to answer unless the action is commenced within one year." So we're within one year. And then you have to serve that person. That's the difficulty you're describing.

Or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim, and the court in which the action has been brought has been filed with the register. So why isn't that an alternative way to go if you can't figure out who the personal representative is?

MR. LOEVY-REYES: Yeah. Plaintiff -- plaintiff thinks that that actually would be a good alternative, Judge, and --

THE COURT: Does Boston -- does City of Boston have any disagreement that that's a perfectly fine way to approach -- follow here?

MR. ANJOMI: No, Your Honor, no disagreement.

THE COURT: And, now, am I correct that Detective Walsh is -- was a Connecticut resident when he died?

MR. LOEVY-REYES: He was, the last -- as far as we know.

THE COURT: Okay. So I think what you need to do

here -- I don't know how -- what you need to do to serve his estate in Connecticut, but it does seem to me that you need to figure out some steps here on how you're going to notice Detective Walsh's estate.

I would suggest to the City of Boston that, out of respect for his widow, you might want to see if you can facilitate this process so he doesn't have to have a personal investigator, private investigator, try and find his widow. And I would strongly encourage you to see what you can do to help out.

But at the end, for plaintiff's counsel, you need to figure out what you need to do and get them served --

MR. LOEVY-REYES:  Understood, Judge.

THE COURT:  -- because I can't do anything given that his death is recent on that.  So that's Detective Walsh.

With regard to the other four detectives and officers -- I guess, Chief Polio, Captain Buker, Detective Wilson and Officer Derby -- I feel a little bit like I'm being asked to jump things out of order here.  I mean, the question of how I determine whether there is or isn't a bond, a liability bond, it seems odd to me to be deciding this on a motion to serve process, essentially, to bring someone into the case.

And it seems far more logical, as I read the statute, to say -- I mean, what the statute is that we're

talking about is, essentially, a statute of limitations.  And what the statute of limitations statute says is it's a one-year statute of limitation once the person dies, except that it's a three-year statute of limitations if -- except that you can still have your normal three-year statute of limitation, but you can only recover a judgment from proceeds of insurance or bond and not from the estate.

So I sort of understand that to say you don't have a statute -- this defendant doesn't have a statute of limitations defense where it served -- it's being filed -- or where the action is commencing within the three years, but they're protected, and we don't feel badly about going -- bringing this action against the estate of a decedent because they don't have to pay anything if there's no coverage.

Why isn't that the right way to look at it rather than my having to decide in the first instance if there's coverage?

MR. LOEVY-REYES:  Well, I think because it also allows then for the substitution of a party or the naming of an additional individual.

THE COURT:  So I don't see -- I don't see the substitution of a party.  What I see here is -- I don't have to decide the final question as to whether there is or isn't liability under the statute.  I have to say, did you meet your statute of limitations?  If you meet your statute of

limitations, you can proceed.  And the actions shall be maintained naming the decedent, serve process on the party you think is going to be paying the bill, but you're naming the decedent.  And then we proceed.

And then whether the action -- whether you prevail on the action and have some entity to go after gets decided later or whether a motion will come in to knock it out because there's no coverage.

But right now, at this sort of front end, to make a determination as to whether there is or isn't coverage seems -- I'm putting far more in -- or appointing someone different.  I mean, I just don't understand why you're not -- why you don't proceed against the defendant.  You serve process on the City or -- Boston or Braintree, and then we see what happens next.

MR. LOEVY-REYES:  So what you're suggesting, Judge, is serving on the municipality and then -- and then proceeding against those individual deceased defendants?

THE COURT:  Yeah.  You've got the individuals named.  You don't have -- right?  They're named in the complaint as it stands.  You serve process on the entity that you're claiming is providing the insurance or bond, and they can proceed as they see fit.

If there's concern that someone might be trying to have them ultimately be held responsible, there wouldn't be

something to preclude a pretrial motion.  If they think that they'll deal with it later, they can deal with it later.  But I don't really -- I mean, I'm certainly not going to enter a default at this point, because that seems sort of odd.

MR. LOEVY-REYES:  Of course.

THE COURT:  Or maybe I do.  I don't know.  Maybe they will need to file this on his behalf.  I'm not sure.  I haven't thought that through.  But it just seems to me premature to say that the action gets knocked out without someone establishing that this doesn't apply.

So, now, the defendant city and town have argued to me that I should make that decision, in a sense, already on -- based on Sections 9, 9A and 13.  So let me -- let me just sort of tell you where I'm -- what I'm thinking about here, and maybe you can all respond.  It does seem that there is no argument that Section 13 applies.  Does plaintiff agree with that?

MR. LOEVY-REYES:  I'd have to go back and look and see what Section 13 is again, Judge.  I'm sorry.

THE COURT:  Well, as I understand it, you have three sections.  And only one of them -- 9 -- the City's claim applies to them; and they're asserting that's a discretionary, not mandatory --

MR. LOEVY-REYES:  Oh, I'm so sorry, Judge.  I was thinking we were looking still at the -- at the statute that

related to the service of individuals.  No, plaintiff --

THE COURT:  But that's all where it comes around too, right?  Because that is your basis for claiming that you're going to have some pool of money to go after.

MR. LOEVY-REYES:  Right.  Exactly.  And plaintiff definitely concedes that Section 13 does not apply to the Town of Braintree.

THE COURT:  And that Section 9A does not apply?

MR. LOEVY-REYES:  Right.

THE COURT:  Okay.  So with regard to Section 9, your claim is that the cities may have obligated themselves under collective bargaining agreements; is that correct?

MR. LOEVY-REYES:  That's correct, Judge.

THE COURT:  Okay.  And am I correct, for the cities, that you haven't provided a collective bargaining agreement to dispute that?  You simply say there couldn't be a collective -- or, actually, I'm not sure.  You're saying that plaintiff hasn't shown you there's a collective bargaining agreement?

MR. LOEVY-REYES:  Well, plaintiff was able to find on the City of Boston's website its collective bargaining agreement, at least one of them, which does provide for mandatory indemnification for its police officers.  Plaintiff has not received or obtained a collective bargaining agreement from the Town of Braintree.

THE COURT:  I have to confess that I haven't looked at the recent collective bargaining.  I understand it is part of the record.  But I understood from the briefs that the City of Boston disagrees that it provides mandatory --

MR. ANJOMI:  That's correct, Your Honor.  It simply references 258, Section 9.

THE COURT:  And it doesn't say, "We will provide it"?  It simply says, "We'll provide it within -- as per 9"?

MR. ANJOMI:  It says something to the -- they've -- so there's two issues here, Your Honor.  First, they've attached a collective bargaining agreement from 2016.  These two individuals retired in the '80s.

THE COURT:  Right.  Wouldn't we be using the collective bargaining agreement that was in effect at the time of the events?

MR. ANJOMI:  Correct.  They're not members of the current CBA.

THE COURT:  Okay.  But the one that was in place at the time, do we know what that said?

MR. ANJOMI:  No, Your Honor.  It hasn't been provided.  We do know, from the SJC case in the early '90s, that the CBA did not provide for mandatory indemnification, because that was an issue that went up to the SJC, where the union was arguing that the CBA should include mandatory indemnification.

THE COURT:  So which case is that?

MR. ANJOMI:  That's cited in the brief.  It's -- I apologize.  I could pull the brief if Your Honor allows me.

THE COURT:  I saw a Court of Appeals case that said the arbitrator didn't have authority, but was there also --

MR. ANJOMI:  I apologize.  It was a Court of Appeals.

THE COURT:  So that Court of Appeal case, I read differently than you do.  I read the Court of Appeal case to say that -- so as I understand it, this was interest bargaining, this wasn't -- or interest arbitration.  This wasn't contract interpretation arbitration.

So this was -- the parties had been unable to reach an agreement after three years of bargaining, according to the case history, and the arbitrator imposed a contract.  And the Court of Appeals said you can't impose this on them.  But that doesn't answer the question, to me, as to whether the City agreed at some point for a different contract.  This one, they did not.

This one is clearly -- but -- and here's the historical thing that I don't have enough of a handle on, but it looks like the whole landscape changed in about 1978 as some of these laws -- this is when 9 and 9A and 13 came in and replaced some other things.  And then you have -- after that, you have various attempts to do things through that

interest arbitration and so forth.

What I don't know is what those contracts said at the time there, whether there was indemnification and it went away in subsequent bargaining or whether there never was indemnification.  But that seems like a question of fact that would -- you know, would be the basis for saying this can't proceed, but not now.  I mean, it's premature until I have that information in front of me.

I mean, I -- what I see here is a statute of limitations in the personal -- in this section.  And the statute of limitations says the normal three-year doesn't apply for people who are dead, except that it's a one-year -- except that, really, we will let the three-year apply if someone else is going to hold the bag instead of the estate.

And so it proceeds.  It's not knocked out by the statute of limitations, but he can only collect against someone else who is holding the bag.  And whether there's somebody else to hold the bag or not, I don't think I have that information.  And it seems to me there's no reason to bar him from proceeding until we get to that question whether the defendants bring it up earlier or we wait till we have a remedy.

MR. ANJOMI:  Your Honor, I disagree.  I -- this is a red herring, as I've referenced in the brief.  The plaintiff wouldn't have any standing to enforce the terms of

a CBA.

THE COURT:  I agree with you.  But the question isn't can he enforce a CBA.  The question is -- as I read this, what the Massachusetts legislature has said is, normally, there's a three-year statute of limitations for these claims.  If someone dies, we're going to make it a one-year statute of limitations because we don't want to go after the estate.  But you know what?  We don't need to waver from the normal three years if someone else is going to hold the bag.

And so he prevails on this case.  And one of two things can happen.  Either -- let's assume he has facts here to prevail.  You could have one of two things that happen.  One is you maybe have successfully knocked this out ahead of time coming in and saying, "He has no right to make us pay," or it might be that he wins at judgment, and everybody in the world is judgment-proof because the estate is judgment-proof, and the City now comes in and says, "Yeah, that's fine.  You won that, but there's nobody to pay because we're not going the pay."

But it just seems that question is too early to decide today.  I don't know whether it would be appropriately done as a pretrial motion or a post trial motion.  But it seems to me it's a question that all we're saying here is there's statute of limitations that bars this claim, except

that the claim can proceed, but only to -- he can't get any money from anyone unless there's somebody who has an obligation to pay it.

So if you say, "We don't have an obligation to pay it" -- I mean, maybe you're going to decide that what happened here was not -- you know, maybe what happened here isn't the way the facts are that plaintiff is saying, and there's no claim here whatsoever.  Maybe, at the end of the day, you say "Look, the facts here, if it turns out there was this really terrible claim, and it was our intent that this type of thing should be covered" -- I don't know.  But it's not today's fight, I think.  It's not -- he's not -- you're not liable.  You're not on the hook.  He's got to prove each of these steps.

The question is, can you kick him out of court today?  And I don't see how you kick him out at this point even if you might be able to kick him out down the road.

MR. OUELLETTE:  Your Honor, may I be heard on behalf of Braintree?

THE COURT:  Absolutely.

MR. OUELLETTE:  So Braintree is on different footing here.  If the manner in which the plaintiff is seeking to proceed against the Town of Braintree is under the potential of there being a collective bargaining agreement where the Town of Braintree has obligated itself to indemnify

its employees, because we all agree they have not adopted Section 13 and do not have any additional obligation to do so, I don't think we need to have claims go against the deceased defendants or the Town of Braintree for a very long time to discover whether or not that is so.

We attached collective bargaining -- first of all, we have produced several collective bargaining agreements as part of discovery in this case already through the initial disclosures.  It's the plaintiff's burden to demonstrate, in order to get around the special one-year statute of limitations, the existence of a liability bond --

THE COURT:  So that's your -- I understand that you framed it that way, that they have to meet these three steps to be allowed to proceed.  My read of the statute is there's a one-year or a three- -- there's -- the three-year gets knocked down to a one-year, except that it's allowed to proceed as a three-year claim.  There's just no money unless there's money somewhere else outside of the estate.

So if you can -- so I'm not going to -- I don't see that this is a decision that I make here on a motion, essentially a motion for summary -- for a motion to dismiss or -- I don't know.  I mean, I -- you know, frankly, plaintiff -- I don't think plaintiff needed my permission for this.  And I'm not making a definitive ruling on any liability whatsoever.

What I'm saying is he can file his -- under this statute, the way I read it, he has his claim.  I'm not substituting anybody else in.  I'm not substituting you.  He serves the process on the people he thinks are liable.

And then if your answer is there's no way, you know, you file a pretrial motion, file -- whether it's a motion for summary judgment, but you -- this idea that he has the burden of proving that, at the end of the day, there will be someone for him to pay, I don't see that as a pleading burden.

MR. OUELLETTE:  Well, Your Honor, I would say that in order to get around the one-year statute of limitations, there has to be some way to proceed against those three defendants.  And if --

THE COURT:  And I'm saying there's a three-year statute of limitations.  That's the difference of how we're looking at this.  There's a three-year statute of limitations, but you can't go against an estate except for the first year.  That's the way I see it, and he's within the three-year statute of limitations.  He's not going to get a dollar from anyone if you guys aren't on the hook for it.  But I don't see how that is his obligation here today.

MR. OUELLETTE:  Then, Your Honor, I guess we -- we have produced in discovery collective bargaining agreements, I believe, from 1978 through 1984, none of which include any

obligation to indemnify employees.  I would suggest then, once -- if the Town is served, under the uniform probate code, as the party who is allegedly issuing a liability bond from which judgment can be recovered, then the -- we would file something.  I'm not sure how it would go.  I guess we would file it either on behalf of the Town or on behalf -- because the Town is really the party in interest, not the individual defendants -- to dismiss based on that.

It's a little --

THE COURT:  And if you were to do that -- I mean, this is what I would suggest, because I don't want unnecessary litigation here.  I don't want unnecessary parties here.  I just don't think it's appropriate to simply say, "Well, they haven't alleged anything, so they can't do this, so they haven't met their burden."

So my suggestion here is you've exchanged -- I don't know what you've exchanged for your initial disclosures, but make sure you've exchanged what you think here might be what you want to use in front of me.  You confer with each other before you file a motion.  And if plaintiff is opposing it still, you file a motion, early motion for summary judgment on this issue.

And plaintiff can then come back and tell me what it is that he thinks is going to be a basis for why he has a claim.  I mean, I'm not saying that he wins here.  I'm

simply -- it's just a procedural question.  You're asking me to decide that there's no obligation, when I have some contracts.  I don't have very many of them.  And I just don't -- I mean, I just don't feel like I have what I would normally decide on a motion for summary judgment record.

And I understand what you're saying.  It's his burden, and I agree.  It's -- ultimately, he's not going to get a penny from these defendants until he meets his -- until he proves his case and proves coverage, both things.  And I'm not precluding you from shortening that ahead of time.  I'm just saying that I'm not going to do that on the outset.

As far as I'm concerned he didn't need my permission to go ahead and do this.  And so I'm not ruling on the merits of, is there liability, by any means, or is there a lien?  That's not what's in front of me.  And it seems that that there's no dispute that there's nothing under 9A or 13.

But whether there's something under 9, by virtue of collective bargaining agreements, is premature for me to figure out.  He claims there is.  He can go ahead and file this thing and serve you.  And if you think that's wrong, you know, again, confer with each other before you file a motion.  If you're able to convince him, you don't need to waste your time trying to convince me.

But if you can't convince him, then you file your motion, and I'm not saying you have to wait till the end of

discovery to do it.  I'm saying you should disclose your -- what you're planning to rely on, and you should confer with him.

MR. OUELLETTE:  Your Honor, I would also suggest that, in order to proceed under the uniform probate code (d)(2), the plaintiff needs to demonstrate that there is no personal representative and there is no estate for any of the deceased individuals.

And that's more than a simple procedural step, because what's happening here is the plaintiff didn't sue the defendants.  They're deceased.  He sued their estates.  I think there would need to be some sort of substitution to proceed against the individuals rather than the estates.  And what we're -- what we're looking at here is a significant consequence.  It's whether or not claims against three different individuals can go forward.

So I suppose the Town would move, if they were served, to dismiss in a similar manner that they have now with maybe some additional information regarding the CBAs. But the plaintiff also, in order to proceed against any one of them and get around the one-year statute of limitations under the probate code, to go under (d)(2), they have to show that there is no personal representative and that no estate exists; otherwise, they would have to go under through the typical process.

And I don't know that there is for any of these people, but the plaintiff hasn't made that necessary showing for any of the deceased Braintree defendants.  For the deceased Buker, they simply say they were unable to identify or locate any obituary for that individual and have provided no additional information.  For the deceased individual Polio, they inaccurately represented that he was alive and that he was served, and we all agree that that's not accurate now.

And then for Wilson, they identified the wrong individual and conducted some research regarding a potential estate of another Robert Wilson, who is actually a police officer in the City of Quincy.

So that is a step that they would need to go through in order to even attempt to proceed under (d)(2), have the standing to proceed under (d)(2), and they haven't done so.

THE COURT:  Plaintiff's counsel?

MR. LOEVY-REYES:  Judge --

THE COURT:  Yes.

MR. LOEVY-REYES:  -- our office has searched dockets to look for estates.  We have -- we've gone to the -- and my paralegal submitted an affidavit in support of that. But we've reviewed dockets to see if there were any estates that were opened for these individuals.  We have not been

able to find any estates.

And, you know, unfortunately, some of the individuals have very common names.  So, you know, we look for police officers, cast a wide net to look for estates.  And we have not been able to find any.  Again, I -- you know, I'm happy to take any information from defense counsel if they know of any estates.  We're happy to be able to find them.

But, basically, it's -- and we agree.  The burden is on us to look and see if there are estates.  It's proving a negative.  So, you know, we've looked in court dockets.  Haven't found any.  We don't believe that there are any estates.

THE COURT:  So let me ask this for defense counsel.  I understand that there's going to be a lot of disputes of fact here.  I take the fact that the most recent motion to vacate the trial that was granted was appealed.  I understand that to be that the defendants have a very different view of the facts of this case than the plaintiff has.  And I will -- I, by no means, am prejudging how any of the factual record here will come out or what the standards are, et cetera.

But we have a circumstance where there is an allegation that was certainly sufficient to convince the Massachusetts courts in vacating this conviction that there was some evidence that didn't see the light of day, some

exculpatory evidence that didn't see the light of day. Right?  Any disagreement?  That's to defense counsel.

MR. OUELLETTE:  You're asking if that allegation has been made?

THE COURT:  No.  Is there any disagreement that a Massachusetts court has found that there was exculpatory evidence that wasn't turned over?

MR. OUELLETTE:  That is what the Court found, yes, Your Honor.

THE COURT:  Okay.  So we have somebody -- it may be that that supposedly exculpatory evidence is of no moment; and at the end of the day, it doesn't make any difference. And it may be that nothing wrong happened here.  But you have to at least -- bear with me -- that there is at least a possibility that something wrong happened here.  Am I wrong?

I mean, I just -- I understand people fighting tooth and nail about service and evading service when you have frivolous claims.  And I understand that all of the defendants here may end up successfully pushing back on this case.  I don't know.  But isn't there enough here to make you think, "Okay.  Let's get to the meat and figure out what's going on and try and figure out how to make this work, try to get to the facts"?

MR. ANJOMI:  Your Honor, Nieve Anjomi, City of Boston.

I would agree with that statement to the extent you are talking about certain defendants in this case. I think, as the City references in its motion to dismiss, the allegations against the two Boston officers, there's nothing there. They do make allegations with respect to the conduct of some of the other individual defendants in the case, but with respect to Walsh and Derby, the only allegation is their name appears in a report as having provided information.

So while I understand the Court's position that there's something there, the Superior Court found that there's something there. With respect to the individual officers who worked for the City, I don't believe that statement's correct.

THE COURT: Okay. And you may be completely right at the end of the day. I guess my -- I guess my frustration here is that I would like to be able to look at a case -- if this is not going to be easy for anybody to figure out anything, it's going to be hard for plaintiff to prove anything 35 years later.

I do have the fact that somebody just spent 35 years in jail, and there's a question mark on it. It may not mean that he's innocent, but there is a question mark, and he has spent 35 years in jail. It seems to me that our system of justice requires some opportunity to at least try to figure out whether there's anything there, there. I don't

really understand.

So with regard to the personal representatives, yes, we -- you know, we can't just go without having proper parties and proper names and proper formalities.  Is there any information -- and maybe we'll do this, which is I will allow an early -- I mean, we should get going with discovery.  There's no reason not to have it.  But let's get out whatever information any of you have as to whether there's an estate, what was -- who was this representative, et cetera.

I mean, let's not play games here.  Let's get to the information, figure it out.  If there are no claims, these cases will go away.  If there are claims, then we'll figure it out.  I don't understand playing games at the front end.  I really don't, on this one.

Imagine for a minute it was your brother, right, who was in there.  Now, if he did it, you don't feel that badly for him.  If there was a reasonable thought to think he did it, you don't feel that bad about it even, maybe.  But if something really bad happened here and somebody just spent 35 years in prison, that's kind of a problem.

And you're officers of the court.  Yes, you're representing your clients, but you're also officers of the court.  So you share with me some interest here, I hope, that we get to the right answers here, which doesn't mean pinning liability on who it doesn't belong to.  But it does mean that

we don't try to knock things out on, "Well, he doesn't yet have this information, so we're going to knock him out."

Give him the information he needs, and then if he can't prove his case, he doesn't prove his case.  We go home. But let's not fight about, well, he has to know his whole case ahead of time before we go anywhere.

Okay.  So I think what we're going to do -- I -- counsel for Braintree is correct that the complaint, as it's written, says estates.  It doesn't say the people by name. And so before we amend it, we should figure out whether there were estates or personal representatives.  I will allow you to go ahead, and let's get some discovery right away to the employers and see if they have any information that can help in this regard.

I don't know that your efforts with your paralegal were sufficient.  I think the defendant pointed out that you had someone who was -- would have been the wrong age to have been the right person, was one of the people you're looking at.  So you need to use -- yes, they're common names, but you need to use some common sense.

I don't think it's that hard to find these people, but you can certainly ask the employer, former employer, for all of their former addresses.  I'm not going to stop you from doing that.  Right?  You would have that in your -- in your databases?

MR. ANJOMI:  Your Honor, the City has certain information, but it does not have any retirement-related information, addresses.  The retirement board is a separate legal entity.

THE COURT:  Okay.  So you'll need to serve a subpoena on the retirement board, and I would encourage you to do so.

I mean, seriously, I -- the defendants -- you know, I will give a very careful consideration to the legal arguments here and to be careful where the facts go and so forth.  I really don't -- I just don't have much patience -- we're 35 years in here.  Let's get and figure out the merits of this.  Maybe there's a claim.  Maybe there's not a claim.  But let's not waste time on preliminaries.

So, apparently, you're going to have to subpoena the retirement board because the City of Boston sounds like they're not willing to help you with that.

But the City of Boston is at least obligated to give what they can, what they have.  And if you have addresses -- you may not have everything, but you probably have some things.

Go ahead and subpoena the union.  They may have information too.  I mean, this is -- you know, this is just -- we're not playing hide the ball here.

MR. ANJOMI:  Your Honor, to be clear, I don't have

access to the information.  They don't give me the information.  There's nothing I can do to assist plaintiff's counsel with the retirement board.  I get the same -- we'll get the same response that counsel will receive, which is, as you said, to issue a subpoena.  They don't turn information over to the -- my department.

THE COURT:  And all I'm saying is that while you don't have the retirement information, I don't know that means that you don't have other information.  I don't know where the City of Boston ends their updated employee information.  Lots of places will update their employee things and send people Christmas cards.  I don't know.

But let's -- if you have the information, let's get it out.  Let's not waste our time on -- let's not waste our time on trying to get the right parties in front of me.

So you need to try to locate people.  If no estate -- if no representative was ever appointed, then it sounds like we need to -- you'll need to ask to amend the complaint to have the action proceed with the defendant -- the decedent as the defendant rather than the estate, and we'll proceed that way.

MR. LOEVY-REYES:  Thank you, Judge.

THE COURT:  Okay.  So I still have Mr. Whelan's claim.

So for the City of Boston and the Town of

Braintree, as I said, I will go back and read one more time. But I'm granting -- I'm anticipating that I will grant the indemnification -- getting rid of the indemnification count, which gets the City of Boston out, which leaves Braintree in on the *Monell*, but that's where we are.

And at this point, the individuals have either answered or are not yet served, with the exception of Mr. Whelan.  So we have Mr. Whelan's motion to dismiss.

Anything else before I get to that?

MR. LOEVY-REYES:  I think that's it, Judge.

THE COURT:  Okay.  So for Mr. Whelan's motion to dismiss, there are a few different arguments.  The one I've got, I sort have been a little surprised about, was the issue preclusion.  So let's start with that, and then we'll move to the other issues.

I think of issue preclusion as a formal doctrine that bars things that -- where there's certain things where there's a final judgment.  Here the final judgment has been vacated.  And I understand the argument here to be, well, but the SJC opined about this, and it's good law, and it keeps being cited.  And it seems to me that that point might go to the persuasive value of that issue, but I don't understand it as formally issue preclusion, per se.

Do you want to respond to that?

MR. COLLINS:  Yes.  Thank you, Your Honor.

Well, I believe we do.  And we recognize, you know, in our reply, that there's a potential split on this issue. But we -- you know, we ask that the Court follow the *Echavarria* decision on this.  And, you know, we do believe that, based on what the SJC has opined -- and also, Your Honor, there's a bit of equity, I think, involved here. This issue has been litigated five times.  Five times this issue has been litigated.

THE COURT:  So I'm going to start, though, here not -- we can get to the equity as to what value this -- well, maybe no.  Maybe you're saying the equity plays into how one thinks of issue preclusion?

MR. COLLINS:  Yes, Your Honor, that that's right. And, again, respectfully, we do disagree that there is -- there wasn't a, quote/unquote, final judgment on the issue. There was.

THE COURT:  There was, but it was vacated.

MR. COLLINS:  Understood, Your Honor, but this is not -- you know, this is an issue that's been overly litigated.  It's not an issue that was addressed on direct appeal.  It's not an issue that was, you know -- well, it's an issue that was addressed three times in a motion for new trial subsequent to that and was decided against Mr. Weichel. I think at that point --

THE COURT:  But doesn't that get to a question that

you're essentially arguing that this is persuasive authority? It's -- I don't mean to be overly formalistic, but issue preclusion is sort of an absolute bar because there's a judgment.

And I just -- this idea -- and I did -- I agree with you that Judge Burroughs went the direction you did. But when I looked at the First Circuit case that she cited for that, the First Circuit has this sort of tail end on an opinion. Maybe it was denying rehearing. I think it was denying rehearing.

And what it says is, "This wasn't raised below, so we're not going to decide the issue." And then it has the two sentences that Judge Burroughs quoted, which was, "And if we were to consider it, we might X."

The problem with that is, one, it's not controlling; and, two, if you read what the First Circuit said, it's pretty hard to follow. I mean, what the First Circuit said there is, We think of this sort of like the way a motion to vacate a judgment, a motion -- a Rule 60(b) motion doesn't undo a judgment. Well, of course a Rule 60(b) motion doesn't undo a judgment, an order granting a Rule 60(b) motion.

So it's completely unclear to me what the First Circuit was possibly saying except to say, one, we're not finally deciding it; and, two, this wasn't properly

briefed.  And the rest of what they're saying doesn't make that much sense.  So that's what Judge Burroughs relied on. I don't -- I mean, I'm just -- going by my hornbook understanding of what issue preclusion is, which is you have to have a judgment.

MR. COLLINS:  And we do, Your Honor.

THE COURT:  But it was vacated.

MR. COLLINS:  Understood, Your Honor.  It was vacated.  But, again, this is an issue that was then subsequently litigated a number of times.

THE COURT:  It wasn't subsequently litigated after the judgment was vacated.  It was litigated before a judgment was entered --

MR. COLLINS:  Understood.

THE COURT:  -- and hasn't -- I mean, there is no piece of paper.  There's no judgment there anymore.  The judgment I have, the piece of paper that ends that file is a nolle pros, right?

MR. COLLINS: Yes.  Understood.  Understood, Your Honor.  But, again, as we -- as we, you know -- as we argue in our papers, there has to be some consideration for the equities here for, you know, the issue having been litigated twice, you know, on a motion to suppress, on -- you know, by way of examination at the criminal trial and by way of three times in the motion for a new trial.

THE COURT:  So let's say the facts turned out to be the following.  Police Officer A did something unusual with the lineup.  That was litigated.  The Court says, "Well, there was something unusual, but we don't see an error. We're going to let it in."

The plaintiff finds this box of material in the basement.  And in the box of material, it turns out -- and, obviously, he doesn't have this or he would have alleged this.  But let's assume, for purposes of my hypothetical, the box of things from the basement says, "We need to frame this guy.  How should we go forward?  Let's do this.  Let's run a funny lineup."  Okay?

Now, you don't have that.  He's not going to have that.  You'll never have that.  But would you agree with me that the fact that that went up to the Court before on a different record where the question there was, based on the evidence in front of the Court, what happened here was reasonable, versus now we have a whole lot of different evidence that came up from the basement that wasn't turned over?  I mean, really?  It may be that the evidence from the basement, you'll say, has nothing to do with this lineup. And I think there's a very good chance that might be the case.

But that would be a substantive question, not a question for me to decide, well, but as a matter of law --

because that's what issue preclusion would be -- as a matter of law, we've already -- we've already considered once whether this lineup was proper or not.

MR. COLLINS:  Perhaps under these facts, Your Honor, but those are not the facts here.

THE COURT:  I --

MR. COLLINS:  They're not even close.

THE COURT:  But I'm not -- but you're giving me a rule of law here, right?  I'm not going -- right now this isn't a question of fact.  You're giving me a rule of law, and you're saying a motion to suppress has been -- or a motion to exclude has been granted before, and that was appealed; and, therefore, regardless of the facts here, it's res judicata, or it's issue preclusion.

MR. COLLINS:  Correct.  Yes, Your Honor.

THE COURT:  And I guess what I'm saying to you is, why doesn't he get a chance to tell me the facts are different than before?  And the answer is, normally, if there is issue preclusion -- right?  Let's say I have, you know, one of my cases -- and I have many of these where people don't like -- I have a number of repeat pro se litigants who don't like what they got, and they come back in and they say the same argument again.  And you say, "Well, I may have been wrong before.  It's done."

That's not where we are here.  We have an open

case.  And if right now here there are different facts -- I mean, if they're the same facts, presumably I will think that whatever the SJC said was probably well considered.  I don't really see any reason I wouldn't.  But if the facts are different, why would he be barred from raising those?

MR. COLLINS:  And, again, Your Honor, for the reasons that we've stated, that the issue has been overly litigated.  You know, it's been decided not once, not twice, not three times, but five times.

THE COURT:  But never with the basement box as part of the picture.

MR. COLLINS:  Yeah, not under that factual scenario, no.

THE COURT:  And we now have a basement box.  I have no idea what's in it, but why would I drop something without knowing what's in it?

MR. COLLINS:  Because I -- Your Honor, I can continue to repeat my argument, but, you know, our argument is the same, that -- and, you know, this was not the primary basis for plaintiff's motion for a new trial, I'll add.  You know, and I suspect, you know, there's perhaps a reason for that.

But, you know, Your Honor, we do follow *Echavarria*.  That is the basis of our argument.  And we do believe that, based on that, on the fact that there was a final judgment on

the issue, that it is -- that it is issue precluded.

THE COURT:  Do -- other than *Echavarria*, do I have any authority for the notion that a final judgment that's been vacated is still accorded final judgment status?

MR. COLLINS:  *Echavarria* and any cases that are mentioned within, which I don't have in front of me, but they --

THE COURT:  The only one I noticed was that First Circuit, which as I said, didn't --

MR. COLLINS:  Correct.

THE COURT:  Wasn't terribly persuasive.

MR. COLLINS:  Yes, Your Honor.

THE COURT:  On the failing to state sufficient facts, plaintiff responds to your argument that they don't -- that at this point, where they've alleged all of these people -- that different people were involved, and they don't yet know which ones necessarily did what, that they can bring these allegations.  What's your response to that?

MR. COLLINS:  That's not the standard, Your Honor. That's not the standard under *Iqbal* and *Twombly*.  As Your Honor has pointed out, we've got 35 years here of putting together the facts of a well- -- well-developed record.

THE COURT:  I'm sorry.  Thirty-five years of a well- -- I mean, bear with me.  When did this box come to

light?

MR. COLLINS:  I'm sorry, Your Honor?  What box?

THE COURT:  The box of documents that was the basis --

MR. COLLINS:  The binder?

THE COURT:  Yeah.

MR. COLLINS:  I have to go back and look, Your Honor.  2005, maybe.  I don't remember.  I don't remember the date.

THE COURT:  Is that correct, that that came out in 2005, plaintiff's counsel?

MR. COLLINS:  Sorry.  2016, Your Honor.  My apologies.  2016.

THE COURT:  Okay.  So it would be fair to say -- well, you're saying we've had 35 years for him to litigate this.  For those 35 years, he was behind bars, and your client wasn't turning over the information that he was seeking.  So --

MR. COLLINS:  Your Honor --

THE COURT:  -- I'm not sure that the 35 years is a good thing to be focusing on.

MR. COLLINS:  Well, I disagree, Your Honor, and here's why.  You're -- you know, we're painting with a very broad brush here.  And I want to address Your Honor's comment earlier about, you know, shouldn't we be figuring out if

there's any there, there?  Absolutely we should be figuring out if there's any there, there.

But we don't do that with a scorched-earth policy or approach, and we don't do that at anyone's expense.  And I think, Your Honor, what we're doing here is we're doing it at Officer Whelan's expense.

Your Honor, we represent Trooper John Sprague in this case.  If you note, we didn't file a motion to dismiss for him.  We filed an answer because, as Your Honor said, it was appropriate for this case to determine whether or not there's any there there.  But we don't do that at the expense of anyone.  And I feel as though that's what's being done here with Mr. Whelan.

What I mean by 35 years is there's a 35-year record.  I mean, that we have the -- as plaintiff, there is, you know, the benefit of looking, in the year 2020/2021, at the entire record.

And what is very evident, Your Honor, from the complaint here -- and I want to implore Your Honor to look at the complaint in this case -- not Mr. Weichel's counsel's arguments, however eloquent they may be in his opposition.  I want to implore Your Honor to look at the complaint in this case, because that's what matters.  That's what's the controlling document here.

And out of 253 paragraphs, Your Honor, Edward

Whelan is mentioned and mentioned only in passing twice.  And he's mentioned only for driving or riding in a van.  That's it.  There's nothing else there with respect to Mr. Whelan. If you read the complaint, Your Honor, all you're going to read -- if you look at it closely -- all you're going to read is group pleadings.  You're going --

THE COURT:  Right.  But -- so if I have an allegation that there were several defendants in the van, and there's an allegation that one or another defendant did something, but he doesn't know which one of the defendants, are you saying that, under *Iqbal*, I need to throw it out because he doesn't know which one did something, or are you saying that whatever he says about any one of the three isn't enough?

MR. COLLINS:  Well, it can't just be something, Your Honor.  It can't be, well, he did something.  I mean, that can't be the standard here.  You know -- and that's all we have here in the complaint if you read it.  All we have is that Mr. Whelan was in the van.  They don't say that he did anything.

THE COURT:  Does it say what defendant -- what some defendant does in the van?

MR. COLLINS:  Yes.  And that's all that it ever says.

THE COURT:  And what does it say that that -- some

defendant did?

MR. COLLINS:  Well, let me pull up the complaint here, Your Honor, and I'll read it to you.

THE COURT:  Mr. Weichel, if you can put your finger right on it, you're welcome to let me know what it is you're saying a defendant --

MR. LOEVY-REYES:  Paragraph 105, Judge.

MR. COLLINS:  I have it here:  Defendants in general and Defendants Sprague and Wilson -- don't mention Mr. Whelan -- Defendants Sprague and Wilson participated -- fabricated evidence that each of the teenagers expressly identified plaintiff.

Defendants, including but not limited to Sprague, used this false evidence that one or more of the teenagers expressly identified plaintiff.  Defendants, including but not limited to Leahy and Wilson, learned during the investigation that eleven credible witnesses told investigators that the composite picture looked like X, Y, and Z.

THE COURT:  Okay.  I don't think you're answering my question.

MR. LOEVY-REYES:  Judge, if --

THE COURT:  You said to me that they were in the van, and that's all there is, is this allegation in the van. And I was saying, what did they say about what happened in

the van?

MR. LOEVY-REYES:  Judge, if I may --

THE COURT:  Yes.

MR. LOEVY-REYES:  -- at paragraph 103 of the complaint, it alleges the second van ride occurred on June 12, 1980.  Defendants Sprague and Whelan drove in a van with Mr. Foley and LaMonica's two brothers, who were not witnesses to the murder, around South Boston.

Paragraph 104, the victim's brothers directed the location of the purported South Boston search, though there is no police report explaining why that occurred.

Paragraph 105, one or more of the defendants in the van, which previously identified Whelan or Sprague, stated to Mr. Foley, "Isn't he the one?" or words to that effect in reference to plaintiff.  Mr. Foley then purportedly identified plaintiff.

Paragraph 106, this "random," in quotes, "identification," in quotes, was unduly suggestive and staged to cause a false identification of plaintiff.

Paragraph 107, a photograph of plaintiff taken during the suggested van ride with Mr. Foley was introduced at trial against plaintiff.

Those are the allegations against Mr. Whelan.

THE COURT:  Okay.  So, Mr. Collins, you're saying to me that I can't count those because it doesn't say

"Mr. Whelan."  But let's assume that I'm prepared to say that those say "Mr. Whelan."  Are you -- that that's enough for me at this stage for pleading.

Are you saying that, even if this said, "Whelan stated this and Whelan was in the car," that wouldn't be enough?  I mean, I'm just trying to focus on what your problem is.  Is the disagreement here that he can't use the word "defendant" without specifying which one of the defendants made the statement?

MR. COLLINS:  Your Honor, it's all got to be viewed together.  Again, there has to be -- I mean, we can read the language from *Iqbal* and *Twombly*.  There has to be more than mere conclusory allegations.  All he's saying is that Mr. Whelan was in the van.

THE COURT:  No, he's saying --

MR. COLLINS:  That's all he's saying.

THE COURT:  Mr. Whelan may well be one of the people who made the -- Mr. Whelan may have said this.  That's how I read this.  And the question is -- so *Iqbal* and *Twombly* -- I mean, let's be clear about what we have.  We have a standard on a motion to dismiss that allows a judge to sweep things out that aren't plausible, right?  And we want to make sure that defendants fairly understand what the accusations are so they can defend against them.  That's sort of what we have.

If I oversweep that's appealable.  If I undersweep and force you to have to bring it forward on a motion for summary judgment, that doesn't violate *Iqbal* or *Twombly*.  I have authority under *Iqbal* and *Twombly* to sweep the things I don't think are plausible.  But I don't have the obligation, if there's something there that seems plausible to me that gives you sufficient notice of the claim, to allow you to get rid of it without having an opportunity to determine which of these people in there made the statement.

Now, if you're saying to me, even if it's Mr. Whelan who said this and made the suggestive identification, that's not enough, that's a different argument, and we can talk about that.  But if you're saying it's because it doesn't specify that Mr. Whelan is the person who made the statement as opposed to the other person who was driving, that's not going to work for me.

MR. COLLINS:  Well, and, Your Honor, again, you know, we'll respectfully disagree then, because, you know, I do believe that *Iqbal* and *Twombly* do require something more than sweeping generalizations, something more from a 253-paragraph complaint than saying, you know, "Hey, this guy is in car, and somebody -- we're not going to say who -- somebody, so we can get over the hump" --

THE COURT:  Well, it's not, "We're not going to say who."  It's 35 years, and you have all the information, and

he doesn't.  I don't -- so your client says, "It wasn't me," and then that's the end of the case because he can't prove it was him.  But why is your client allowed to get out of it without having to say, "It wasn't me"?

MR. COLLINS:  Because, Your Honor, we have -- what we have -- because, as I said earlier, there are ten defendants in this case.  I mean, we're not talking about -- what we're talking about, narrowing this case to the parties that should be here.  Okay?

And Defendant Sprague, who, you know, I -- I guess I have to wonder why it is that, you know, this dearth of a record allows the plaintiff to spell out in great detail all the things that Mr. Sprague did or all the things that Mr. Wilson did, but somehow there's a dearth of a record.  We can't talk about what Mr. Whelan did, and I suggest there's a reason for that.

THE COURT:  I don't know the answer to the question, but maybe we'll figure that out.  Maybe the answer is because they weren't there and they didn't do anything. Maybe the answer is it depends who testified at trial.  I don't know.

MR. COLLINS:  Your Honor, I -- yeah.  Your Honor, we have Trooper Sprague in the case.  We answered for Trooper Sprague.  We didn't file a motion to dismiss.  Okay? Trooper Sprague is in the case, and we concede that at least

for now he should be.  Mr. Whelan should not.

THE COURT:  I have been there with the City of Boston where we've gotten rid of some of the defendants.  And then we go through discovery, and some of the defendants say, "Well, actually, it might have been this other person who was there and not the first person."  I mean, you know, at the end, the whole case goes away.  It doesn't matter.

By why get rid of people because there's three people there, and you're not certain which one of the three?  That's different than saying we're just alleging defendants all the way through.

You certainly can't just allege defendants all the way through.  But to have said who is there in the car, who writes the report, who does the interviews, the fact that you don't know which of the two people did what --

MR. COLLINS:  Well, again, Your Honor, we seem to know which of the people did what on a number of occasions as spelled out in the complaint and in quite a bit of detail.  And I'll suggest to you the reason we don't know, quote/unquote, who is saying what in the van is because it's not there.  It doesn't exist.

THE COURT:  It's not there because the evidence will not come forward?  I mean, I don't know what you mean, it doesn't exist.  There was a van ride.  And you'll have the people in the van either say these statements happened or

these statements didn't happen, and they may say -- if statements happened, they may say here's who said the statement or who isn't.  They may say Mr. Foley just identified him on his own and no one pointed it out.  There will be some set of facts.

But why do I have to decide that set of facts on the pleadings, when you have the information and the plaintiff doesn't necessarily?

MR. COLLINS:  Yeah, I -- I -- you know, Your Honor, again, I -- I'm -- I struggle with this argument that plaintiff doesn't have the information, when we've got a 253-paragraph complaint that lays it out in detail.

THE COURT:  Has he taken the deposition of any officer?

MR. COLLINS:  Of course not, Your Honor.

THE COURT:  Okay.  So how is it that he's supposed to know everything that happened?

MR. COLLINS:  Perhaps the same way he knows to be able to spell out in detail everything against Officer Sprague and Officer Wilson and everyone else that's listed in that case -- in the case, as well as his state case, the Chapter 258D matter.

You know, Your Honor, it's -- there has to be -- right?  I guess what I would say is, under Your Honor's posit, when is a case ever, you know, to be dismissed on

*Iqbal* and *Twombly* grounds if we're just simply going to say, well, nobody knows anything at the beginning of a case, and so we're going to let everything go forward?

THE COURT:  Mr. Collins, that's not the problem here.  There are certainly a lot of cases where people just make implausible allegations, and lots of things get knocked out under *Iqbal* and *Twombly*.

But where you are talking about the fact that, between two or three defendants, we don't know exactly who said what when, the idea that a plaintiff, therefore, can't bring the case is a little bit hard to -- it's a hard thing to do, particularly when one side has the information.

If he's there in the room and he knows which person said what, he certainly can't go around with that kind of pleading.  But where he doesn't have that information and you do -- you know what the claim is.  You know what the facts are.  This isn't a case of saying, "I'm going to sue the whole department and see who's going to be there."  I think he has made an effort to say who was in the room for which of these events.

I am not -- I do not want to have this case, at the end of the day, have, you know, 100 different things going on with a 100 different claims.  Absolutely not.  And it may be that we -- you know, things get narrowed down.  My experience is that competent counsel can figure out, after you do a

little bit of digging, who should properly be wherever and who shouldn't, that you often will see things get dismissed along the way.  It may well be that your client has no business being there and he should get out quickly.

But at this point, he was there on the scene.  He's going to be deposed as a witness whether he's a defendant or not.  And I don't really see why those facts don't come out first.

MR. COLLINS:  Your Honor, there are other bases, obviously.  We have a qualified immunity argument.  We have an argument that there are simply, on the face of the complaint, no bases at all to assert that there are any constitutional violations by Mr. Whelan, no facts alleged such that, you know, you could find that Mr. Whelan violated any of Mr. Weichel's statutory or constitutional rights.

So we rely on those arguments as well in conjunction with what we continue to assert in this case, which is that there are not, under *Iqbal* and *Twombly*, plausible facts in a 253- -- detailed, detailed complaint, that should allow an officer, who is in the twilight of his life, after having been retired from the force for over 30 years, be dragged through a situation where you have the trooper, again, who there are numerous, numerous detailed allegations against -- against whom this case can and will, at least for the moment, go forward.

THE COURT:  I'll go back and read the papers. Anyone else want to get the last few words in?

MR. LOEVY-REYES:  No, thank you, Your Honor.

MR. OUELLETTE:  Your Honor, may I --

THE COURT:  Yes.

MR. ANJOMI:  Mr. Ouellette?

MR. OUELLETTE:  May I address the Court briefly, Your Honor?

THE COURT:  Certainly.

MR. OUELLETTE:  The issue preclusion matter, that is an issue that would impact Defendant Wilson as well if he is added to the suit.  I, obviously -- I don't currently represent him.  I may if he's part of the suit.

I would ask Your Honor that perhaps you reserve on that issue until I would say other parties affected by it have the opportunity to address it.  And I don't know that that issue has really -- the record that would be necessary for the Court to look at that issue has been fully developed on a motion to dismiss at this stage and that -- I don't know that the Court's specific findings at the trial stage regarding the identification issue, the specific findings made at the motion to suppress stage and subsequent findings regarding the identification issue are directly before the Court at this time or the -- it's clear what the Court's reliance upon the identification issue was as a basis for

overturning the conviction.  I'm not sure that all that information is before the Court and the record has been fully developed.

And given, I think, the discussion that -- the First Circuit's decision is a bit confusing on this issue.  And, you know, we do have another district court decision that addresses the issue, but -- and it appears to be going a different way.

I'd ask that perhaps the Court reserve on that issue until maybe summary judgment rather than making any preclusive finding on the -- on the issue of preclusion issue at this time until all parties have a chance to weigh in that might be affected by it and have a chance to really fully develop the record at summary judgment.

THE COURT:  I -- that's fine.  I am happy to -- your, potentially, future client hasn't had a chance to weigh in; and I wouldn't preclude them based on something that was litigated before they were parties.  So that is a reasonable request.

I would -- I would suggest that the issue that you may want to think about framing on summary judgment may be a slightly different issue, which is, I think -- I think the -- what has -- where I've gone, taken a fairly strong stance here, is using the formality of issue preclusion, which is different from saying, you know what?  There was a decision

that was a reasonable, thorough, et cetera, decision, and it should be respected, sort of more of a law-of-the-case kind of a case, kind of an argument.

I mean, you want to make that law-of-the-case argument, it's all the same parties, I'm open to considering what was considered. As you said, I don't have that full record. I have no idea. I don't know if there's any relationship between this and between the new things. I'm open to any of that type of argument.

The argument that I am reflecting -- and, again, I'm not precluding your client from raising that since they weren't here, but just so you understand my thinking, the argument I'm rejecting is a formalistic argument that would say, right or wrong, that issue was decided; and it's done, and you can't think about it, which is a different issue than saying that issue was thoroughly considered, here's why it is, here's why you don't want to second-guess it, it's the efficiency of the parties, the -- you know, whatever. That's just different. Like I said, that's law of the case.

And I can see arguing for a kind of a law-of-the-case approach here where we're dealing with parties; and it is, in some ways, a continuity, even though one was a criminal and one was a civil. You might be able to sell me on a law-of-the-case argument.

But -- and, again, I'm not absolutely precluding

you, but that is the way that I'm looking at the issue preclusion argument, is that the issue preclusion argument is this formalistic thing that says when one case is decided, right or wrong, it's done; and your only remedy to that one case that was decided is an appeal of that case or a Rule 60 motion to set aside that case.  You can't come into a new case and reconsider that issue.

That formalistic one, seems to me, doesn't apply because of the vacating of the judgment.  But the broader concept -- and Mr. Collins tried to say it in terms of equity.  And to the extent there's sort of a broader "these issues have been properly considered and there's no reason to look at them differently," I'm not precluding that from being raised as an argument.

I'm simply saying that a formalistic document of -- issue preclusion doesn't seem to me to apply here where a judgment has been vacated, recognizing that there is -- you know, Judge Burroughs' decision says -- goes the other way. I did see that.

But anyway, so, yes, your client can raise it; but I would think it's a more persuasive argument not as a -- not as an issue preclusion argument, but as a law-of-the-case argument.

MR. OUELLETTE:  Thank you, Your Honor.

THE COURT:  Okay.  I will take a last read of those

things and hopefully get something out.

We do need to have a scheduling conference, right? We've had initial disclosures and nothing more?

MR. LOEVY-REYES:  Yes, Judge.

MR. ANJOMI:  Your Honor, I had one additional issue to raise, and it kind of follows up on the conversation you were having with Attorney Collins and your statement to me or -- me and Ms. O'Connor, Attorney O'Connor, that out of the respect for the widow, we should see what we can do to help out.

The issue that we raise in the motion to dismiss is that, even if you accept all the allegations against Walsh and Derby to be true, that the five -- that the five counts still don't make a claim against the two of them.

I understand that they're not -- neither of them are my client, but I still am going to ask that the Court dismiss those claims against them, because even assuming that those two paragraphs -- and they're 118 and 119 that state what they did -- that neither -- those two sentences are insufficient to make out a claim for due process violation, for conspiracy, for malicious prosecution, for intentional infliction of emotional distress, and failure to intervene.

And I'm not going to reiterate the arguments that are briefed by both parties, but I would ask that the Court consider dismissing the individual defendants.

THE COURT:  So once those -- once you have been -- process has been served, if someone wants to bring a motion to dismiss, I will consider it.  And I can give you the following guidance on it, which is that, to the extent your argument is, "We don't know the specific -- which defendant did what isn't clearly identified," I'm not terribly sympathetic about that right now.

To the extent you're saying, "Yes, this person could well be part of these allegations against defendants, but we still don't think that raises a claim," you certainly have a right to make that argument.

I think the -- so the argument on the -- the argument that you're pointing to is the Bos- -- this is the Boston Police told the Braintree Police that an informant had identified Mr. Weichel and Mr. Barrett as the perpetrators?

MR. ANJOMI:  Correct.  And it's the latter argument that I'm making, which is that's insufficient to state a claim, not we don't know what they did.

THE COURT:  What's your response to that, Mr. Loevy-Reyes?

MR. LOEVY-REYES:  Judge, we make allegations in paragraphs 119 and 120.  They're alternative pleading.  So our position is that that information was fabricated.  We just don't know who fabricated it.  Either Defendants Wilson and Sprague fabricated the confidential informant information

and attributed it to Mr. Derby and Mr. Walsh, or Mr. Walsh and Derby fabricated it.

But we don't -- there's never been -- throughout the entire discovery in the criminal case up till now, no one has ever gotten to the bottom of how that information ever came about.  There's no police report on it for the first two weeks, even though Mr. Weichel's photograph was in a photo array the day after the murder.

There's nothing.  There's not piece of evidence that anybody has ever shown the defendant in the criminal case or the plaintiff in this case or, you know, Mr. Weichel at all about how that information was ever gathered.  It's our position that it's fabricated information.

MR. ANJOMI:  And I -- and my position is, even assuming that statement is true, he still doesn't allege a due process violation under 1983, because I --

THE COURT:  If the police officers fabricated the evidence, you don't think that gets you there?

MR. ANJOMI:  No, not unless he can establish that that evidence was used for an arrest or a detainment, and there's no allegation that that evidence was used in any manner.

THE COURT:  Well, there's an allegation that they had absolutely nothing against this guy, against Mr. Weichel, but somehow he was identified and then brought in.  That's

their claim.  Their claim is that nobody except your City of Boston police officers brought up Mr. Weichel's name, and that Mr. Weichel only appeared because of what your -- what the City of Boston police officers said.

MR. ANJOMI:  That's not the allegation in the complaint.  There's allegations that there was someone else who identified the plaintiff that there were -- that there were teenagers or students -- I forget how they're identified --

THE COURT:  The allegation is that the teenagers didn't have enough information.  The allegation here is that the teenagers didn't have enough information to identify him and that it was the City of Boston that came up with the name and that it was the Braintree officers who then went and got the individuals to testify to that.

I mean, I -- it may be -- it may not get there.  They may not be able to ever prove that.  But if those facts were true, why wouldn't that be a violation?

MR. ANJOMI:  Because that still doesn't lead to the -- to his detainment or arrest.  That allegation isn't in the complaint, that this information was used by the Braintree department.  It's missing.  It's not in there.

THE COURT:  Well, it is -- I'm understanding, from my reading of this, their claim is -- and if that's not your understanding, I will certainly -- plaintiff's counsel should

correct me if that's not what you're trying to say, is that that is the source of the information, of the identification.

MR. LOEVY-REYES:  That's right, Judge.

THE COURT:  So do you need him to amend the complaint to put that sentence in?  Because it seems to me that's what this whole thing is pregnant of -- saying.

MR. ANJOMI:  At the end of the day, I obviously don't represent them.  The City might be coming back in when we're served.  But I -- but that allegation isn't in there, and I'm -- I would raise it again if the City comes in.  But it also doesn't fix the malicious prosecution claim.  Again, no allegation --

THE COURT:  It may not fix the malicious prosecution.  It may only -- you know, obviously, we'll go through; and at some point, you're going to have -- some people are going to go away.  Some claims are going to go away.  Maybe everything goes away.  I don't know.

But right now, I -- what I -- what I've -- what I see -- what I see here is a plausible set of facts alleging that there was a group of people who did this.  I am cautious about those pleadings.  I don't think that the -- I think the fact that, regardless of what happened in -- with the motion for a new trial, the fact that it was contested all the way up to the single justice suggests that there's very different views of this.  And I recognize that.  I'm not accepting the

plaintiff's version of this event as true.

But based on these allegations, which is what I need to accept for purposes of where we stand today, there's a plausible claim that he was framed. And I understand this is going to be hotly debated. I get that. I don't -- I don't -- I'm not -- I am not -- I am not assuming that these claims are right at all. I'm just simply saying he's made a plausible claim about it.

And, yes, there's lots of different pieces -- people who have a different part in it. There's a number of different defendants. But the allegation here is that that's what happened here, that there was exculpatory evidence that wasn't brought forward, that there was an allegation that this was him when it wasn't him, per the confidential informant.

Now, it may be that the Boston defendants relied on a confidential informant, and they were appropriately -- that was a permissible thing for them to do, end of day. You may get there very quickly. But I don't have that in front of me here.

MR. ANJOMI: Understood, Your Honor.

THE COURT: Okay. I think we are in recess. Thank you.

Oh. I'm sorry. Scheduling order. Can I have you -- if you want to see me again, you're welcome to; but

otherwise, we can -- you can confer and come up with a proposed discovery schedule.  And submit it, say, in a week?  Is that enough time?

MR. LOEVY-REYES:  That should be enough time, Judge, from plaintiff's perspective.

THE COURT:  So it will be -- at this point, the City of Boston is not involved; but given that the City of Boston may be brought back in, I would ask that you confer with them.  I won't ask them to necessarily have to worry about signing in on -- signing on things, but it's just more efficient if you hear them out --

MR. LOEVY-REYES:  Of course.

THE COURT:  -- on putting together a schedule.  And so for the rest of you, give me a proposed schedule, and let me know if you want to see me for the scheduling conference if you have any disagreements.  Otherwise, I'll just sign off on it.

MR. LOEVY-REYES:  Very good, Judge.

MR. ANJOMI:  Thank you, Your Honor.

MR. COLLINS:  Thank you.

THE DEPUTY CLERK:  Now we're in recess.  Thank you.

(Court in recess at 11:38 a.m.)

**CERTIFICATE OF OFFICIAL REPORTER**

I, Robert W. Paschal, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 27th day of July, 2021.

/s/ Robert W. Paschal
_____

ROBERT W. PASCHAL, RMR, CRR
Official Court Reporter