# EXHIBIT 1

1                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS

2

3      _____

4      FREDERICK WEICHEL,               )
                                  )

5             Plaintiff,        )
                                  )

6         v.                   )   Civil Action No.
                                  )   1:20-cv-11456-IT

7      TOWN OF BRAINTREE, et al.,     )
                                  )

8            Defendants.       )
                                )

9      _____

10

11     BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE

12

13          MOTIONS HEARING BY VIDEOCONFERENCE

14

15            Wednesday, May 12, 2021
                10:05 a.m.

16

17

18

19

20

21    John J. Moakley United States Courthouse
    Courtroom No. 9

22    One Courthouse Way
    Boston, Massachusetts

23

24    Robert W. Paschal, RMR, CRR
    Official Court Reporter

25    rwp.reporter@gmail.com

```
1                      A P P E A R A N C E S

2
     On behalf of the Plaintiff:
3
         LOEVY & LOEVY
4        BY:  MARK LOEVY-REYES
         311 North Aberdeen Street
5        Third Floor
         Chicago, IL  60607
6        (312) 243-5900
         mark@loevy.com
7

8
     On behalf of the Defendants Town of Braintree and James
9    Leahy:

10       BRODY HARDON PERKINS & KESTEN, LLP
         BY:  EVAN C. OUELLETTE
11       699 Boylston Street
         Boston, MA  02116
12       (617) 880-7100
         eouellette@bhpklaw.com
13

14
     On behalf of the Defendant Edward Whelan:
15
         OFFICE OF THE ATTORNEY GENERAL
16       BY:  JEFFREY T. COLLINS
         One Ashburton Place
17       18th Floor
         Boston, MA  02108
18       (617) 727-2200
         jeffrey.collins@state.ma.us
19

20
     On behalf of the Defendant City of Boston:
21
         CITY OF BOSTON LAW DEPARTMENT
22       BY:  NIEVE ANJOMI
              NICOLE M. O'CONNOR
23       One City Hall Plaza
         Room 615
24       Boston, MA  02201
         (617) 635-4098
25       nieve.anjomi@boston.gov
         nicole.oconnor@boston.gov
```

**P R O C E E D I N G S**

1
2          (In open court at 10:05 a.m.)

3          THE DEPUTY CLERK:  United States District Court is

4     now in session, the Honorable Judge Indira Talwani presiding.

5          This is Case Number 20-cv-11456, Weichel versus

6     Town of Braintree, et al.  Will counsel please state their

7     names for the record.

8          MR. LOEVY-REYES:  Certainly.  On behalf of

9     plaintiff, Mark Loevy-Reyes.  Good morning, Judge.

10         THE COURT:  Good morning.

11         MR. COLLINS:  Good morning, Your Honor.  Assistant

12    Attorney General Jeffrey Collins on behalf of Edward Whelan.

13         THE COURT:  Good morning.

14         MR. COLLINS:  Good morning.

15         MR. OUELLETTE:  Good morning, Your Honor.  Evan

16    Ouellette on behalf of Defendant Town of Braintree and James

17    Leahy.

18         THE COURT:  Good morning.

19         MR. ANJOMI:  Good morning, Your Honor.  Nieve

20    Anjomi on behalf of the City of Boston.

21         THE COURT:  Good morning.

22         MS. O'CONNOR:  Good morning, Your Honor.  Nicole

23    O'Connor, also on behalf of the City of Boston.

24         THE COURT:  Good morning.

25         So I have a number of motions here, and I was going

1    to try to make my way through them all.  And I wanted to

2    start with the two -- with Boston and Braintree's motion to

3    dismiss the indemnity claim.  So if one of the moving counsel

4    would like to start in on that?

5            MR. OUELLETTE:  I'm happy to start on behalf of the

6    Town of Braintree, if that would be all right with the

7    counsel for the City of Boston.

8            So Count 7 is a count alleging, quote,

9    "indemnification," quote, against the Town of Braintree.  And

10   our argument is essentially that, one, the plaintiff lacks

11   standing to bring a claim of indemnification against the

12   town.  We cited the *Stull v. Weymouth* case that, I think,

13   stands for that exact proposition, which -- I'm quoting --

14   "only the Officer Defendants, if found liable to Plaintiffs,

15   have standing to sue the Town Defendants for indemnification.

16   Plaintiffs themselves have no standing to claim

17   indemnification on behalf the Officer Defendants."

18           And that's exactly what the plaintiff is seeking to

19   do in that one count against the Town of Braintree, which is

20   bring a claim against the Town, requiring it to indemnify a

21   future judgment against the defendants, either deceased or

22   alive, if there is a future judgment against those

23   defendants.  And the Town --

24           THE COURT:  So let me stop you with a question.

25   You said standing.  I understood your argument to be

1    statutory standing, that there's no standing under the

2    statute, or is it Article III standing that you're alleging,

3    arguing?

4            MR. OUELLETTE:  I think it would be -- no, I don't

5    know if it's that.  It's standing in that they simply do not

6    have a claim.  There is no obligation for a defendant

7    municipality to pay the proceeds of a judgment to the

8    plaintiff; rather, the duty would be, if there was a duty to

9    indemnify, which I'll get to in a moment -- and for

10   Braintree, there is none -- that duty would be owed to the

11   employee who was the defendant, not the plaintiff.

12           THE COURT:  So my question was really a procedural

13   one.  Do you see it as a 12(b)(1) or a 12(b)(6) argument?

14           MR. OUELLETTE:  Oh, I see what you mean.  I guess

15   it would be 12(b)(1), but we also have a 12(b)(6) argument.

16           And the 12(b)(6) argument, which I -- probably my

17   main argument, which is, one, that the complaint does not

18   include a single fact which would demonstrate that the Town

19   had obligated itself to pay any future judgment against any

20   of the Braintree employees.  In fact, I think, in a motion,

21   the defendants -- the plaintiffs, rather, admit that they

22   have no factual basis for alleging that the Town of Braintree

23   has an obligation to indemnify its employees.

24           And the obligation that typically exists for

25   municipalities in Massachusetts is under 258, Chapter 258,

1   Section 13, which if a town adopts that section or its

2   predecessor statute, it obligates itself to indemnify its

3   employees.  And it's undisputed the Town of Braintree has not

4   adopted Chapter 258, Section 13, or its predecessor statute.

5   Rather, it is bound only by Chapter 258, Section 9, under

6   which indemnity of any employee for any claim of liability

7   against them is purely discretionary.

8           THE COURT:  Okay.  So let me stop you.

9           For plaintiff's counsel, I think I agreed with you

10  that this is really not a 12(b)(1).  It's really a 12(b)(6)

11  issue.  But I don't understand any argument for why you would

12  have a direct claim against the cities here.  Regardless of

13  9, 9A, 13, whichever way you go, all of them, it seems to me,

14  are issues that the employee may have a claim, but not that

15  you have a direct claim against the City.

16          MR. LOEVY-REYES:  What plaintiff would contend,

17  Judge, is that Section 258 doesn't limit the indemnification

18  to be brought only by the employee.  And I agree, we are on

19  weaker footing if it's a Section 9 case versus a Section 13

20  case.  But what I would ask the Court to do is what --

21          THE COURT:  Well --

22          MR. LOEVY-REYES:  Oh, go ahead, Judge.  I'm sorry.

23          THE COURT:  I guess -- I guess my question would

24  be -- you're saying there's nothing that limits it.  I guess

25  my question is, what is it that -- what statute are you suing

1    on?  What gives you a right to indemnity?

2              MR. LOEVY-REYES:  Sure.  We would contend that

3    Section 258 does give the right to indemnity, even if it's a

4    Section 9 case.  What we would ask the Court to do is what

5    Judge Burroughs did in *Echavarria*, which is to not dismiss

6    the claim at this stage, allow plaintiff to pursue discovery

7    against the municipalities to determine the extent to which

8    they have taken on the obligation to indemnify, and then

9    revisit the issue when it comes time for motions.

10             THE COURT:  Isn't that an argument as to why I

11   should allow you to proceed against the individual

12   defendants, and we can get to that when we get to that

13   argument?  Right now, my question is, you want to state a

14   claim against the municipality directly?

15             MR. LOEVY-REYES:  Yes.

16             THE COURT:  And it would seem to me, in order to

17   state a claim against the municipality directly, you would

18   have to have some basis for saying they have an obligation

19   they owe to you.  And I'm having a hard time finding that.

20             And the case law -- the statute doesn't say that,

21   and the case law that the cities have cited seems to suggest

22   that they're correct here, that the person with a claim can't

23   go directly under the statutes to the person who is

24   supposedly indemnifying their wrongdoer.  I mean,

25   essentially, what you've done is sort of try to create

1   respondeat superior liability under 1983, which we all know
2   we can't do that.  So --
3          MR. LOEVY-REYES:  Well, essentially, what we've
4   done is we've claimed that the statute gives a separate basis
5   for collecting any judgment against the municipalities.
6          THE COURT:  But that's a different question.
7          MR. LOEVY-REYES:  Right.
8          THE COURT:  When you have a judgment -- once you
9   have a judgment, then you have a question of, where does one
10  get one's judgment from, right?  You maybe go to seize
11  someone's house.  You're going to do various different things
12  once you have the judgement.  But right now we're just at the
13  stage of, who are the parties to this litigation?  And the
14  fact -- I mean, the fact that you may ultimately want to go
15  after someone else to satisfy a judgment doesn't make them a
16  defendant in the first instance.
17         MR. LOEVY-REYES:  And it's plaintiff's position
18  that the statute itself makes them equally liable and that a
19  judgment can be obtained.  But I guess, just to back up, I do
20  want to point out that there is also a separate *Monell* claim
21  against the Town of Braintree, so --
22         THE COURT:  And they haven't moved to dismiss it.
23         MR. LOEVY-REYES:  No, exactly.  I just want to make
24  that clear that there is still going to be the Town as a
25  defendant itself.  But we do think that the statute does

1       allow for the claim.  And as I had mentioned,

2       Judge Burroughs, in *Echavarria,* allowed plaintiff in that

3       case to pursue discovery with regard to the extent of the

4       indemnification obligation.

5               THE COURT:  Okay.  So I think my inclination

6       here -- and I will go back and revisit everything on the

7       papers after we talk, but I -- or after this hearing.  But I

8       think where I'm heading here is that the indemnity argument,

9       the indemnity claim goes away.

10              But I think the next thing to then talk about is

11      your interest in going after the dead -- the deceased

12      individuals.  And so let's talk about that motion next, which

13      brings up the same issues of -- in some way, some of the same

14      issues of what the cities are or are not ultimately on the

15      hook for.

16              MR. LOEVY-REYES:  Sure.

17              THE COURT:  So that is your motion, so I'll let you

18      start on that one.

19              MR. LOEVY-REYES:  Yes, it is, Judge.  And as the

20      Court is well aware, Section 1983 and the cases that

21      interpret it recognize the importance of claims such as

22      Mr. Weichel's claim and the importance of trying to bring all

23      those cases before the Court.

24              One of the things that we're seeking to do here is

25      to allow plaintiff to proceed against various deceased

1   defendants, and Massachusetts law allows a mechanism for that

2   to be able to pursue claims against the holder of a liability

3   bond.

4          In this situation, we claim that, because of the

5   indemnification stuff, which we talked about previously, the

6   municipalities have taken on what's akin to a liability bond,

7   which is undefined in the Massachusetts statute.  We believe

8   that that allows us a basis to proceed against those

9   municipalities.  And to be clear, plaintiff does not seek to

10  pursue any claims against any estates, and that's another

11  requirement that's under the Massachusetts statutes.

12         So under that statute and under the -- certainly,

13  as Judge Sorokin analyzed in the *Rosario* case, it serves the

14  interest of justice to allow a plaintiff to proceed against

15  deceased defendants by substituting in parties -- in this

16  case, either the municipality parties or allowing for there

17  to be the naming of a representative for purposes of

18  defending this case.

19         THE COURT:  Okay.  So let's break all of that into

20  a bunch of different pieces here.  Detective Walsh died

21  recently.

22         MR. LOEVY-REYES:  Yes.

23         THE COURT:  So Section 3-803(2) doesn't apply

24  because that's for an action for personal injury or death if

25  commenced more than one year after the death.  So why aren't

1    you just proceeding against Detective Walsh's estate?

2              MR. LOEVY-REYES:  Well, the reason why we are not

3    is because we have not been able to identify a personal

4    representative or an estate for Mr. Walsh.

5              THE COURT:  Okay.  So why isn't the effort here,

6    then, to identify the personal representative for

7    Detective Walsh and then allow that action to pursue however

8    it's going to unfold?  Why isn't that the right move here,

9    rather than -- I mean, I don't see a provision that allows me

10   to jump the gun on a recent death.

11             MR. LOEVY-REYES:  Sure.  And plaintiff is

12   certainly -- certainly willing to proceed in that fashion to

13   see if there's a personal representative -- representative on

14   behalf of Mr. Walsh.  Like I said, we have not been able to

15   locate one.  You know, perhaps -- perhaps counsel could

16   provide some assistance.  I'm sure that they have some

17   information regarding Mr. Walsh's, you know, last whereabouts

18   and, you know, perhaps his estate.  There might be some

19   pension information that perhaps the defense might have.  We

20   just don't have sufficient information about Mr. Walsh, but

21   we're happy to proceed that way, Judge.

22             THE COURT:  So it does seem like I'd like to get

23   this question resolved and get the people in front of me who

24   should probably be in front of me and not play games with

25   trying to figure this out.  I do know -- so under 3-803(a),

1     which is the one-year statute of limitations, it says,

2     "Except as provided in this chapter, a personal

3     representative shall not be held to answer unless the action

4     is commenced within one year."  So we're within one year.

5     And then you have to serve that person.  That's the

6     difficulty you're describing.

7                Or a notice stating the name of the estate, the

8     name and address of the creditor, the amount of the claim,

9     and the court in which the action has been brought has been

10    filed with the register.  So why isn't that an alternative

11    way to go if you can't figure out who the personal

12    representative is?

13               MR. LOEVY-REYES:  Yeah.  Plaintiff -- plaintiff

14    thinks that that actually would be a good alternative, Judge,

15    and --

16               THE COURT:  Does Boston -- does City of Boston have

17    any disagreement that that's a perfectly fine way to

18    approach -- follow here?

19               MR. ANJOMI:  No, Your Honor, no disagreement.

20               THE COURT:  And, now, am I correct that

21    Detective Walsh is -- was a Connecticut resident when he

22    died?

23               MR. LOEVY-REYES:  He was, the last -- as far as we

24    know.

25               THE COURT:  Okay.  So I think what you need to do

1    here -- I don't know how -- what you need to do to serve his

2    estate in Connecticut, but it does seem to me that you need

3    to figure out some steps here on how you're going to notice

4    Detective Walsh's estate.

5           I would suggest to the City of Boston that, out of

6    respect for his widow, you might want to see if you can

7    facilitate this process so he doesn't have to have a personal

8    investigator, private investigator, try and find his widow.

9    And I would strongly encourage you to see what you can do to

10   help out.

11          But at the end, for plaintiff's counsel, you need

12   to figure out what you need to do and get them served --

13          MR. LOEVY-REYES:  Understood, Judge.

14          THE COURT:  -- because I can't do anything given

15   that his death is recent on that.  So that's Detective Walsh.

16          With regard to the other four detectives and

17   officers -- I guess, Chief Polio, Captain Buker,

18   Detective Wilson and Officer Derby -- I feel a little bit

19   like I'm being asked to jump things out of order here.  I

20   mean, the question of how I determine whether there is or

21   isn't a bond, a liability bond, it seems odd to me to be

22   deciding this on a motion to serve process, essentially, to

23   bring someone into the case.

24          And it seems far more logical, as I read the

25   statute, to say -- I mean, what the statute is that we're

1    talking about is, essentially, a statute of limitations.  And

2    what the statute of limitations statute says is it's a

3    one-year statute of limitation once the person dies, except

4    that it's a three-year statute of limitations if -- except

5    that you can still have your normal three-year statute of

6    limitation, but you can only recover a judgment from proceeds

7    of insurance or bond and not from the estate.

8            So I sort of understand that to say you don't have

9    a statute -- this defendant doesn't have a statute of

10   limitations defense where it served -- it's being filed -- or

11   where the action is commencing within the three years, but

12   they're protected, and we don't feel badly about going --

13   bringing this action against the estate of a decedent because

14   they don't have to pay anything if there's no coverage.

15           Why isn't that the right way to look at it rather

16   than my having to decide in the first instance if there's

17   coverage?

18           MR. LOEVY-REYES:  Well, I think because it also

19   allows then for the substitution of a party or the naming of

20   an additional individual.

21           THE COURT:  So I don't see -- I don't see the

22   substitution of a party.  What I see here is -- I don't have

23   to decide the final question as to whether there is or isn't

24   liability under the statute.  I have to say, did you meet

25   your statute of limitations?  If you meet your statute of

1    limitations, you can proceed.  And the actions shall be

2    maintained naming the decedent, serve process on the party

3    you think is going to be paying the bill, but you're naming

4    the decedent.  And then we proceed.

5         And then whether the action -- whether you prevail

6    on the action and have some entity to go after gets decided

7    later or whether a motion will come in to knock it out

8    because there's no coverage.

9         But right now, at this sort of front end, to make a

10   determination as to whether there is or isn't coverage

11   seems -- I'm putting far more in -- or appointing someone

12   different.  I mean, I just don't understand why you're not --

13   why you don't proceed against the defendant.  You serve

14   process on the City or -- Boston or Braintree, and then we

15   see what happens next.

16        MR. LOEVY-REYES:  So what you're suggesting, Judge,

17   is serving on the municipality and then -- and then

18   proceeding against those individual deceased defendants?

19        THE COURT:  Yeah.  You've got the individuals

20   named.  You don't have -- right?  They're named in the

21   complaint as it stands.  You serve process on the entity that

22   you're claiming is providing the insurance or bond, and they

23   can proceed as they see fit.

24        If there's concern that someone might be trying to

25   have them ultimately be held responsible, there wouldn't be

1    something to preclude a pretrial motion.  If they think that
2    they'll deal with it later, they can deal with it later.  But
3    I don't really -- I mean, I'm certainly not going to enter a
4    default at this point, because that seems sort of odd.
5              MR. LOEVY-REYES:  Of course.
6              THE COURT:  Or maybe I do.  I don't know.  Maybe
7    they will need to file this on his behalf.  I'm not sure.  I
8    haven't thought that through.  But it just seems to me
9    premature to say that the action gets knocked out without
10   someone establishing that this doesn't apply.
11             So, now, the defendant city and town have argued to
12   me that I should make that decision, in a sense, already
13   on -- based on Sections 9, 9A and 13.  So let me -- let me
14   just sort of tell you where I'm -- what I'm thinking about
15   here, and maybe you can all respond.  It does seem that there
16   is no argument that Section 13 applies.  Does plaintiff agree
17   with that?
18             MR. LOEVY-REYES:  I'd have to go back and look and
19   see what Section 13 is again, Judge.  I'm sorry.
20             THE COURT:  Well, as I understand it, you have
21   three sections.  And only one of them -- 9 -- the City's
22   claim applies to them; and they're asserting that's a
23   discretionary, not mandatory --
24             MR. LOEVY-REYES:  Oh, I'm so sorry, Judge.  I was
25   thinking we were looking still at the -- at the statute that

1  related to the service of individuals.  No, plaintiff --

2          THE COURT:  But that's all where it comes around

3  too, right?  Because that is your basis for claiming that

4  you're going to have some pool of money to go after.

5          MR. LOEVY-REYES:  Right.  Exactly.  And plaintiff

6  definitely concedes that Section 13 does not apply to the

7  Town of Braintree.

8          THE COURT:  And that Section 9A does not apply?

9          MR. LOEVY-REYES:  Right.

10          THE COURT:  Okay.  So with regard to Section 9,

11  your claim is that the cities may have obligated themselves

12  under collective bargaining agreements; is that correct?

13          MR. LOEVY-REYES:  That's correct, Judge.

14          THE COURT:  Okay.  And am I correct, for the

15  cities, that you haven't provided a collective bargaining

16  agreement to dispute that?  You simply say there couldn't be

17  a collective -- or, actually, I'm not sure.  You're saying

18  that plaintiff hasn't shown you there's a collective

19  bargaining agreement?

20          MR. LOEVY-REYES:  Well, plaintiff was able to find

21  on the City of Boston's website its collective bargaining

22  agreement, at least one of them, which does provide for

23  mandatory indemnification for its police officers.  Plaintiff

24  has not received or obtained a collective bargaining

25  agreement from the Town of Braintree.

1          THE COURT:  I have to confess that I haven't looked
2     at the recent collective bargaining.  I understand it is part
3     of the record.  But I understood from the briefs that the
4     City of Boston disagrees that it provides mandatory --
5          MR. ANJOMI:  That's correct, Your Honor.  It simply
6     references 258, Section 9.
7          THE COURT:  And it doesn't say, "We will provide
8     it"?  It simply says, "We'll provide it within -- as per 9"?
9          MR. ANJOMI:  It says something to the -- they've --
10    so there's two issues here, Your Honor.  First, they've
11    attached a collective bargaining agreement from 2016.  These
12    two individuals retired in the '80s.
13         THE COURT:  Right.  Wouldn't we be using the
14    collective bargaining agreement that was in effect at the
15    time of the events?
16         MR. ANJOMI:  Correct.  They're not members of the
17    current CBA.
18         THE COURT:  Okay.  But the one that was in place at
19    the time, do we know what that said?
20         MR. ANJOMI:  No, Your Honor.  It hasn't been
21    provided.  We do know, from the SJC case in the early '90s,
22    that the CBA did not provide for mandatory indemnification,
23    because that was an issue that went up to the SJC, where the
24    union was arguing that the CBA should include mandatory
25    indemnification.

1          THE COURT:  So which case is that?

2          MR. ANJOMI:  That's cited in the brief.  It's -- I

3    apologize.  I could pull the brief if Your Honor allows me.

4          THE COURT:  I saw a Court of Appeals case that said

5    the arbitrator didn't have authority, but was there also --

6          MR. ANJOMI:  I apologize.  It was a Court of

7    Appeals.

8          THE COURT:  So that Court of Appeal case, I read

9    differently than you do.  I read the Court of Appeal case to

10   say that -- so as I understand it, this was interest

11   bargaining, this wasn't -- or interest arbitration.  This

12   wasn't contract interpretation arbitration.

13          So this was -- the parties had been unable to reach

14   an agreement after three years of bargaining, according to

15   the case history, and the arbitrator imposed a contract.  And

16   the Court of Appeals said you can't impose this on them.  But

17   that doesn't answer the question, to me, as to whether the

18   City agreed at some point for a different contract.  This

19   one, they did not.

20          This one is clearly -- but -- and here's the

21   historical thing that I don't have enough of a handle on, but

22   it looks like the whole landscape changed in about 1978 as

23   some of these laws -- this is when 9 and 9A and 13 came in

24   and replaced some other things.  And then you have -- after

25   that, you have various attempts to do things through that

1    interest arbitration and so forth.

2           What I don't know is what those contracts said at
3    the time there, whether there was indemnification and it went
4    away in subsequent bargaining or whether there never was
5    indemnification.  But that seems like a question of fact that
6    would -- you know, would be the basis for saying this can't
7    proceed, but not now.  I mean, it's premature until I have
8    that information in front of me.

9           I mean, I -- what I see here is a statute of
10   limitations in the personal -- in this section.  And the
11   statute of limitations says the normal three-year doesn't
12   apply for people who are dead, except that it's a one-year --
13   except that, really, we will let the three-year apply if
14   someone else is going to hold the bag instead of the estate.

15          And so it proceeds.  It's not knocked out by the
16   statute of limitations, but he can only collect against
17   someone else who is holding the bag.  And whether there's
18   somebody else to hold the bag or not, I don't think I have
19   that information.  And it seems to me there's no reason to
20   bar him from proceeding until we get to that question whether
21   the defendants bring it up earlier or we wait till we have a
22   remedy.

23          MR. ANJOMI:  Your Honor, I disagree.  I -- this is
24   a red herring, as I've referenced in the brief.  The
25   plaintiff wouldn't have any standing to enforce the terms of

1  a CBA.

2          THE COURT:  I agree with you.  But the question

3  isn't can he enforce a CBA.  The question is -- as I read

4  this, what the Massachusetts legislature has said is,

5  normally, there's a three-year statute of limitations for

6  these claims.  If someone dies, we're going to make it a

7  one-year statute of limitations because we don't want to go

8  after the estate.  But you know what?  We don't need to waver

9  from the normal three years if someone else is going to hold

10 the bag.

11         And so he prevails on this case.  And one of two

12 things can happen.  Either -- let's assume he has facts here

13 to prevail.  You could have one of two things that happen.

14 One is you maybe have successfully knocked this out ahead of

15 time coming in and saying, "He has no right to make us pay,"

16 or it might be that he wins at judgment, and everybody in the

17 world is judgment-proof because the estate is judgment-proof,

18 and the City now comes in and says, "Yeah, that's fine.  You

19 won that, but there's nobody to pay because we're not going

20 the pay."

21         But it just seems that question is too early to

22 decide today.  I don't know whether it would be appropriately

23 done as a pretrial motion or a post trial motion.  But it

24 seems to me it's a question that all we're saying here is

25 there's statute of limitations that bars this claim, except

1    that the claim can proceed, but only to -- he can't get any
2    money from anyone unless there's somebody who has an
3    obligation to pay it.
4            So if you say, "We don't have an obligation to pay
5    it" -- I mean, maybe you're going to decide that what
6    happened here was not -- you know, maybe what happened here
7    isn't the way the facts are that plaintiff is saying, and
8    there's no claim here whatsoever.  Maybe, at the end of the
9    day, you say "Look, the facts here, if it turns out there was
10   this really terrible claim, and it was our intent that this
11   type of thing should be covered" -- I don't know.  But it's
12   not today's fight, I think.  It's not -- he's not -- you're
13   not liable.  You're not on the hook.  He's got to prove each
14   of these steps.
15           The question is, can you kick him out of court
16   today?  And I don't see how you kick him out at this point
17   even if you might be able to kick him out down the road.
18           MR. OUELLETTE:  Your Honor, may I be heard on
19   behalf of Braintree?
20           THE COURT:  Absolutely.
21           MR. OUELLETTE:  So Braintree is on different
22   footing here.  If the manner in which the plaintiff is
23   seeking to proceed against the Town of Braintree is under the
24   potential of there being a collective bargaining agreement
25   where the Town of Braintree has obligated itself to indemnify

1   its employees, because we all agree they have not adopted

2   Section 13 and do not have any additional obligation to do

3   so, I don't think we need to have claims go against the

4   deceased defendants or the Town of Braintree for a very long

5   time to discover whether or not that is so.

6           We attached collective bargaining -- first of all,

7   we have produced several collective bargaining agreements as

8   part of discovery in this case already through the initial

9   disclosures.  It's the plaintiff's burden to demonstrate, in

10  order to get around the special one-year statute of

11  limitations, the existence of a liability bond --

12          THE COURT:  So that's your -- I understand that you

13  framed it that way, that they have to meet these three steps

14  to be allowed to proceed.  My read of the statute is there's

15  a one-year or a three- -- there's -- the three-year gets

16  knocked down to a one-year, except that it's allowed to

17  proceed as a three-year claim.  There's just no money unless

18  there's money somewhere else outside of the estate.

19          So if you can -- so I'm not going to -- I don't see

20  that this is a decision that I make here on a motion,

21  essentially a motion for summary -- for a motion to dismiss

22  or -- I don't know.  I mean, I -- you know, frankly,

23  plaintiff -- I don't think plaintiff needed my permission for

24  this.  And I'm not making a definitive ruling on any

25  liability whatsoever.

1       What I'm saying is he can file his -- under this
2   statute, the way I read it, he has his claim.  I'm not
3   substituting anybody else in.  I'm not substituting you.  He
4   serves the process on the people he thinks are liable.

5       And then if your answer is there's no way, you
6   know, you file a pretrial motion, file -- whether it's a
7   motion for summary judgment, but you -- this idea that he has
8   the burden of proving that, at the end of the day, there will
9   be someone for him to pay, I don't see that as a pleading
10  burden.

11      MR. OUELLETTE:  Well, Your Honor, I would say that
12  in order to get around the one-year statute of limitations,
13  there has to be some way to proceed against those three
14  defendants.  And if --

15      THE COURT:  And I'm saying there's a three-year
16  statute of limitations.  That's the difference of how we're
17  looking at this.  There's a three-year statute of
18  limitations, but you can't go against an estate except for
19  the first year.  That's the way I see it, and he's within the
20  three-year statute of limitations.  He's not going to get a
21  dollar from anyone if you guys aren't on the hook for it.
22  But I don't see how that is his obligation here today.

23      MR. OUELLETTE:  Then, Your Honor, I guess we -- we
24  have produced in discovery collective bargaining agreements,
25  I believe, from 1978 through 1984, none of which include any

1    obligation to indemnify employees.  I would suggest then,

2    once -- if the Town is served, under the uniform probate

3    code, as the party who is allegedly issuing a liability bond

4    from which judgment can be recovered, then the -- we would

5    file something.  I'm not sure how it would go.  I guess we

6    would file it either on behalf of the Town or on behalf --

7    because the Town is really the party in interest, not the

8    individual defendants -- to dismiss based on that.

9            It's a little --

10           THE COURT:  And if you were to do that -- I mean,

11   this is what I would suggest, because I don't want

12   unnecessary litigation here.  I don't want unnecessary

13   parties here.  I just don't think it's appropriate to simply

14   say, "Well, they haven't alleged anything, so they can't do

15   this, so they haven't met their burden."

16           So my suggestion here is you've exchanged -- I

17   don't know what you've exchanged for your initial

18   disclosures, but make sure you've exchanged what you think

19   here might be what you want to use in front of me.  You

20   confer with each other before you file a motion.  And if

21   plaintiff is opposing it still, you file a motion, early

22   motion for summary judgment on this issue.

23           And plaintiff can then come back and tell me what

24   it is that he thinks is going to be a basis for why he has a

25   claim.  I mean, I'm not saying that he wins here.  I'm

1    simply -- it's just a procedural question.  You're asking me
2    to decide that there's no obligation, when I have some
3    contracts.  I don't have very many of them.  And I just
4    don't -- I mean, I just don't feel like I have what I would
5    normally decide on a motion for summary judgment record.
6            And I understand what you're saying.  It's his
7    burden, and I agree.  It's -- ultimately, he's not going to
8    get a penny from these defendants until he meets his -- until
9    he proves his case and proves coverage, both things.  And I'm
10   not precluding you from shortening that ahead of time.  I'm
11   just saying that I'm not going to do that on the outset.
12           As far as I'm concerned he didn't need my
13   permission to go ahead and do this.  And so I'm not ruling on
14   the merits of, is there liability, by any means, or is there
15   a lien?  That's not what's in front of me.  And it seems that
16   that there's no dispute that there's nothing under 9A or 13.
17           But whether there's something under 9, by virtue of
18   collective bargaining agreements, is premature for me to
19   figure out.  He claims there is.  He can go ahead and file
20   this thing and serve you.  And if you think that's wrong, you
21   know, again, confer with each other before you file a motion.
22   If you're able to convince him, you don't need to waste your
23   time trying to convince me.
24           But if you can't convince him, then you file your
25   motion, and I'm not saying you have to wait till the end of

1   discovery to do it.  I'm saying you should disclose your --

2   what you're planning to rely on, and you should confer with

3   him.

4          MR. OUELLETTE:  Your Honor, I would also suggest

5   that, in order to proceed under the uniform probate code

6   (d)(2), the plaintiff needs to demonstrate that there is no

7   personal representative and there is no estate for any of the

8   deceased individuals.

9          And that's more than a simple procedural step,

10  because what's happening here is the plaintiff didn't sue the

11  defendants.  They're deceased.  He sued their estates.  I

12  think there would need to be some sort of substitution to

13  proceed against the individuals rather than the estates.  And

14  what we're -- what we're looking at here is a significant

15  consequence.  It's whether or not claims against three

16  different individuals can go forward.

17         So I suppose the Town would move, if they were

18  served, to dismiss in a similar manner that they have now

19  with maybe some additional information regarding the CBAs.

20  But the plaintiff also, in order to proceed against any one

21  of them and get around the one-year statute of limitations

22  under the probate code, to go under (d)(2), they have to show

23  that there is no personal representative and that no estate

24  exists; otherwise, they would have to go under through the

25  typical process.

1          And I don't know that there is for any of these

2    people, but the plaintiff hasn't made that necessary showing

3    for any of the deceased Braintree defendants.  For the

4    deceased Buker, they simply say they were unable to identify

5    or locate any obituary for that individual and have provided

6    no additional information.  For the deceased individual

7    Polio, they inaccurately represented that he was alive and

8    that he was served, and we all agree that that's not accurate

9    now.

10          And then for Wilson, they identified the wrong

11   individual and conducted some research regarding a potential

12   estate of another Robert Wilson, who is actually a police

13   officer in the City of Quincy.

14          So that is a step that they would need to go

15   through in order to even attempt to proceed under (d)(2),

16   have the standing to proceed under (d)(2), and they haven't

17   done so.

18          THE COURT:  Plaintiff's counsel?

19          MR. LOEVY-REYES:  Judge --

20          THE COURT:  Yes.

21          MR. LOEVY-REYES:  -- our office has searched

22   dockets to look for estates.  We have -- we've gone to the --

23   and my paralegal submitted an affidavit in support of that.

24   But we've reviewed dockets to see if there were any estates

25   that were opened for these individuals.  We have not been

1    able to find any estates.

2         And, you know, unfortunately, some of the

3    individuals have very common names.  So, you know, we look

4    for police officers, cast a wide net to look for estates.

5    And we have not been able to find any.  Again, I -- you know,

6    I'm happy to take any information from defense counsel if

7    they know of any estates.  We're happy to be able to find

8    them.

9         But, basically, it's -- and we agree.  The burden

10   is on us to look and see if there are estates.  It's proving

11   a negative.  So, you know, we've looked in court dockets.

12   Haven't found any.  We don't believe that there are any

13   estates.

14        THE COURT:  So let me ask this for defense counsel.

15   I understand that there's going to be a lot of disputes of

16   fact here.  I take the fact that the most recent motion to

17   vacate the trial that was granted was appealed.  I understand

18   that to be that the defendants have a very different view of

19   the facts of this case than the plaintiff has.  And I will --

20   I, by no means, am prejudging how any of the factual record

21   here will come out or what the standards are, et cetera.

22        But we have a circumstance where there is an

23   allegation that was certainly sufficient to convince the

24   Massachusetts courts in vacating this conviction that there

25   was some evidence that didn't see the light of day, some

1    exculpatory evidence that didn't see the light of day.

2    Right?  Any disagreement?  That's to defense counsel.

3               MR. OUELLETTE:  You're asking if that allegation

4    has been made?

5               THE COURT:  No.  Is there any disagreement that a

6    Massachusetts court has found that there was exculpatory

7    evidence that wasn't turned over?

8               MR. OUELLETTE:  That is what the Court found, yes,

9    Your Honor.

10              THE COURT:  Okay.  So we have somebody -- it may be

11   that that supposedly exculpatory evidence is of no moment;

12   and at the end of the day, it doesn't make any difference.

13   And it may be that nothing wrong happened here.  But you have

14   to at least -- bear with me -- that there is at least a

15   possibility that something wrong happened here.  Am I wrong?

16              I mean, I just -- I understand people fighting

17   tooth and nail about service and evading service when you

18   have frivolous claims.  And I understand that all of the

19   defendants here may end up successfully pushing back on this

20   case.  I don't know.  But isn't there enough here to make you

21   think, "Okay.  Let's get to the meat and figure out what's

22   going on and try and figure out how to make this work, try to

23   get to the facts"?

24              MR. ANJOMI:  Your Honor, Nieve Anjomi, City of

25   Boston.

1          I would agree with that statement to the extent you
2    are talking about certain defendants in this case.  I think,
3    as the City references in its motion to dismiss, the
4    allegations against the two Boston officers, there's nothing
5    there.  They do make allegations with respect to the conduct
6    of some of the other individual defendants in the case, but
7    with respect to Walsh and Derby, the only allegation is their
8    name appears in a report as having provided information.
9          So while I understand the Court's position that
10   there's something there, the Superior Court found that
11   there's something there.  With respect to the individual
12   officers who worked for the City, I don't believe that
13   statement's correct.
14          THE COURT:  Okay.  And you may be completely right
15   at the end of the day.  I guess my -- I guess my frustration
16   here is that I would like to be able to look at a case -- if
17   this is not going to be easy for anybody to figure out
18   anything, it's going to be hard for plaintiff to prove
19   anything 35 years later.
20          I do have the fact that somebody just spent
21   35 years in jail, and there's a question mark on it.  It may
22   not mean that he's innocent, but there is a question mark,
23   and he has spent 35 years in jail.  It seems to me that our
24   system of justice requires some opportunity to at least try
25   to figure out whether there's anything there, there.  I don't

1    really understand.

2              So with regard to the personal representatives,

3    yes, we -- you know, we can't just go without having proper

4    parties and proper names and proper formalities.  Is there

5    any information -- and maybe we'll do this, which is I will

6    allow an early -- I mean, we should get going with discovery.

7    There's no reason not to have it.  But let's get out whatever

8    information any of you have as to whether there's an estate,

9    what was -- who was this representative, et cetera.

10             I mean, let's not play games here.  Let's get to

11   the information, figure it out.  If there are no claims,

12   these cases will go away.  If there are claims, then we'll

13   figure it out.  I don't understand playing games at the front

14   end.  I really don't, on this one.

15             Imagine for a minute it was your brother, right,

16   who was in there.  Now, if he did it, you don't feel that

17   badly for him.  If there was a reasonable thought to think he

18   did it, you don't feel that bad about it even, maybe.  But if

19   something really bad happened here and somebody just spent

20   35 years in prison, that's kind of a problem.

21             And you're officers of the court.  Yes, you're

22   representing your clients, but you're also officers of the

23   court.  So you share with me some interest here, I hope, that

24   we get to the right answers here, which doesn't mean pinning

25   liability on who it doesn't belong to.  But it does mean that

1    we don't try to knock things out on, "Well, he doesn't yet
2    have this information, so we're going to knock him out."
3            Give him the information he needs, and then if he
4    can't prove his case, he doesn't prove his case.  We go home.
5    But let's not fight about, well, he has to know his whole
6    case ahead of time before we go anywhere.
7            Okay.  So I think what we're going to do -- I --
8    counsel for Braintree is correct that the complaint, as it's
9    written, says estates.  It doesn't say the people by name.
10   And so before we amend it, we should figure out whether there
11   were estates or personal representatives.  I will allow you
12   to go ahead, and let's get some discovery right away to the
13   employers and see if they have any information that can help
14   in this regard.
15           I don't know that your efforts with your paralegal
16   were sufficient.  I think the defendant pointed out that you
17   had someone who was -- would have been the wrong age to have
18   been the right person, was one of the people you're looking
19   at.  So you need to use -- yes, they're common names, but you
20   need to use some common sense.
21           I don't think it's that hard to find these people,
22   but you can certainly ask the employer, former employer, for
23   all of their former addresses.  I'm not going to stop you
24   from doing that.  Right?  You would have that in your -- in
25   your databases?

1          MR. ANJOMI:  Your Honor, the City has certain
2   information, but it does not have any retirement-related
3   information, addresses.  The retirement board is a separate
4   legal entity.
5          THE COURT:  Okay.  So you'll need to serve a
6   subpoena on the retirement board, and I would encourage you
7   to do so.
8          I mean, seriously, I -- the defendants -- you know,
9   I will give a very careful consideration to the legal
10  arguments here and to be careful where the facts go and so
11  forth.  I really don't -- I just don't have much patience --
12  we're 35 years in here.  Let's get and figure out the merits
13  of this.  Maybe there's a claim.  Maybe there's not a claim.
14  But let's not waste time on preliminaries.
15         So, apparently, you're going to have to subpoena
16  the retirement board because the City of Boston sounds like
17  they're not willing to help you with that.
18         But the City of Boston is at least obligated to
19  give what they can, what they have.  And if you have
20  addresses -- you may not have everything, but you probably
21  have some things.
22         Go ahead and subpoena the union.  They may have
23  information too.  I mean, this is -- you know, this is
24  just -- we're not playing hide the ball here.
25         MR. ANJOMI:  Your Honor, to be clear, I don't have

1    access to the information.  They don't give me the

2    information.  There's nothing I can do to assist plaintiff's

3    counsel with the retirement board.  I get the same -- we'll

4    get the same response that counsel will receive, which is, as

5    you said, to issue a subpoena.  They don't turn information

6    over to the -- my department.

7              THE COURT:  And all I'm saying is that while you

8    don't have the retirement information, I don't know that

9    means that you don't have other information.  I don't know

10   where the City of Boston ends their updated employee

11   information.  Lots of places will update their employee

12   things and send people Christmas cards.  I don't know.

13             But let's -- if you have the information, let's get

14   it out.  Let's not waste our time on -- let's not waste our

15   time on trying to get the right parties in front of me.

16             So you need to try to locate people.  If no

17   estate -- if no representative was ever appointed, then it

18   sounds like we need to -- you'll need to ask to amend the

19   complaint to have the action proceed with the defendant --

20   the decedent as the defendant rather than the estate, and

21   we'll proceed that way.

22             MR. LOEVY-REYES:  Thank you, Judge.

23             THE COURT:  Okay.  So I still have Mr. Whelan's

24   claim.

25             So for the City of Boston and the Town of

1     Braintree, as I said, I will go back and read one more time.

2     But I'm granting -- I'm anticipating that I will grant the

3     indemnification -- getting rid of the indemnification count,

4     which gets the City of Boston out, which leaves Braintree in

5     on the *Monell*, but that's where we are.

6                 And at this point, the individuals have either

7     answered or are not yet served, with the exception of

8     Mr. Whelan.  So we have Mr. Whelan's motion to dismiss.

9                 Anything else before I get to that?

10                MR. LOEVY-REYES:  I think that's it, Judge.

11                THE COURT:  Okay.  So for Mr. Whelan's motion to

12    dismiss, there are a few different arguments.  The one I've

13    got, I sort have been a little surprised about, was the issue

14    preclusion.  So let's start with that, and then we'll move to

15    the other issues.

16                I think of issue preclusion as a formal doctrine

17    that bars things that -- where there's certain things where

18    there's a final judgment.  Here the final judgment has been

19    vacated.  And I understand the argument here to be, well, but

20    the SJC opined about this, and it's good law, and it keeps

21    being cited.  And it seems to me that that point might go to

22    the persuasive value of that issue, but I don't understand it

23    as formally issue preclusion, per se.

24                Do you want to respond to that?

25                MR. COLLINS:  Yes.  Thank you, Your Honor.

1              Well, I believe we do.  And we recognize, you know,
2    in our reply, that there's a potential split on this issue.
3    But we -- you know, we ask that the Court follow the
4    *Echavarria* decision on this.  And, you know, we do believe
5    that, based on what the SJC has opined -- and also,
6    Your Honor, there's a bit of equity, I think, involved here.
7    This issue has been litigated five times.  Five times this
8    issue has been litigated.
9              THE COURT:  So I'm going to start, though, here
10   not -- we can get to the equity as to what value this --
11   well, maybe no.  Maybe you're saying the equity plays into
12   how one thinks of issue preclusion?
13             MR. COLLINS:  Yes, Your Honor, that that's right.
14   And, again, respectfully, we do disagree that there is --
15   there wasn't a, quote/unquote, final judgment on the issue.
16   There was.
17             THE COURT:  There was, but it was vacated.
18             MR. COLLINS:  Understood, Your Honor, but this is
19   not -- you know, this is an issue that's been overly
20   litigated.  It's not an issue that was addressed on direct
21   appeal.  It's not an issue that was, you know -- well, it's
22   an issue that was addressed three times in a motion for new
23   trial subsequent to that and was decided against Mr. Weichel.
24   I think at that point --
25             THE COURT:  But doesn't that get to a question that

1    you're essentially arguing that this is persuasive authority?

2    It's -- I don't mean to be overly formalistic, but issue

3    preclusion is sort of an absolute bar because there's a

4    judgment.

5            And I just -- this idea -- and I did -- I agree

6    with you that Judge Burroughs went the direction you did.

7    But when I looked at the First Circuit case that she cited

8    for that, the First Circuit has this sort of tail end on an

9    opinion.  Maybe it was denying rehearing.  I think it was

10   denying rehearing.

11           And what it says is, "This wasn't raised below, so

12   we're not going to decide the issue."  And then it has the

13   two sentences that Judge Burroughs quoted, which was, "And if

14   we were to consider it, we might X."

15           The problem with that is, one, it's not

16   controlling; and, two, if you read what the First Circuit

17   said, it's pretty hard to follow.  I mean, what the

18   First Circuit said there is, We think of this sort of like

19   the way a motion to vacate a judgment, a motion -- a

20   Rule 60(b) motion doesn't undo a judgment.  Well, of course a

21   Rule 60(b) motion doesn't undo a judgment, an order granting

22   a Rule 60(b) motion.

23           So it's completely unclear to me what the

24   First Circuit was possibly saying except to say, one, we're

25   not finally deciding it; and, two, this wasn't properly

```
1    briefed.  And the rest of what they're saying doesn't make
2    that much sense.  So that's what Judge Burroughs relied on.
3    I don't -- I mean, I'm just -- going by my hornbook
4    understanding of what issue preclusion is, which is you have
5    to have a judgment.
6              MR. COLLINS:  And we do, Your Honor.
7              THE COURT:  But it was vacated.
8              MR. COLLINS:  Understood, Your Honor.  It was
9    vacated.  But, again, this is an issue that was then
10   subsequently litigated a number of times.
11             THE COURT:  It wasn't subsequently litigated after
12   the judgment was vacated.  It was litigated before a judgment
13   was entered --
14             MR. COLLINS:  Understood.
15             THE COURT:  -- and hasn't -- I mean, there is no
16   piece of paper.  There's no judgment there anymore.  The
17   judgment I have, the piece of paper that ends that file is a
18   nolle pros, right?
19             MR. COLLINS:  Yes.  Understood.  Understood,
20   Your Honor.  But, again, as we -- as we, you know -- as we
21   argue in our papers, there has to be some consideration for
22   the equities here for, you know, the issue having been
23   litigated twice, you know, on a motion to suppress, on -- you
24   know, by way of examination at the criminal trial and by way
25   of three times in the motion for a new trial.
```

1          THE COURT:  So let's say the facts turned out to be

2     the following.  Police Officer A did something unusual with

3     the lineup.  That was litigated.  The Court says, "Well,

4     there was something unusual, but we don't see an error.

5     We're going to let it in."

6          The plaintiff finds this box of material in the

7     basement.  And in the box of material, it turns out -- and,

8     obviously, he doesn't have this or he would have alleged

9     this.  But let's assume, for purposes of my hypothetical, the

10    box of things from the basement says, "We need to frame this

11    guy.  How should we go forward?  Let's do this.  Let's run a

12    funny lineup."  Okay?

13         Now, you don't have that.  He's not going to have

14    that.  You'll never have that.  But would you agree with me

15    that the fact that that went up to the Court before on a

16    different record where the question there was, based on the

17    evidence in front of the Court, what happened here was

18    reasonable, versus now we have a whole lot of different

19    evidence that came up from the basement that wasn't turned

20    over?  I mean, really?  It may be that the evidence from the

21    basement, you'll say, has nothing to do with this lineup.

22    And I think there's a very good chance that might be the

23    case.

24         But that would be a substantive question, not a

25    question for me to decide, well, but as a matter of law --

1    because that's what issue preclusion would be -- as a matter

2    of law, we've already -- we've already considered once

3    whether this lineup was proper or not.

4            MR. COLLINS:  Perhaps under these facts,

5    Your Honor, but those are not the facts here.

6            THE COURT:  I --

7            MR. COLLINS:  They're not even close.

8            THE COURT:  But I'm not -- but you're giving me a

9    rule of law here, right?  I'm not going -- right now this

10   isn't a question of fact.  You're giving me a rule of law,

11   and you're saying a motion to suppress has been -- or a

12   motion to exclude has been granted before, and that was

13   appealed; and, therefore, regardless of the facts here, it's

14   res judicata, or it's issue preclusion.

15           MR. COLLINS:  Correct.  Yes, Your Honor.

16           THE COURT:  And I guess what I'm saying to you is,

17   why doesn't he get a chance to tell me the facts are

18   different than before?  And the answer is, normally, if there

19   is issue preclusion -- right?  Let's say I have, you know,

20   one of my cases -- and I have many of these where people

21   don't like -- I have a number of repeat pro se litigants who

22   don't like what they got, and they come back in and they say

23   the same argument again.  And you say, "Well, I may have been

24   wrong before.  It's done."

25           That's not where we are here.  We have an open

1   case.  And if right now here there are different facts -- I
2   mean, if they're the same facts, presumably I will think that
3   whatever the SJC said was probably well considered.  I don't
4   really see any reason I wouldn't.  But if the facts are
5   different, why would he be barred from raising those?
6                MR. COLLINS:  And, again, Your Honor, for the
7   reasons that we've stated, that the issue has been overly
8   litigated.  You know, it's been decided not once, not twice,
9   not three times, but five times.
10               THE COURT:  But never with the basement box as part
11  of the picture.
12               MR. COLLINS:  Yeah, not under that factual
13  scenario, no.
14               THE COURT:  And we now have a basement box.  I have
15  no idea what's in it, but why would I drop something without
16  knowing what's in it?
17               MR. COLLINS:  Because I -- Your Honor, I can
18  continue to repeat my argument, but, you know, our argument
19  is the same, that -- and, you know, this was not the primary
20  basis for plaintiff's motion for a new trial, I'll add.  You
21  know, and I suspect, you know, there's perhaps a reason for
22  that.
23               But, you know, Your Honor, we do follow *Echavarria*.
24  That is the basis of our argument.  And we do believe that,
25  based on that, on the fact that there was a final judgment on

1    the issue, that it is -- that it is issue precluded.

2            THE COURT:  Do -- other than *Echavarria*, do I have

3    any authority for the notion that a final judgment that's

4    been vacated is still accorded final judgment status?

5            MR. COLLINS:  *Echavarria* and any cases that are

6    mentioned within, which I don't have in front of me, but

7    they --

8            THE COURT:  The only one I noticed was that

9    First Circuit, which as I said, didn't --

10           MR. COLLINS:  Correct.

11           THE COURT:  Wasn't terribly persuasive.

12           MR. COLLINS:  Yes, Your Honor.

13           THE COURT:  On the failing to state sufficient

14   facts, plaintiff responds to your argument that they don't --

15   that at this point, where they've alleged all of these

16   people -- that different people were involved, and they don't

17   yet know which ones necessarily did what, that they can bring

18   these allegations.  What's your response to that?

19           MR. COLLINS:  That's not the standard, Your Honor.

20   That's not the standard under *Iqbal* and *Twombly*.  As

21   Your Honor has pointed out, we've got 35 years here of

22   putting together the facts of a well- -- well-developed

23   record.

24           THE COURT:  I'm sorry.  Thirty-five years of a

25   well- -- I mean, bear with me.  When did this box come to

1   light?

2          MR. COLLINS:  I'm sorry, Your Honor?  What box?

3          THE COURT:  The box of documents that was the

4   basis --

5          MR. COLLINS:  The binder?

6          THE COURT:  Yeah.

7          MR. COLLINS:  I have to go back and look,

8   Your Honor.  2005, maybe.  I don't remember.  I don't

9   remember the date.

10          THE COURT:  Is that correct, that that came out in

11   2005, plaintiff's counsel?

12          MR. COLLINS:  Sorry.  2016, Your Honor.  My

13   apologies.  2016.

14          THE COURT:  Okay.  So it would be fair to say --

15   well, you're saying we've had 35 years for him to litigate

16   this.  For those 35 years, he was behind bars, and your

17   client wasn't turning over the information that he was

18   seeking.  So --

19          MR. COLLINS:  Your Honor --

20          THE COURT:  -- I'm not sure that the 35 years is a

21   good thing to be focusing on.

22          MR. COLLINS:  Well, I disagree, Your Honor, and

23   here's why.  You're -- you know, we're painting with a very

24   broad brush here.  And I want to address Your Honor's comment

25   earlier about, you know, shouldn't we be figuring out if

1   there's any there, there?  Absolutely we should be figuring

2   out if there's any there, there.

3           But we don't do that with a scorched-earth policy

4   or approach, and we don't do that at anyone's expense.  And I

5   think, Your Honor, what we're doing here is we're doing it at

6   Officer Whelan's expense.

7           Your Honor, we represent Trooper John Sprague in

8   this case.  If you note, we didn't file a motion to dismiss

9   for him.  We filed an answer because, as Your Honor said, it

10  was appropriate for this case to determine whether or not

11  there's any there there.  But we don't do that at the expense

12  of anyone.  And I feel as though that's what's being done

13  here with Mr. Whelan.

14          What I mean by 35 years is there's a 35-year

15  record.  I mean, that we have the -- as plaintiff, there is,

16  you know, the benefit of looking, in the year 2020/2021, at

17  the entire record.

18          And what is very evident, Your Honor, from the

19  complaint here -- and I want to implore Your Honor to look at

20  the complaint in this case -- not Mr. Weichel's counsel's

21  arguments, however eloquent they may be in his opposition.  I

22  want to implore Your Honor to look at the complaint in this

23  case, because that's what matters.  That's what's the

24  controlling document here.

25          And out of 253 paragraphs, Your Honor, Edward

1    Whelan is mentioned and mentioned only in passing twice.  And
2    he's mentioned only for driving or riding in a van.  That's
3    it.  There's nothing else there with respect to Mr. Whelan.
4    If you read the complaint, Your Honor, all you're going to
5    read -- if you look at it closely -- all you're going to read
6    is group pleadings.  You're going --
7             THE COURT:  Right.  But -- so if I have an
8    allegation that there were several defendants in the van, and
9    there's an allegation that one or another defendant did
10   something, but he doesn't know which one of the defendants,
11   are you saying that, under *Iqbal*, I need to throw it out
12   because he doesn't know which one did something, or are you
13   saying that whatever he says about any one of the three isn't
14   enough?
15            MR. COLLINS:  Well, it can't just be something,
16   Your Honor.  It can't be, well, he did something.  I mean,
17   that can't be the standard here.  You know -- and that's all
18   we have here in the complaint if you read it.  All we have is
19   that Mr. Whelan was in the van.  They don't say that he did
20   anything.
21            THE COURT:  Does it say what defendant -- what some
22   defendant does in the van?
23            MR. COLLINS:  Yes.  And that's all that it ever
24   says.
25            THE COURT:  And what does it say that that -- some

1    defendant did?

2           MR. COLLINS:  Well, let me pull up the complaint

3    here, Your Honor, and I'll read it to you.

4           THE COURT:  Mr. Weichel, if you can put your finger

5    right on it, you're welcome to let me know what it is you're

6    saying a defendant --

7           MR. LOEVY-REYES:  Paragraph 105, Judge.

8           MR. COLLINS:  I have it here:  Defendants in

9    general and Defendants Sprague and Wilson -- don't mention

10   Mr. Whelan -- Defendants Sprague and Wilson participated --

11   fabricated evidence that each of the teenagers expressly

12   identified plaintiff.

13          Defendants, including but not limited to Sprague,

14   used this false evidence that one or more of the teenagers

15   expressly identified plaintiff.  Defendants, including but

16   not limited to Leahy and Wilson, learned during the

17   investigation that eleven credible witnesses told

18   investigators that the composite picture looked like X, Y,

19   and Z.

20          THE COURT:  Okay.  I don't think you're answering

21   my question.

22          MR. LOEVY-REYES:  Judge, if --

23          THE COURT:  You said to me that they were in the

24   van, and that's all there is, is this allegation in the van.

25   And I was saying, what did they say about what happened in

1    the van?

2            MR. LOEVY-REYES:  Judge, if I may --

3            THE COURT:  Yes.

4            MR. LOEVY-REYES:  -- at paragraph 103 of the

5    complaint, it alleges the second van ride occurred on

6    June 12, 1980.  Defendants Sprague and Whelan drove in a van

7    with Mr. Foley and LaMonica's two brothers, who were not

8    witnesses to the murder, around South Boston.

9            Paragraph 104, the victim's brothers directed the

10   location of the purported South Boston search, though there

11   is no police report explaining why that occurred.

12          Paragraph 105, one or more of the defendants in the

13   van, which previously identified Whelan or Sprague, stated to

14   Mr. Foley, "Isn't he the one?" or words to that effect in

15   reference to plaintiff.  Mr. Foley then purportedly

16   identified plaintiff.

17          Paragraph 106, this "random," in quotes,

18   "identification," in quotes, was unduly suggestive and staged

19   to cause a false identification of plaintiff.

20          Paragraph 107, a photograph of plaintiff taken

21   during the suggested van ride with Mr. Foley was introduced

22   at trial against plaintiff.

23          Those are the allegations against Mr. Whelan.

24          THE COURT:  Okay.  So, Mr. Collins, you're saying

25   to me that I can't count those because it doesn't say

1    "Mr. Whelan."  But let's assume that I'm prepared to say that

2    those say "Mr. Whelan."  Are you -- that that's enough for me

3    at this stage for pleading.

4          Are you saying that, even if this said, "Whelan

5    stated this and Whelan was in the car," that wouldn't be

6    enough?  I mean, I'm just trying to focus on what your

7    problem is.  Is the disagreement here that he can't use the

8    word "defendant" without specifying which one of the

9    defendants made the statement?

10          MR. COLLINS:  Your Honor, it's all got to be viewed

11   together.  Again, there has to be -- I mean, we can read the

12   language from *Iqbal* and *Twombly*.  There has to be more than

13   mere conclusory allegations.  All he's saying is that

14   Mr. Whelan was in the van.

15          THE COURT:  No, he's saying --

16          MR. COLLINS:  That's all he's saying.

17          THE COURT:  Mr. Whelan may well be one of the

18   people who made the -- Mr. Whelan may have said this.  That's

19   how I read this.  And the question is -- so *Iqbal* and

20   *Twombly* -- I mean, let's be clear about what we have.  We

21   have a standard on a motion to dismiss that allows a judge to

22   sweep things out that aren't plausible, right?  And we want

23   to make sure that defendants fairly understand what the

24   accusations are so they can defend against them.  That's sort

25   of what we have.

1           If I oversweep that's appealable.  If I undersweep

2    and force you to have to bring it forward on a motion for

3    summary judgment, that doesn't violate *Iqbal* or *Twombly*.  I

4    have authority under *Iqbal* and *Twombly* to sweep the things I

5    don't think are plausible.  But I don't have the obligation,

6    if there's something there that seems plausible to me that

7    gives you sufficient notice of the claim, to allow you to get

8    rid of it without having an opportunity to determine which of

9    these people in there made the statement.

10          Now, if you're saying to me, even if it's

11   Mr. Whelan who said this and made the suggestive

12   identification, that's not enough, that's a different

13   argument, and we can talk about that.  But if you're saying

14   it's because it doesn't specify that Mr. Whelan is the person

15   who made the statement as opposed to the other person who was

16   driving, that's not going to work for me.

17          MR. COLLINS:  Well, and, Your Honor, again, you

18   know, we'll respectfully disagree then, because, you know, I

19   do believe that *Iqbal* and *Twombly* do require something more

20   than sweeping generalizations, something more from a

21   253-paragraph complaint than saying, you know, "Hey, this guy

22   is in car, and somebody -- we're not going to say who --

23   somebody, so we can get over the hump" --

24          THE COURT:  Well, it's not, "We're not going to say

25   who."  It's 35 years, and you have all the information, and

1    he doesn't.  I don't -- so your client says, "It wasn't me,"
2    and then that's the end of the case because he can't prove it
3    was him.  But why is your client allowed to get out of it
4    without having to say, "It wasn't me"?
5              MR. COLLINS:  Because, Your Honor, we have -- what
6    we have -- because, as I said earlier, there are ten
7    defendants in this case.  I mean, we're not talking about --
8    what we're talking about, narrowing this case to the parties
9    that should be here.  Okay?
10             And Defendant Sprague, who, you know, I -- I guess
11   I have to wonder why it is that, you know, this dearth of a
12   record allows the plaintiff to spell out in great detail all
13   the things that Mr. Sprague did or all the things that
14   Mr. Wilson did, but somehow there's a dearth of a record.  We
15   can't talk about what Mr. Whelan did, and I suggest there's a
16   reason for that.
17             THE COURT:  I don't know the answer to the
18   question, but maybe we'll figure that out.  Maybe the answer
19   is because they weren't there and they didn't do anything.
20   Maybe the answer is it depends who testified at trial.  I
21   don't know.
22             MR. COLLINS:  Your Honor, I -- yeah.  Your Honor,
23   we have Trooper Sprague in the case.  We answered for
24   Trooper Sprague.  We didn't file a motion to dismiss.  Okay?
25   Trooper Sprague is in the case, and we concede that at least

1  for now he should be.  Mr. Whelan should not.

2          THE COURT:  I have been there with the City of

3  Boston where we've gotten rid of some of the defendants.  And

4  then we go through discovery, and some of the defendants say,

5  "Well, actually, it might have been this other person who was

6  there and not the first person."  I mean, you know, at the

7  end, the whole case goes away.  It doesn't matter.

8          By why get rid of people because there's three

9  people there, and you're not certain which one of the three?

10  That's different than saying we're just alleging defendants

11  all the way through.

12          You certainly can't just allege defendants all the

13  way through.  But to have said who is there in the car, who

14  writes the report, who does the interviews, the fact that you

15  don't know which of the two people did what --

16          MR. COLLINS:  Well, again, Your Honor, we seem to

17  know which of the people did what on a number of occasions as

18  spelled out in the complaint and in quite a bit of detail.

19  And I'll suggest to you the reason we don't know,

20  quote/unquote, who is saying what in the van is because it's

21  not there.  It doesn't exist.

22          THE COURT:  It's not there because the evidence

23  will not come forward?  I mean, I don't know what you mean,

24  it doesn't exist.  There was a van ride.  And you'll have the

25  people in the van either say these statements happened or

1    these statements didn't happen, and they may say -- if

2    statements happened, they may say here's who said the

3    statement or who isn't.  They may say Mr. Foley just

4    identified him on his own and no one pointed it out.  There

5    will be some set of facts.

6             But why do I have to decide that set of facts on

7    the pleadings, when you have the information and the

8    plaintiff doesn't necessarily?

9             MR. COLLINS:  Yeah, I -- I -- you know, Your Honor,

10   again, I -- I'm -- I struggle with this argument that

11   plaintiff doesn't have the information, when we've got a

12   253-paragraph complaint that lays it out in detail.

13            THE COURT:  Has he taken the deposition of any

14   officer?

15            MR. COLLINS:  Of course not, Your Honor.

16            THE COURT:  Okay.  So how is it that he's supposed

17   to know everything that happened?

18            MR. COLLINS:  Perhaps the same way he knows to be

19   able to spell out in detail everything against

20   Officer Sprague and Officer Wilson and everyone else that's

21   listed in that case -- in the case, as well as his state

22   case, the Chapter 258D matter.

23            You know, Your Honor, it's -- there has to be --

24   right?  I guess what I would say is, under Your Honor's

25   posit, when is a case ever, you know, to be dismissed on

1    *Iqbal* and *Twombly* grounds if we're just simply going to say,
2    well, nobody knows anything at the beginning of a case, and
3    so we're going to let everything go forward?

4             THE COURT:  Mr. Collins, that's not the problem
5    here.  There are certainly a lot of cases where people just
6    make implausible allegations, and lots of things get knocked
7    out under *Iqbal* and *Twombly*.

8             But where you are talking about the fact that,
9    between two or three defendants, we don't know exactly who
10   said what when, the idea that a plaintiff, therefore, can't
11   bring the case is a little bit hard to -- it's a hard thing
12   to do, particularly when one side has the information.

13            If he's there in the room and he knows which person
14   said what, he certainly can't go around with that kind of
15   pleading.  But where he doesn't have that information and you
16   do -- you know what the claim is.  You know what the facts
17   are.  This isn't a case of saying, "I'm going to sue the
18   whole department and see who's going to be there."  I think
19   he has made an effort to say who was in the room for which of
20   these events.

21            I am not -- I do not want to have this case, at the
22   end of the day, have, you know, 100 different things going on
23   with a 100 different claims.  Absolutely not.  And it may be
24   that we -- you know, things get narrowed down.  My experience
25   is that competent counsel can figure out, after you do a

1     little bit of digging, who should properly be wherever and

2     who shouldn't, that you often will see things get dismissed

3     along the way.  It may well be that your client has no

4     business being there and he should get out quickly.

5             But at this point, he was there on the scene.  He's

6     going to be deposed as a witness whether he's a defendant or

7     not.  And I don't really see why those facts don't come out

8     first.

9             MR. COLLINS:  Your Honor, there are other bases,

10    obviously.  We have a qualified immunity argument.  We have

11    an argument that there are simply, on the face of the

12    complaint, no bases at all to assert that there are any

13    constitutional violations by Mr. Whelan, no facts alleged

14    such that, you know, you could find that Mr. Whelan violated

15    any of Mr. Weichel's statutory or constitutional rights.

16            So we rely on those arguments as well in

17    conjunction with what we continue to assert in this case,

18    which is that there are not, under *Iqbal* and *Twombly*,

19    plausible facts in a 253- -- detailed, detailed complaint,

20    that should allow an officer, who is in the twilight of his

21    life, after having been retired from the force for over

22    30 years, be dragged through a situation where you have the

23    trooper, again, who there are numerous, numerous detailed

24    allegations against -- against whom this case can and will,

25    at least for the moment, go forward.

1             THE COURT:  I'll go back and read the papers.

2    Anyone else want to get the last few words in?

3             MR. LOEVY-REYES:  No, thank you, Your Honor.

4             MR. OUELLETTE:  Your Honor, may I --

5             THE COURT:  Yes.

6             MR. ANJOMI:  Mr. Ouellette?

7             MR. OUELLETTE:  May I address the Court briefly,

8    Your Honor?

9             THE COURT:  Certainly.

10            MR. OUELLETTE:  The issue preclusion matter, that

11   is an issue that would impact Defendant Wilson as well if he

12   is added to the suit.  I, obviously -- I don't currently

13   represent him.  I may if he's part of the suit.

14            I would ask Your Honor that perhaps you reserve on

15   that issue until I would say other parties affected by it

16   have the opportunity to address it.  And I don't know that

17   that issue has really -- the record that would be necessary

18   for the Court to look at that issue has been fully developed

19   on a motion to dismiss at this stage and that -- I don't know

20   that the Court's specific findings at the trial stage

21   regarding the identification issue, the specific findings

22   made at the motion to suppress stage and subsequent findings

23   regarding the identification issue are directly before the

24   Court at this time or the -- it's clear what the Court's

25   reliance upon the identification issue was as a basis for

1   overturning the conviction.  I'm not sure that all that

2   information is before the Court and the record has been fully

3   developed.

4          And given, I think, the discussion that -- the

5   First Circuit's decision is a bit confusing on this issue.

6   And, you know, we do have another district court decision

7   that addresses the issue, but -- and it appears to be going a

8   different way.

9          I'd ask that perhaps the Court reserve on that

10  issue until maybe summary judgment rather than making any

11  preclusive finding on the -- on the issue of preclusion issue

12  at this time until all parties have a chance to weigh in that

13  might be affected by it and have a chance to really fully

14  develop the record at summary judgment.

15         THE COURT:  I -- that's fine.  I am happy to --

16  your, potentially, future client hasn't had a chance to weigh

17  in; and I wouldn't preclude them based on something that was

18  litigated before they were parties.  So that is a reasonable

19  request.

20         I would -- I would suggest that the issue that you

21  may want to think about framing on summary judgment may be a

22  slightly different issue, which is, I think -- I think the --

23  what has -- where I've gone, taken a fairly strong stance

24  here, is using the formality of issue preclusion, which is

25  different from saying, you know what?  There was a decision

1    that was a reasonable, thorough, et cetera, decision, and it

2    should be respected, sort of more of a law-of-the-case kind

3    of a case, kind of an argument.

4          I mean, you want to make that law-of-the-case

5    argument, it's all the same parties, I'm open to considering

6    what was considered.  As you said, I don't have that full

7    record.  I have no idea.  I don't know if there's any

8    relationship between this and between the new things.  I'm

9    open to any of that type of argument.

10          The argument that I am reflecting -- and, again,

11   I'm not precluding your client from raising that since they

12   weren't here, but just so you understand my thinking, the

13   argument I'm rejecting is a formalistic argument that would

14   say, right or wrong, that issue was decided; and it's done,

15   and you can't think about it, which is a different issue than

16   saying that issue was thoroughly considered, here's why it

17   is, here's why you don't want to second-guess it, it's the

18   efficiency of the parties, the -- you know, whatever.  That's

19   just different.  Like I said, that's law of the case.

20          And I can see arguing for a kind of a

21   law-of-the-case approach here where we're dealing with

22   parties; and it is, in some ways, a continuity, even though

23   one was a criminal and one was a civil.  You might be able to

24   sell me on a law-of-the-case argument.

25          But -- and, again, I'm not absolutely precluding

1    you, but that is the way that I'm looking at the issue

2    preclusion argument, is that the issue preclusion argument is

3    this formalistic thing that says when one case is decided,

4    right or wrong, it's done; and your only remedy to that one

5    case that was decided is an appeal of that case or a Rule 60

6    motion to set aside that case.  You can't come into a new

7    case and reconsider that issue.

8           That formalistic one, seems to me, doesn't apply

9    because of the vacating of the judgment.  But the broader

10   concept -- and Mr. Collins tried to say it in terms of

11   equity.  And to the extent there's sort of a broader "these

12   issues have been properly considered and there's no reason to

13   look at them differently," I'm not precluding that from being

14   raised as an argument.

15          I'm simply saying that a formalistic document of --

16   issue preclusion doesn't seem to me to apply here where a

17   judgment has been vacated, recognizing that there is -- you

18   know, Judge Burroughs' decision says -- goes the other way.

19   I did see that.

20          But anyway, so, yes, your client can raise it; but

21   I would think it's a more persuasive argument not as a -- not

22   as an issue preclusion argument, but as a law-of-the-case

23   argument.

24          MR. OUELLETTE:  Thank you, Your Honor.

25          THE COURT:  Okay.  I will take a last read of those

1     things and hopefully get something out.

2            We do need to have a scheduling conference, right?

3     We've had initial disclosures and nothing more?

4            MR. LOEVY-REYES:  Yes, Judge.

5            MR. ANJOMI:  Your Honor, I had one additional issue

6     to raise, and it kind of follows up on the conversation you

7     were having with Attorney Collins and your statement to me

8     or -- me and Ms. O'Connor, Attorney O'Connor, that out of the

9     respect for the widow, we should see what we can do to help

10    out.

11           The issue that we raise in the motion to dismiss is

12    that, even if you accept all the allegations against Walsh

13    and Derby to be true, that the five -- that the five counts

14    still don't make a claim against the two of them.

15           I understand that they're not -- neither of them

16    are my client, but I still am going to ask that the Court

17    dismiss those claims against them, because even assuming that

18    those two paragraphs -- and they're 118 and 119 that state

19    what they did -- that neither -- those two sentences are

20    insufficient to make out a claim for due process violation,

21    for conspiracy, for malicious prosecution, for intentional

22    infliction of emotional distress, and failure to intervene.

23           And I'm not going to reiterate the arguments that

24    are briefed by both parties, but I would ask that the Court

25    consider dismissing the individual defendants.

 1              THE COURT:  So once those -- once you have been --

 2    process has been served, if someone wants to bring a motion

 3    to dismiss, I will consider it.  And I can give you the

 4    following guidance on it, which is that, to the extent your

 5    argument is, "We don't know the specific -- which defendant

 6    did what isn't clearly identified," I'm not terribly

 7    sympathetic about that right now.

 8              To the extent you're saying, "Yes, this person

 9    could well be part of these allegations against defendants,

10    but we still don't think that raises a claim," you certainly

11    have a right to make that argument.

12              I think the -- so the argument on the -- the

13    argument that you're pointing to is the Bos- -- this is the

14    Boston Police told the Braintree Police that an informant had

15    identified Mr. Weichel and Mr. Barrett as the perpetrators?

16              MR. ANJOMI:  Correct.  And it's the latter argument

17    that I'm making, which is that's insufficient to state a

18    claim, not we don't know what they did.

19              THE COURT:  What's your response to that,

20    Mr. Loevy-Reyes?

21              MR. LOEVY-REYES:  Judge, we make allegations in

22    paragraphs 119 and 120.  They're alternative pleading.  So

23    our position is that that information was fabricated.  We

24    just don't know who fabricated it.  Either Defendants Wilson

25    and Sprague fabricated the confidential informant information

1    and attributed it to Mr. Derby and Mr. Walsh, or Mr. Walsh

2    and Derby fabricated it.

3            But we don't -- there's never been -- throughout

4    the entire discovery in the criminal case up till now, no one

5    has ever gotten to the bottom of how that information ever

6    came about.  There's no police report on it for the first two

7    weeks, even though Mr. Weichel's photograph was in a photo

8    array the day after the murder.

9            There's nothing.  There's not piece of evidence

10   that anybody has ever shown the defendant in the criminal

11   case or the plaintiff in this case or, you know, Mr. Weichel

12   at all about how that information was ever gathered.  It's

13   our position that it's fabricated information.

14           MR. ANJOMI:  And I -- and my position is, even

15   assuming that statement is true, he still doesn't allege a

16   due process violation under 1983, because I --

17           THE COURT:  If the police officers fabricated the

18   evidence, you don't think that gets you there?

19           MR. ANJOMI:  No, not unless he can establish that

20   that evidence was used for an arrest or a detainment, and

21   there's no allegation that that evidence was used in any

22   manner.

23           THE COURT:  Well, there's an allegation that they

24   had absolutely nothing against this guy, against Mr. Weichel,

25   but somehow he was identified and then brought in.  That's

1    their claim.  Their claim is that nobody except your City of

2    Boston police officers brought up Mr. Weichel's name, and

3    that Mr. Weichel only appeared because of what your -- what

4    the City of Boston police officers said.

5            MR. ANJOMI:  That's not the allegation in the

6    complaint.  There's allegations that there was someone else

7    who identified the plaintiff that there were -- that there

8    were teenagers or students -- I forget how they're

9    identified --

10           THE COURT:  The allegation is that the teenagers

11   didn't have enough information.  The allegation here is that

12   the teenagers didn't have enough information to identify him

13   and that it was the City of Boston that came up with the name

14   and that it was the Braintree officers who then went and got

15   the individuals to testify to that.

16           I mean, I -- it may be -- it may not get there.

17   They may not be able to ever prove that.  But if those facts

18   were true, why wouldn't that be a violation?

19           MR. ANJOMI:  Because that still doesn't lead to

20   the -- to his detainment or arrest.  That allegation isn't in

21   the complaint, that this information was used by the

22   Braintree department.  It's missing.  It's not in there.

23           THE COURT:  Well, it is -- I'm understanding, from

24   my reading of this, their claim is -- and if that's not your

25   understanding, I will certainly -- plaintiff's counsel should

1    correct me if that's not what you're trying to say, is that

2    that is the source of the information, of the identification.

3              MR. LOEVY-REYES:  That's right, Judge.

4              THE COURT:  So do you need him to amend the

5    complaint to put that sentence in?  Because it seems to me

6    that's what this whole thing is pregnant of -- saying.

7              MR. ANJOMI:  At the end of the day, I obviously

8    don't represent them.  The City might be coming back in when

9    we're served.  But I -- but that allegation isn't in there,

10   and I'm -- I would raise it again if the City comes in.  But

11   it also doesn't fix the malicious prosecution claim.  Again,

12   no allegation --

13             THE COURT:  It may not fix the malicious

14   prosecution.  It may only -- you know, obviously, we'll go

15   through; and at some point, you're going to have -- some

16   people are going to go away.  Some claims are going to go

17   away.  Maybe everything goes away.  I don't know.

18             But right now, I -- what I -- what I've -- what I

19   see -- what I see here is a plausible set of facts alleging

20   that there was a group of people who did this.  I am cautious

21   about those pleadings.  I don't think that the -- I think the

22   fact that, regardless of what happened in -- with the motion

23   for a new trial, the fact that it was contested all the way

24   up to the single justice suggests that there's very different

25   views of this.  And I recognize that.  I'm not accepting the

1    plaintiff's version of this event as true.

2              But based on these allegations, which is what I

3    need to accept for purposes of where we stand today, there's

4    a plausible claim that he was framed.  And I understand this

5    is going to be hotly debated.  I get that.  I don't -- I

6    don't -- I'm not -- I am not -- I am not assuming that these

7    claims are right at all.  I'm just simply saying he's made a

8    plausible claim about it.

9              And, yes, there's lots of different pieces --

10   people who have a different part in it.  There's a number of

11   different defendants.  But the allegation here is that that's

12   what happened here, that there was exculpatory evidence that

13   wasn't brought forward, that there was an allegation that

14   this was him when it wasn't him, per the confidential

15   informant.

16             Now, it may be that the Boston defendants relied on

17   a confidential informant, and they were appropriately -- that

18   was a permissible thing for them to do, end of day.  You may

19   get there very quickly.  But I don't have that in front of me

20   here.

21             MR. ANJOMI:  Understood, Your Honor.

22             THE COURT:  Okay.  I think we are in recess.  Thank

23   you.

24             Oh.  I'm sorry.  Scheduling order.  Can I have

25   you -- if you want to see me again, you're welcome to; but

1    otherwise, we can -- you can confer and come up with a

2    proposed discovery schedule.  And submit it, say, in a week?

3    Is that enough time?

4              MR. LOEVY-REYES:  That should be enough time,

5    Judge, from plaintiff's perspective.

6              THE COURT:  So it will be -- at this point, the

7    City of Boston is not involved; but given that the City of

8    Boston may be brought back in, I would ask that you confer

9    with them.  I won't ask them to necessarily have to worry

10   about signing in on -- signing on things, but it's just more

11   efficient if you hear them out --

12             MR. LOEVY-REYES:  Of course.

13             THE COURT:  -- on putting together a schedule.  And

14   so for the rest of you, give me a proposed schedule, and let

15   me know if you want to see me for the scheduling conference

16   if you have any disagreements.  Otherwise, I'll just sign off

17   on it.

18             MR. LOEVY-REYES:  Very good, Judge.

19             MR. ANJOMI:  Thank you, Your Honor.

20             MR. COLLINS:  Thank you.

21             THE DEPUTY CLERK:  Now we're in recess.  Thank you.

22             (Court in recess at 11:38 a.m.)

23

24

25

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4          I, Robert W. Paschal, Registered Merit Reporter and

5   Certified Realtime Reporter, in and for the United States

6   District Court for the District of Massachusetts, do hereby

7   certify that pursuant to Section 753, Title 28, United States

8   Code, the foregoing pages are a true and correct transcript

9   of the stenographically reported proceedings held in the

10  above-entitled matter and that the transcript page format is

11  in conformance with the regulations of the Judicial

12  Conference of the United States.

13

14                          Dated this 27th day of July, 2021.

15

16

17

18

19                          /s/ Robert W. Paschal

20                          _____

21                          ROBERT W. PASCHAL, RMR, CRR
                            Official Court Reporter

22

23

24

25