UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:20-cv-11456-IT

FREDERICK WEICHEL
                Plaintiff,

v.

TOWN OF BRAINTREE, BRAINTREE
POLICE CHIEF JOHN VINCENT
POLIO, BRAINTREE POLICE
OFFICERS JAMES LEAHY, ESTATE
OF ROBERT WILSON, ESTATE OF
THEODORE BUKER, and UNKNOWN
BRAINTREE POLICE OFFICERS,
ESTATES OF BOSTON POLICE
OFFICERS EDWARD WALSH and
WALTER DERBY, CITY OF BOSTON,
MASSACHUSETTS, and STATE
POLICE OFFICERS JOHN R.
SPRAGUE and EDWARD WHELAN

                Defendants.

**ESTATE OF EDWARD WALSH'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

## Table of Contents

Table of Contents.................................................................................2

Table of Authorities...........................................................................3

   I.    Preliminary Statement.........................................................6
   II.   Undisputed Facts.................................................................7
   III.  Summary Judgment Standard............................................8
   IV.  Argument............................................................................ 9
         a.  PLAINTIFF'S §1983-DUE PROCESS CLAIM FAILS AS A
            MATTER OF LAW...............................................................9
         b.  PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS AS A
            MATTER OF LAW.............................................................12
         c.  PLAINTIFF'S §1983 CONSPIRACY FAILS AS A MATTER OF
            LAW....................................................................................16
         d.  PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS AS A
            MATTER OF LAW .............................................................17
         e.  PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL
            DISTRESS CLAIM FAILS AS A MATTER OF LAW....................20
         f.  DETECTIVE WALSH'S RELAYING OF INFORMATION TO
            SPRAGUE AND WILSON IS PROTECTED BY THE DOCTRINE
            OF QUALIFIED IMMUNITY..............................................25
         g.  ALL OF PLAINTIFF'S CLAIMS ARE TIME BARRED.................26

   V.    Conclusion.........................................................................26

## <u>Table of Authorities</u>

*Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011).............................................................23

*Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976)............................................21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)......................................8

*Arias v. City of Everett*, No. CV 19-10537-JGD, 2019 WL 6528894, at *14 (D. Mass. Dec. 4, 2019)..............................................................................................................21

*Burke v. Town of Walpole*, No. CIV.A. 00-10376-GAO, 2003 WL 23327539, at *6 (D. Mass. Aug. 5, 2003)..............................................................................................22

*Cass v. Town of Wayland,* 383 F. Supp. 3d 66, 84 (D. Mass. 2019)............................15

*Com. v. Cruz,* No. CRIM.A. 98-1651-001, 1999 WL 825121, at *8 (Mass. Super. Aug. 13, 1999).......................................................................................................................15

*Com. v. Daye*, 411 Mass. 719, 732, 587 N.E.2d 194, 202 (1992)................................19

*Cosenza v. City of Worcester, Massachusetts*, 651 F. Supp. 3d 311, 318 (D. Mass. 2023)............................................................................................................................9, 12

*City of Escondido, Cal. v. Emmons,* 139 S. Ct. 500, 503 (2019)..................................23

*Cunard S.S. Co. v. Kelley*, 126 F. 610, 616 (1st Cir. 1903)..........................................11

*Echavarria v. Roach,* No. 16-CV-11118-ADB, 2017 WL 3928270, at *11 (D. Mass. Sept. 7, 2017)....................................................................................................17, 24, 25

*Davis v. Rennie*, 264 F.3d 86, 98 (1st Cir. 2001)........................................................18

*Diaz-Bigio v. Santini*, 652 F.3d 45, 50 (1st Cir. 2011)..........................................20, 23

*Est. of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008)..............................16

*Farrah ex rel. Estate of Santana v. Gondella,* 725 F. Supp. 2d 238, 246 (D. Mass. 2010)..............................................................................................................................18

*Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 398 (1st Cir. 2012)........18

*Keenan v. Wells Fargo Bank, N.A.*, 246 F. Supp. 3d 518, 527 (D. Mass. 2017).....20

*Kelley v. LaForce*, 288 F.3d 1, 6 (1st Cir. 2002) .....................................................22

*Limone v. Condon* , 372 F.3d 39, 44-45 ( 1st Cir 2004)............................9, 13,14,23

*Lincoln v. Shea*, 361 Mass. 1, 4-5 (1972)................................................................13

*Mackey v. Town of Tewksbury*, 433 F. Supp. 3d 116, 169 (D. Mass. 2020)...........13

*McDonald v. City of Bos.*, 334 F. Supp. 3d 429, 442 (D. Mass. 2018)...................21

*McDonough v. Smith*, 588 Us 109 (2019)................................................................26

*McGrath v. Town of Sandwich*, 22 F. Supp. 3d 58, 70 (D. Mass. 2014)...............21

*Mirabella v. Town of Lexington, Massachusetts*, 64 F.4th 55, 58 (1st Cir. 2023).....10

*Morris v. City of Worcester*, No. CV 14-40164-DHH, 2015 WL 13229182, at *3 (D. Mass. Oct. 23, 2015)................................................................................................18

*Mulero-Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 672 (1st Cir. 1996)...........................11

*Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001)...............................................13

*Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009)......................................................22

*Polay v. McMahon*, 468 Mass. 379, 385 (2014)........................................................20

*Randall v. Prince George's Cty.,* 302 F.3d 188, 204 (4th Cir. 2002).........................18

*Rodriguez-Mateo v. Fuentes-Agostini,* 66 F. App'x 212, 214 (1st Cir. 2003).............11

*Saucier v. Katz*, 533 U.S. 194, 200-201 (2001).........................................................13

*Sheppard v. Aloisi*, 384 F. Supp. 2d 478, 491 (D. Mass. 2005)................................25

*Walker v. Jackson,* 952 F. Supp. 2d 343, 352 (D. Mass. 2013)...........................18, 25

*White v. Pauly,* 137 S. Ct. 548, 551 (2017)...............................................................24

*Williams v. City of Bos.,* No. 1:10-CV-10131, 2012 WL 5829124, at *10 (D. Mass. Sept. 21, 2012).................................................................................................24

*Wilson v. Fairhaven*, No. CV 18-11099-PBS, 2021 WL 1387778, at *17 (D. Mass. Mar. 8, 2021).................................................................................................12

*Wilson v. Layne,* 526 U.S. 603, 609 (1999)..........................................................22

*Wilber v Curtis*, 872 F.3d 15, 24 (1st Cir. 2017)..................................................13

*Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994)................................................18

*Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 240 (1st Cir. 2013)...................21

The Defendant, the Estate of Edward Walsh ("Walsh") submits this memorandum of law in support of its motion for summary judgment on all counts of the Amended Complaint of Plaintiff Frederick Weichel ("Plaintiff") asserted against it – 1) 1983 Due Process; 2) 1983- Malicious Prosecution; 3) 1983- Conspiracy; 4) 1983- Failure to Intervene; and 5) Intentional Infliction of Emotional Distress ("IIED").

## **Preliminary Statement**

While this case is premised on a tragic event which ultimately left one man dead and the Plaintiff in prison after receiving a constitutionally deficient trial, there is absolutely no evidence to support liability on the part of the Estate of Edward Walsh.

In summary, Plaintiff's case against Walsh is cast in a form that would require this Court to engage in significant speculation by stacking inference upon inference in order to find a disputed issue of material fact. Namely, in order to survive summary judgment, each of Plaintiff's claims require the Plaintiff to point to evidence that would raise a reasonable inference that Walsh fabricated the information he allegedly passed on to Detective Robert Wilson ("Wilson") of the Braintree Police Department and Trooper John Sprague ("Sprague") of the Massachusetts State Police that the Plaintiff was involved in the murder of Robert Lamonica ("Lamonica" or "Decedent"). In an attempt to get to this conclusion, Plaintiff is asking the court to first draw an inference that because Walsh was in the Organized Crime Unit, he must have had a relationship with disgraced FBI Agent John Connolly ("Connolly"). Next, the Plaintiff would ask the court to draw a further inference from that inference that because

Connolly engaged in malfeasance with notorious organized crime leader James "Whitey" Bulger ("Bulger"), Walsh must also have been engaged in corruption on behalf of Bulger. Next, the Plaintiff would ask the court to draw an inference from that inference that because there is some evidence in the record that Bulger declined to allow Connolly to provide an alibi for the Plaintiff, that Walsh must have knowingly provided false information to the officials investigating the Lamonica murder.

What is more, even if the Plaintiff were able to raise a genuine factual dispute as to whether Walsh fabricated the information he allegedly passed on to Walsh and Sprague, Plaintiff's claims still fail as a matter of law, where this information was not used to charge the Plaintiff with murder, to support his arrest, detention or eventual conviction. It follows that each of Plaintiff's claims fail for want of any showing of causation.

Put simply, while there is no dispute that the Plaintiff was wronged by the criminal justice system, there is no evidence that Walsh played any actionable part in the Plaintiff's injuries and this Court should grant Walsh summary judgment on all counts.

### **Undisputed Facts[1]**

Defendants rely upon and incorporate by reference the parties' L.R. 56.1

---

[1] The Estate of Edward Walsh sets forth this statement of facts solely for summary judgment and makes no admission with respect to the facts contained herein. All facts contained herein are derived from the parties' L.R. 56.1 Statement of Material Undisputed Facts (the "Rule 56.1 Statement").

Statement of Material Undisputed Facts (the "Rule 56.1 Statement").

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The substantive law determines which facts are material.  *See id.*  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id*. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id*. at 249.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id*. at 249-50 (citations omitted).

Here, Plaintiff has failed to present sufficient evidence to allow a jury to return a verdict in his favor.

**Argument**

## I.     PLAINTIFF'S §1983-DUE PROCESS CLAIM FAILS AS A MATTER OF LAW

Plaintiff's §1983 due process claim is put forth  as a claim that Walsh fabricated evidence, namely that he made up the fact that street sources and/or confidential informants in the South Boston area indicated  that they believed that the Plaintiff was involved in Lamonica's murder. In order to prevail on a 1983 fabricated evidence claim, the Plaintiff must show  "(1) fabrication of inculpatory evidence that is (2) material / causal to the conviction and (3) deliberate deception." *See Cosenza v. City of Worcester, Massachusetts*, 651 F. Supp. 3d 311, 318 (D. Mass. 2023), *appeal dismissed sub nom. Cosenza v. Hazelhurst,* No. 23-1123, 2023 WL 9596753 (1st Cir. Dec. 6, 2023) *Citing Limone v. Condon ,* 372 F.3d 39, 44-45 ( 1st Cir 2004). Here, Plaintiff has failed to advance record evidence to support any of these elements.

### a.  *Plaintiff has failed to offer any evidence to support an inference that the information allegedly relayed by Walsh was fabricated*

Plaintiff has failed to offer any record evidence that would support an inference that Walsh fabricated the information he allegedly passed along to Wilson and Sprague. In fact, there is actually record evidence that supports the proposition that the information allegedly relayed by Walsh was actually communicated to him or Detective Walter Derby ("Derby") by "street sources" and/or confidential informants.  Indeed, it was uncontroverted both at the Plaintiff's criminal trial and during discovery in the instant case, that the Plaintiff was present when a fight

occurred between an associate of the Plaintiff , Thomas Barrett, and an associate of the decedent, Robert Shea. *See Exhibit E- Sprague Motion to Suppress TX* (Doc. 288-5 at p. 12:10-13:15). It was also uncontroverted that there were threats going back and forth between the plaintiff and the decedent. *See Exhibit B- Sprague Report* (Doc 288-2 at p 9, 11-12; *Exhibit H Sprague 258e Tx* (Doc. 288-7 at P. 20:2-22:13). Plaintiff's criminal trial counsel testified at his deposition that he did not contest that this fight occurred and that based on his vast experience representing criminal defendants in the South Boston area, he would not have been at all surprised that informants in the South Boston area would be talking about the fact that the Plaintiff was present for the fight between Shea and Barrett. *See* Exhibit I Cardinale Dep. (Doc. 288-8 at p.5:9-6:3)

At most, Plaintiff's case against Walsh requires a stacking of inferences upon one another. *See Mirabella v. Town of Lexington, Massachusetts*, 64 F.4th 55, 58 (1st Cir. 2023)(Noting that stacking "inference upon inference" fails to show a genuine issue of material fact);*Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 398 (1st Cir. 2012)( finding that where the "plaintiff's assertion piles inference upon inference… the entire pyramid topples of its own weight"). As noted in Walsh's preliminary statement, *Supra,* the Plaintiff's case against Walsh is first premised on drawing an inference that because Walsh worked in the Organized Crime unit, he must have had a relationship with Connolly. Next, the Plaintiff would ask the court to draw a further inference from that inference that because Connolly engaged in corruption with Bulger, Walsh must also have been engaged in corruption on

behalf Bulger. Next, the Plaintiff would ask the court to draw an inference from that inference that because there is some evidence that Bulger declined to allow Connolly to provide an alibi for the Plaintiff, that Walsh must have knowingly provided false information to the officials investigating the Lamonica Murder. This type of logical house of cards is exactly the type of impermissible speculation that the First Circuit has long cautioned against. *See Cunard S.S. Co. v. Kelley*, 126 F. 610, 616 (1st Cir. 1903)("No inference of fact or of law is reliable drawn from premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed"); *Mulero-Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 672 (1st Cir. 1996) *Citing Frieze v. Boatmen Bank of Belton*, 950 F.2d 538, 541 (8th Cir.1991)("An inference is reasonable only if it can be drawn from the evidence without resort to speculation" ).

### b. *The tip allegedly relayed to investigators by Walsh did not cause the Plaintiff's conviction*

Even if Plaintiff were able to show a disputed fact issue as to whether Walsh had fabricated  the tip he allegedly relayed to Wilson and Sprague, Plaintiff's fabricated evidence claim still fails where there is no evidence that the information allegedly passed on by Walsh caused the Plaintiff's conviction. The record in this case does not contain any evidence that the alleged fabricated information was used in any charging document, presented to the grand jury or admitted in evidence at trial. What is more, clearly there are intervening events that break the causal chain between Walsh relaying the confidential informant tip and the Plaintiff's eventual arrest, prosecution and conviction. First, there was John Foley's identification  of

the Plaintiff when he was shown a photo array on several occasions and subsequently identified him at trial. *See Exhibit B- Sprague Report* (Doc 288-2 at p.6); *Exhibit G Motion for New Trial Order* (Doc 288-7 at p. 3). Next, there is the subsequent identification made by Foley when he was driven around South Boston to look for the perpetrator. Lastly, it is uncontested that the Plaintiff had been involved in an altercation with Lamonica just a few days prior to the homicide and that threats had been made between them. It follows that the Plaintiff was a likely suspect in the homicide and the information allegedly passed along by Walsh was of no moment in the decision to charge him with Lamonica's murder and played absolutely no role in his eventual conviction. *See Wilson v. Fairhaven*, No. CV 18-11099-PBS, 2021 WL 1387778, at *17 (D. Mass. Mar. 8, 2021) (granting summary judgment in a fabricated evidence case where the alleged false statement was not necessary in probable cause determination).

### c. *The plaintiff has adduced no record evidence to support a reasonable inference that Walsh acted with the intent to deliberately deceive*

Lastly, it goes without saying that had the Plaintiff advanced evidence to support an inference that Walsh had deliberately fabricated evidence that the deliberate deception element would necessarily be met. *See Cosenza,* 51 F. Supp. 3d at 318 ("So long as it is intentional, fabrication necessarily meets the deliberate deception standard"). But where, as here, the Plaintiff has advanced no evidence to support an inference that Walsh fabricated any evidence at all, let alone evidence that was causal to the Plaintiff's criminal conviction, the Plaintiff similarly cannot

meet the deliberate deception element.

## II.    PLAINTIFF'S MALICIOUS PROSECUTION CLAIM FAILS AS A MATTER OF LAW

The elements of a common-law cause of action for malicious prosecution are "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). Massachusetts has adopted the "improper purpose" formulation for the element of malice. *See Wilber v. Curtis*, 872 F.3d 15, 24 (1st Cir. 2017) (booking officer did not have improper purpose) *citing Chervin v. Travelers Ins. Co.*, 448 Mass. 95 (2006). In order to meet this standard, Plaintiff must "show that defendants acted primarily for a purpose other than that of properly carrying out their duties, or were attempting to achieve an unlawful end or a lawful end through unlawful means, or intended to harass, vex, or annoy the plaintiff." *Mackey v. Town of Tewksbury*, 433 F. Supp. 3d 116, 169 (D. Mass. 2020) (Bowler, M.J.). In a common law malicious prosecution claim, a police officer acts with probable cause if he "acted reasonably *in swearing out a complaint* against the plaintiff on the basis of the information and knowledge which he possessed at that time." *Lincoln v. Shea*, 361 Mass. 1, 4-5 (1972) (emphasis added); *see also Mackey*, 433 F. Supp. at 169.

### a. Walsh did not initiate Criminal proceedings against the Plaintiff

In the context of a common law malicious prosecution claim "[t]he question of whether such an individual has instituted a criminal proceeding depends on the circumstances." *Limone*, 579 F.3d at 90. An individual may not be held to have instituted criminal proceedings if he merely provides false information to law enforcement officials in response to these officials' queries during an ongoing investigation. *Id. citing Correllas v.Viveiros,* 572 N.E.2d 7, 10 (1991)("the mere transmission of information to a police officer, who using his or her independent judgment, then pursues the matter and institutes criminal proceedings, has never been held sufficient to support an action for malicious prosecution"). "Instead, the information provider must take some initiative; that is, he must voluntarily reach out to law enforcement officials and cause them to commence a new line of inquiry." *Limone, supra.*

Here, Plaintiff's malicious prosecution claim against Walsh fails because Walsh did not commence or continue the criminal proceedings against the Plaintiff. The undisputed evidence is that, at most, Detective Walsh passed on information from street sources indicating the Plaintiff was involved in the Lamonica murder and subsequently passed on information that informants were also indicating similarly that the Plaintiff was involved. There is no record evidence to support an inference that Walsh did anything other than pass along information. There is no record evidence to suggest that Braintree and/or State Police investigators were caused to "commence a new line of inquiry" as a result of the information allegedly passed on

14

by Walsh. *Id.*

### b. There was Probable cause to charge the plaintiff

As a threshold matter, the record confirms that Walsh's tangential involvement in the investigation concluded at some point before the Plaintiff was arrested. At the time the Plaintiff was arrested and subsequently indicted, there was plainly probable cause to charge him with Lamonica's murder. Indeed, at the time he was charged, Foley had identified the Plaintiff, on several occasions, as the person he saw running from the scene and investigators had developed motive evidence after learning about the fight that had occurred between an associate of the plaintiff and an associate of Lamonica. *See Com. v. Cruz,* No. CRIM.A. 98-1651-001, 1999 WL 825121, at *8 (Mass. Super. Aug. 13, 1999) (probable cause to arrest where perpetrator had been identified during photo array and show-up identification procedure). There is no evidence that Walsh possessed exculpatory information and failed to pass it along to Braintree investigators, thus as far as Walsh was concerned there was clearly probable cause to charge the Plaintiff.

### c. There is no evidence Walsh acted with actual malice

"To raise a genuine issue of material fact on the question of malice, the plaintiff must come forward with some evidence that would permit a fact finder to conclude that [the defendant]] (1) knew there was no probable cause, and (2) acted with an improper motive." *Cass v. Town of Wayland,* 383 F. Supp. 3d 66, 84 (D. Mass. 2019) *Citing Sklar v. Beth Isr. Deaconess Med. Ctr.*, 59 Mass.App.Ct. 550, 797 N.E.2d 381,

387 (2003). Here, as noted above, there is nothing in the record that raises an inference that Walsh believed  that there was not probable cause to charge the Plaintiff.  Additionally, there is no record evidence that would support an inference that Walsh acted with an improper motive. Moreover, if the Plaintiff wishes to again attempt to point to the impermissible stacking of inferences noted in Section II, *Supra* for the same reasons noted above, this does not create a reasonable inference that Walsh while acting with an improper motive, decided to fabricate the information he allegedly passed along to Wilson and Sprague.

### III.    PLAINTIFF'S §1983 CONSPIRACY FAILS AS A MATTER OF LAW

"A civil rights conspiracy as commonly defined is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Est. of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008) *Citing Earle v. Benoit,* 850 F.2d 836, 844 (1st Cir.1988). At the summary judgment stage, although "conspiracy is a matter of inference, summary judgment may still be appropriate on a conspiracy claim where  the nonmoving party rests merely on conclusory allegations." *Id.*

> #### a.  *The Plaintiff has failed to show a constitutional injury attributable to the conduct of Detective Walsh*

While the Plaintiff can clearly show an injury in the constitutional sense as it

pertains to the Braintree and State Police Defendants' failure to disclose exculpatory evidence, he can make no such showing against Walsh. Similar to above, there is no allegation that Walsh was privy to exculpatory information and failed to disclose it, nor is there any evidence to support the claim that Walsh fabricated the information that he allegedly passed on to Wilson and Sprague. Thus, Plaintiff cannot show that any of the constitutional injuries he suffered were caused by Walsh, or that Walsh worked in concert with Wilson and Sprague or anyone else to cause Plaintiff's injuries.

> **b.** ***The plaintiff has adduced no evidence that would support a reasonable inference that Walsh had an agreement with any alleged tortfeasor to cause the Plaintiff an injury in the constitutional sense***

Even if Plaintiff were able to offer evidence that he suffered a constitutional injury attributable to Walsh's conduct, he has offered no evidence that would support an inference that there was an agreement between Walsh and any other alleged tortfeasor. Again, as noted in section II, other than through the impermissible stacking of inferences, there is no evidence to suggest that Walsh was working in concert with Wilson and Sprague or with Connolly and Bulger. Specifically, as to Sprague and Wilson, the record is clear that Walsh's only involvement was passing along information he was hearing on the street when he was asked. As to Connolly and Bulger, the record only supports the inference that Walsh knew Connolly through his work in the Organized Crime Unit and never had any involvement with Bulger and his associates. *See Exhibit J- Connolly Dep* (Doc. 288-10 at p. 5:21-7:9).

## IV.    PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS AS A MATTER OF LAW

In "the First Circuit, it remains uncertain whether an officer has a duty to intervene in cases that do not concern excessive force." *Echavarria v. Roach,* No. 16-CV-11118-ADB, 2017 WL 3928270, at *11 (D. Mass. Sept. 7, 2017) (adding "Defendants are correct that First Circuit cases have primarily, if not exclusively, concerned allegations of failure to intervene in the excessive force context."). Even if Plaintiff's failure to intervene claim was permitted, it would require elements which Plaintiff has not satisfied against Walsh.

A failure to intervene claim requires that the police officer have knowledge of the alleged Constitutional violation. *See Davis v. Rennie*, 264 F.3d 86, 98 (1st Cir. 2001) ("police officers have a duty to intervene when they see another officer use excessive force against a pretrial detainee."); *Randall v. Prince George's Cty.,* 302 F.3d 188, 204 (4th Cir. 2002) ("[A]n officer may be liable under § 1983, on a theory of bystander liability, if [he or she]: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." (footnote omitted)); *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994) ("An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the

officer had a realistic opportunity to intervene to prevent the harm from occurring").

In addition, a "'failure to intervene' [claim] applies only when an officer has 'a realistic opportunity to intercede.'" *gom ex rel. Estate of Santana v. Gondella,* 725 F. Supp. 2d 238, 246 (D. Mass. 2010) *quoting Davis v. Rennie,* 264 F.3d 86, 98 n. 10 (1st Cir.2001); *Morris v. City of Worcester*, No. CV 14-40164-DHH, 2015 WL 13229182, at *3 (D. Mass. Oct. 23, 2015); *Walker v. Jackson,* 952 F. Supp. 2d 343, 352 (D. Mass. 2013) ("the officer must have a 'realistic opportunity' to intervene."). Through discovery and deposition practice Plaintiff has adduced no record evidence that would support even an inference that Walsh knew what conduct the Braintree Police and the State Police were engaged in. In addition, Plaintiff has not uncovered any evidence that would suggest that Walsh had a realistic opportunity to intervene.

Here, there is no record evidence that would support an inference that Walsh was aware of the exculpatory information that led to the reversal of the Plaintiff's conviction. Similarly, Plaintiff has adduced no evidence that would support the inference that Walsh was aware that Bulger had instructed Connolly to decline to provide an alibi for the Plaintiff.

Even if it were the case that Walsh was aware of exculpatory evidence during the criminal prosecution of the plaintiff, there is no evidence to suggest that he was a member of the "prosecution team" that would have had an obligation or even an opportunity to intercede. *See Com. v. Daye*, 411 Mass. 719, 732, 587 N.E.2d 194, 202 (1992) (finding that although one police department had shared information with

the prosecutor during a murder investigation, that involvement did not rise to the level of making that police department part of the prosecution team). Walsh never testified before the grand jury, at any pretrial evidentiary hearing or at trial. In fact, the only record of either Walsh participating in this case is hearsay statements from other investigators that he passed along certain information.

Accordingly, Plaintiff has failed to offer evidence to sufficiently support his claim that Walsh failed to intervene, and the Court should grant summary judgment.

## V.    PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS AS A MATTER OF LAW

The remaining claim against the Estate of Edward Walsh is for IIED.  The elements of an intentional infliction of emotional distress claim are; "(1) that [defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Polay v. McMahon*, 468 Mass. 379, 385 (2014); *see also Johnson v. Town of Nantucket*, 550 F. Supp. 2d 179, 183 (D. Mass. 2008) (Gorton, J.).  "To show IIED, a plaintiff must assert that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community." *Keenan v. Wells Fargo Bank, N.A.*, 246 F. Supp. 3d 518, 527 (D. Mass. 2017) (Gorton, J.) *quoting Payton v. Abbott Labs.*, 386 Mass. 540 (1982).  "The standard for what qualifies as such conduct has been set very high to 'avoid

litigation in situations where only bad manners and mere hurt feelings are involved.'" *Diaz*, 229 F. Supp. 3d at 113 (quoting *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996)).

In order for the conduct to be "extreme and outrageous," it must be "'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community'" *Agis v. Howard Johnson Co.*, 371 Mass. 140, 145 (1976) (quoting Restatement (Second) of Torts § 46 comment d (1965)); *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 240 (1st Cir. 2013) ("Extreme and outrageous conduct is behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Plaintiff fails to satisfy the second prong as Walsh's receipt of information from an informant or "street source" – even if that information was inaccurate, could not be considered extreme and outrageous.

A plaintiff must also allege that the officers' acts caused the emotional distress or cause the acts that lead to the emotional distress. *McGrath v. Town of Sandwich*, 22 F. Supp. 3d 58, 70 (D. Mass. 2014) (finding that where alleged false statements did not cause emotional injury plaintiff had failed to state a claim for IIED"). There is no record evidence to support the conclusion that Walsh ever interacted with the Plaintiff. *See e.g. McDonald v. City of Bos.*, 334 F. Supp. 3d 429, 442 (D. Mass. 2018) (dismissing IIED claim where officer had no interaction with the plaintiff prior to or in the course of her arrest). Instead the gravamen of Plaintiff's case lies with the conduct of Defendants Sprague, Wilson, and Leahy and

their failure to turn over the "Leahy Report" and the use of Foley's identification of the Plaintiff.

In addition, Plaintiff must allege that it was the fabrication of evidence that led to Plaintiff's arrest and detention without probable case. *See Arias v. City of Everett*, No. CV 19-10537-JGD, 2019 WL 6528894, at *14 (D. Mass. Dec. 4, 2019)("The fabrication of evidence, causing Plaintiff's arrest and detention without probable cause, along with withholding of exculpatory evidence, is sufficient to state a claim for intentional infliction of emotional distress."); *Burke v. Town of Walpole*, No. CIV.A. 00-10376-GAO, 2003 WL 23327539, at *6 (D. Mass. Aug. 5, 2003). Similar to the analysis related to Plaintiff's fabricated evidence claim noted in Section I, *Supra,* there is no evidence that the alleged fabricated evidence had a causal relationship with his arrest, conviction, or incarceration, thus plaintiff's IIED claim cannot survive summary judgment.

## VI.   DETECTIVE WALSH'S RELAYING OF INFORMATION TO SPRAGUE AND WILSON IS PROTECTED BY THE DOCTRINE OF QUALIFIED IMMUNITY

"Government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne,* 526 U.S. 603, 609 (1999) *quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Kelley v. LaForce*, 288 F.3d 1, 6 (1st Cir. 2002) (qualified immunity available as defense to § 1983 civil liability claims).  "The protection of qualified immunity

applied regardless of whether the government official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) *quoting Groh v. Ramirez*, 540 U.S. 551, 567 (2004). This doctrine of qualified immunity protects such public officials so that they may act freely "without fear of retributive suit for damages except when they should have understood that particular conduct was unlawful." *Limone,* 372 F.3d at 44. The qualified immunity determination is to be determined as soon as possible because "[t]he privilege is an immunity from suit rather than a mere defense in liability and, like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

To determine whether an official violated clearly established rights of which a reasonable person would have known, the First Circuit follows "a two-prong analysis for determining whether defendants are entitled to qualified immunity, asking '(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation.'" *Diaz-Bigio v. Santini*, 652 F.3d 45, 50 (1st Cir. 2011) *quoting Pearson*, 129 S. Ct. at 811. "The second prong, in turn, has two parts: (a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official." *Id. Citing Decotiis v. Whittemore,*

635 F.3d 22, 36 (1st Cir.2011). The "clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons,* 139 S. Ct. 500, 503 (2019). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly,* 137 S. Ct. 548, 551 (2017) (internal quotations and citations omitted). Plaintiff cannot establish a clearly established right to support his malicious prosecution or failure to intervene claims.

### a. Qualified immunity applies to Plaintiff's malicious prosecution claim.

"The First Circuit has noted that, at least prior to 1994, the law was not clearly established that a claim based upon malicious prosecution, anchored (as here) on the Fourth Amendment, could be asserted via § 1983." *Schand v. City of Springfield,* 380 F. Supp. 3d 106, 135 (D. Mass. 2019) *citing Albright v. Oliver,* 510 U.S. 266, 274); *see Hernandez-Cuevas v. Taylor,* 723 F.3d 91, 98 (1st Cir. 2013). Prior to *Albright* in 1994, the majority of circuits held that the Fourth Amendment could not anchor a malicious prosecution claim. *See Hernandez-Cuevas v. Taylor,* 723 F.3d 91, 99 (1st Cir. 2013). "Prior to the *Hernandez-Cuevas* decision, the First Circuit had described it as an open question whether the Constitution permits the assertion of a section 1983 claim for malicious prosecution on the basis of an alleged Fourth Amendment violation, and accordingly, held that such uncertainty in the legal landscape entitles state actors to qualified immunity." *Echavarria v. Roach,* No. 16-CV-11118-ADB, 2017 WL 3928270, at *8 (D. Mass. Sept. 7, 2017) (internal

quotations and citations omitted).  The allegations made by Plaintiff relate to

conduct that occurred in the early 1980s.  It would not have been clear to a

reasonable official in the 1980s that their actions could give rise to a malicious

prosecution claim pursuant to the Fourth Amendment.  *See Rodriguez-Mateo v.*

*Fuentes-Agostini,* 66 F. App'x 212, 214 (1st Cir. 2003); *Williams v. City of Bos.,* No.

1:10-CV-10131, 2012 WL 5829124, at *10 (D. Mass. Sept. 21, 2012) ("in 2002, at the

time of the events giving rise to Williams' claims, it was not clearly established that

there was a constitutional right to remain free from malicious prosecution");

*Sheppard v. Aloisi*, 384 F. Supp. 2d 478, 491 (D. Mass. 2005) ("Given that the

question whether malicious prosecution may result in a constitutional violation was

"an open question" at the time of Sheppard's arrest in October 2000, the doctrine of

qualified immunity bars this claim brought under 42 U.S.C. § 1983.").  Accordingly,

Plaintiff's malicious prosecution claim was not clearly established and, therefore,

Walsh would be entitled to qualified immunity.

>    **b. *Qualified immunity applies to Plaintiff's failure to intervene claim.***

Put simply, as of 2017, "it remains uncertain whether an officer has a duty to

intervene in cases that do not concern excessive force."  *Echavarria v. Roach,* No.

16-CV-11118-ADB, 2017 WL 3928270, at *11 (D. Mass. Sept. 7, 2017); *see Walker v.*

*Jackson,* 952 F. Supp. 2d 343, 351 (D. Mass. 2013) ("this court cannot definitively

conclude that a claim alleging a failure to intervene in an unreasonable search fails

to state a constitutional violation."); *Cosenza v. City of Worcester, Massachusetts,*

355 F. Supp. 3d 81, 100–01 (D. Mass. 2019) ("Defendants are correct that 'First

25

Circuit cases have primarily, if not exclusively, concerned allegations of failure to intervene in the excessive force context.' … I find that Defendants are entitled to qualified immunity for their failure to intervene claim in a constitutional violation because that violation was not the excessive use of force") (alteration to original); *Walker v. Jackson,* 952 F. Supp. 2d 343, 352 (D. Mass. 2013) ("the court agrees that the defendants have qualified immunity as to" plaintiff's failure to intervene in an unreasonable residence search).  Because the law on whether there was a duty to intervene in situations not involving excessive force was unsettled as of 2017, it was certainly unsettled  in 1981.  Assuming *arguendo* that Plaintiff has raised a genuine factual dispute  as to whether Walsh  violated on of his constitutional rights, he cannot demonstrate that the right was clearly established.  Accordingly,  Walsh is entitled to qualified immunity and the failure to intervene claim.

## VII.   ALL OF PLAINTIFF'S CLAIMS ARE TIME BARRED

In *McDonough v. Smith*, 872 F.3d 15 (2019), the Supreme Court of the United States held that a 1983 claim premised on fabricated evidence accrues when the proceedings against the 1983 plaintiff are "terminated." In its ruling, SCOTUS noted that this accrual rule was necessary because to conclude otherwise would mean that "[a] significant number of criminal defendants could face an untenable choice between (1) letting their claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting them." *Id*. at 2158. In his case against Walsh, Plaintiff cannot take advantage of this rule, because Walsh was not one of the people who could have "been in the midst of prosecuting him." Indeed, the

only facts the plaintiff has been able to adduce in discovery regarding Walsh's involvement in his criminal prosecution were allusions in aged reports that some combination of Walsh and/or Derby provided information to Wilson and Sprague in the early stages of the investigation. There is nothing in the record to suggest that Walsh testified at the Plaintiff's trial or did anything aside from passing inadmissible information to the officials actually investigating and prosecuting the plaintiff. Thus, at the latest, Plaintiff's claims against Walsh accrued on June 12, 1980, the date that he allegedly passed the information along. Thus all of Plaintiff's claims against Walsh are time barred and Walsh's motion for summary judgment should be allowed.

## <u>Conclusion</u>

Wherefore**,** Defendant, Estate of Edward Walsh, respectfully request that this Honorable Court grant its motion, enter judgment in its favor dismissing all counts of Plaintiffs' Amended Complaint, and grant such other and further relief as it deems just and proper.

Respectfully submitted,
Adam Cederbaum,
Corporation Counsel,

Defendant City of Boston
By its attorney,

/s/ James Megee
_____
James Megee (BBO#691911)
Assistant Corporation Counsel
Boston Police Department
Office of the Legal Advisor
One Schroeder Plaza
Boston, MA 02120
(617) 343-4550

Dated:1/24/2025