UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FREDERICK WEICHEL, <br><br> Plaintiff, <br><br> v. <br><br> TOWN OF BRAINTREE, BRAINTREE POLICE CHIEF JOHN VINCENT POLIO, BRAINTREE POLICE OFFICERS JAMES LEAHY, ROBERT WILSON, THEODORE BUKER, and UNKNOWN BRAINTREE POLICE OFFICERS, ESTATE OF BOSTON POLICE OFFICER EDWARD WALSH, BOSTON POLICE OFFICER WALTER DERBY, and STATE POLICE OFFICERS JOHN R. SPRAGUE and EDWARD WHELAN, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> Civil Action No. 1:20-cv-11456-IT <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

March 18, 2025

TALWANI, D.J.

Pending before the court is Plaintiff Frederick Weichel's Motion for Summary Judgment Against Defendants Buker, Derby, Polio, and Wilson ("Plaintiff's MSJ") [Doc. No. 237].[1] For the following reasons, the motion is DENIED as to Defendant Walter Derby and DENIED as moot as to Defendants Theodore Buker, John Vincent Polio, and Robert Wilson.

---

[1] Also pending is Defendant Estate of Edward Walsh's Motion for Summary Judgment [Doc. No. 287], which will be addressed in a separate order.

I.   **Background**

In 1981, Weichel was convicted of the first-degree murder of Robert LaMonica. In 2017, a Massachusetts court granted Weichel's motion for a new trial and the Commonwealth of Massachusetts subsequently dropped all criminal charges against him. Plaintiff, who had been imprisoned for 36 years, brought this lawsuit asserting wrongdoing by Boston and Braintree police officers, including Braintree Police Officers Buker, Polio, and Wilson, and Boston Police Officers Walsh and Derby, all of whom were deceased at the time the lawsuit was filed. The Complaint [Doc. No. 1] included indemnity claims against the City of Boston ("Boston") and the City of Braintree ("Braintree").

Plaintiff moved for a court order allowing him to proceed against these deceased Defendants, see Motion [Doc. No. 29], and Boston and Braintree moved to dismiss Plaintiff's indemnification claim, see Boston's Mot. [Doc. No. 4]; Braintree's Mot. [Doc. No. 41]. The court granted Boston's and Braintree's motions, concluding:

> Plaintiff lacks statutory standing to assert an indemnification claim against the municipalities. . . . Notwithstanding any agreements that the municipalities may have made to indemnify the defendant police officers, it is for the officers, not Weichel, to bring an indemnification claim against their municipal employers should they be found liable for the misconduct alleged. . . . Because Weichel lacks statutory standing to bring an indemnification claim against Boston and Braintree, he has failed to state a claim upon which relief can be granted.

Elec. Order [Doc. No. 85] (citations omitted) (emphasis in original). At the same time, the court denied Plaintiff's motion, finding, inter alia, that Plaintiff did not need a court order to allow him to proceed against the deceased Defendants in order to seek a judgment that could only be satisfied from the proceeds of a policy of liability bond or liability insurance, and that service of process should be made upon the entity providing the insurance or bond. Elec. Order [Doc. No. 86] (citing M.G.L. c. 190B, § 3-803(d)(2)). The court did not determine whether Boston or Braintree in fact provided insurance or bond for the claims against the deceased Defendants.

2

The court subsequently granted Weichel's unopposed motion for leave to amend his Complaint [Doc. No. 1] to, among other things, name Derby in his individual capacity. See Pl.'s Mot. for Leave to File Am. Compl. ¶ 8 [Doc. No. 90]; Elec. Order [Doc. No. 92]. Weichel filed his Amended Complaint [Doc. No. 93] and served it on Boston and Braintree. See Proof of Service [Doc. Nos. 95-97].

Both Braintree and Boston filed motions to dismiss the claims against the deceased Defendants. Braintree's Mot. to Dismiss [Doc. No. 99]; Boston's Mot. to Dismiss [Doc. No. 114].[2] The court found as follows:

> Application of § 3-803(d)(2) of the Massachusetts Uniform Probate Code[] has resulted in the unusual posture of this case. The court construes that provision as follows. First, because the action is maintained by "naming the decedent as the defendant," the deceased officers—and not the municipalities purportedly providing the insurance or bond—are the defendants, even though the municipalities have been served with process. Second, because the action remains against the deceased officers and the provision does not impose a duty to defend on the municipalities, the municipalities may choose not to engage in this matter unless the deceased officers are found liable. In that event, however, the municipalities' defense would be limited to whether they have an obligation to satisfy the judgment; they could not challenge the underlying judgment. Finally, because the provision includes service of process rather than just notice, each municipality purportedly providing the insurance or bond has been summoned to court. Accordingly, they may at this time choose to defend as to the merits of the underlying claims against the deceased officers in addition to defending against the claim that they have an obligation to satisfy any judgment that may enter. Here, Braintree and Boston have sought to address both the merits of the dispute and the question of any obligation to satisfy a potential judgment.

Mem. & Order 4-5 [Doc. No. 129] (footnote omitted). As to the merits of the dispute, the court extended rulings it had reached as to the individual Defendants who had appeared, denying the

---

[2] Boston identified itself in that motion and in the opposition to the pending motion as a "non-party." Where Boston claims an interest in these proceedings, the court treats Boston as a permissive intervenor who is bound by the court's orders. See also Elec. Clerk's Notes (granting Boston's oral motion for permissive intervention) [Doc. No. 305].

motions to dismiss for statute of limitations grounds and based on qualified immunity, except that the court granted dismissal on qualified immunity grounds as to the claim for failure to intervene. Id. at 5 (citing Mem & Order [Doc. No. 88]; Mem. & Order [Doc. No. 128]).

The court explained further that Braintree and Boston had both argued in their motions that they cannot be held liable for any judgment against the deceased officers. Id. The court explained that on a motion to dismiss, the court could address certain legal issues raised by the municipalities but not the factual disputes. Id. On the legal issues, the court found as follows:

> First, to proceed under § 3-803(d)(2), a plaintiff's claims must be for personal injury. Weichel has met that requirement. "Massachusetts courts consistently embrace a broad understanding of personal injury claims," Rosario v. Waterhouse, 2019 WL 4765082, at *3 (D. Mass. Sept. 27, 2019) (collecting cases), and other courts in this district have concluded that section 1983 claims constitute action "in tort" for "damage" within the meaning of the Massachusetts survival statute, Mass. Gen. Laws ch. 228, § 1, see, e.g., Pomeroy v. Ashburnham Westminster Reg'l Sch. Dist., 410 F. Supp. 2d 7, 14 (D. Mass. 2006). Weichel's claim for intentional infliction of emotional distress likewise survives the officers' deaths. See Harrison v. Loyal Protective Life Ins. Co., 379 Mass. 212, 218, 396 N.E.2d 987 (1979) ("we conclude that the tort of intentional infliction of emotional distress (whether with or without physical injury) survives the death either of the victim or the tortfeasor").
>
> Second, Boston and Braintree argue that Weichel's claims are barred where the court has already concluded that Weichel lacks statutory standing to assert an indemnification claim against the municipalities. See Elec. Order [Doc. No. 85]. But the claims at issue are not claims for indemnification. Rather, they are claims against the deceased defendants. If Weichel is successful in prevailing on such claims, the issue will then be whether the municipalities would have had an obligation to satisfy such judgments if the defendants were not deceased.
>
> Third, Boston and Braintree are correct that there is no obligation under Mass. Gen. Laws ch. 258, § 9, that requires them to satisfy any judgment recovered against the deceased officers. Section 9 provides in relevant part that "[p]ublic employers may indemnify public employees . . . from personal financial loss, all damages and expenses, including legal fees and costs, if any, in an amount not to exceed $1,000,000 arising out of any claim, action, award, compromise, settlement or judgment by reason of an intentional tort, or by reason of any act or omission which constitutes a . . . violation of the civil rights of any person under any federal or state law, if such employee . . . at the time of such intentional tort or such act or omission was acting within the scope of his official duties or employment. No such employee or official . . . shall be indemnified under this section for violation of any civil rights if he acted in a grossly

4

> negligent, willful or malicious manner." Id. § 9 (emphasis added). Section 9 accordingly provides "public employers with the discretion to indemnify public employees for financial loss and expenses arising from certain civil actions (intentional torts and civil rights violations)" if the conditions authorizing indemnification are satisfied. Triplett v. Town of Oxford, 439 Mass. 720, 726, 791 N.E.2d 310 (2003) (emphasis in original); see also Clickner v. City of Lowell, 422 Mass. 539, 542, 663 N.E.2d 852 (1996) (section 9 "provides for the permissive indemnification of public employees"); Pinshaw v. Metropolitan District Commission, 402 Mass. 687, 693 n.10, 524 N.E.2d 1351 (1988) ("Section 9, unlike § 9A [which addresses indemnification of state police employees], deals with permissive, not mandatory, indemnification of public employees"). Because indemnification under this statute is discretionary, Weichel cannot rely on this provision alone to require Boston or Braintree to satisfy any judgment against the deceased officers.
>
> Fourth, Boston argues that even if collective bargaining agreements existed that provide for indemnification, Weichel would have no mechanism by which to enforce them. But the question is not whether Weichel would be able to enforce them; rather, it is whether the deceased officers would have been able to claim indemnity under such agreements.

Id. at 5-7 (footnotes omitted).

The court noted Boston's and Braintree's further arguments "that Weichel has failed to demonstrate that the municipalities would owe insurance or bond as to the deceased defendants, that any collective bargaining agreements exist to provide for such coverage, or that Weichel (or in the court's construct, the deceased officer) could enforce any such agreements." Id. at 7-8. The court found these questions premature on a motion to dismiss where "Weichel's Amended Complaint [Doc No. 93] does not, on its face, seek indemnification from Boston or Braintree for a judgment against the deceased officers. Accordingly, since Weichel has yet to seek such relief, the court declines to apply the Rule 12(b)(6) standard to address whether Weichel has stated sufficient facts to pursue this claim against Boston or Braintree." Id. at 8. The court noted that although Boston and Braintree sought resolution of the indemnification issue at this stage (presumably before they incurred additional costs in defending the deceased officers), they had

5

not filed a pleading (such as a third-party complaint for declaratory relief) placing the issue directly before the court. Id.

Braintree subsequently filed an Answer and Counterclaim for Declaratory Judgment [Doc. No. 134]. Boston opted not to respond further, leaving its defense limited to whether it has an obligation to satisfy a judgment against Derby.

After some discovery, Weichel filed the pending motion for summary judgment. The court subsequently stayed the case for mediation. Following mediation, on Weichel and Braintree's joint motion, the court dismissed Defendants Buker, Polio, and Wilson, among others. See Motion [Doc. No. 277]; Order [Doc. No. 279]. Derby is thus the only remaining Defendant at issue in Plaintiff's Motion.

Boston has opposed the Motion.

**II.     Legal Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Baker v. St. Paul Travelers, Inc., 670 F.3d 119, 125 (1st Cir. 2012). A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be satisfied in two ways: (1) by submitting affirmative evidence that negates an essential element of the non-moving party's claim or (2) by demonstrating that the non-moving party failed to establish an essential element of its claim. Id. at 323-324.

6

Once the moving party establishes the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to set forth facts demonstrating that a genuine dispute of material fact remains. Id. at 314. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of [the] pleadings." Anderson, 477 U.S. at 256. Rather, the non-moving party must "go beyond the pleadings and by [his or] her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). Disputes over facts "that are irrelevant or unnecessary" will not preclude summary judgment. Anderson, 477 U.S. at 248.

When reviewing a motion for summary judgment, the court must take all properly supported evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Anderson, 477 U.S. at 255.

### III.  Discussion

Putting aside Boston's attempt to relitigate the legal conclusions set forth above, the critical issue presented is whether Boston is "the entity providing the insurance or bond" from which any judgment in this action against Derby would be satisfied. M.G.L. c. 190B, § 3-803(d)(2). If it is, then Weichel is entitled to a default judgment as to Derby, and Boston will be collaterally estopped from refusing to satisfy that judgment. If it is not, then a default judgment may not be entered where no other "entity providing the insurance or bond" was served.

Weichel argues that Boston has a practice "so consistent and pervasive as to constitute municipal policies to indemnify officers for misconduct occurring in the scope of employment."

7

Pl.'s MSJ at 22 [Doc. No. 237]. Weichel cites three cases in support of this argument. First is Monell, which stands for the general proposition that a local government entity may be held responsible under 42 U.S.C. § 1983 "when execution of [that] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978); see also id. at 661 n.2 (defendants did not deny allegations of citywide official policy). Second is Connick, in which the Supreme Court held that, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011); see also id. at 71-72 (finding district attorney was not deliberately indifferent to the need to training attorneys under his authority and thus not liable under section 1983). Finally, Weichel cites a district court case finding that an individual police officer's misconduct did not implicate Section 1983 liability under a failure-to-train theory. Schand v. City of Springfield, 380 F. Supp. 3d 106, 133 (D. Mass. 2019). None of these cases sheds any light on whether Boston may be deemed to have established a policy here.

Weichel argues there is no genuine issue of material fact that Boston is the entity providing the insurance or bond for Derby because it has a pervasive and consistent policy of indemnifying its police officers. In support, he proffers the Declaration of James Megee ("Megee Decl.") [Doc. No. 237-3] as a designated agent of Boston, for the following undisputed facts. Boston was self-insured at all relevant times. Megee Decl. ¶ 2. Boston has paid 23 judgments and/or settlements arising from claims against Boston police officers from 2018 to present. Id. ¶ 4 & Ex. A. Boston has also "agreed to provide legal representation for other officers" related to

such claims. Id. ¶ 5. In that timeframe, Boston has declined to represent and indemnify only one Boston police officer for alleged on-duty misconduct. Id. ¶ 6 & Ex. B.

At the same time, Boston states that "requests for representation and indemnification are assessed on a case-by-case basis" and that "[t]here are no written policies or criteria by which [Boston] adheres when determining whether to represent and/or indemnify a City employee, including a law enforcement officer for claims related to the scope of that officer's employment." Id. ¶ 7. In the absence of an applicable indemnification policy, Weichel must provide competent evidence that Boston has obligated itself to exercise its discretion to indemnify Derby in this case under M.G.L. c. 258, § 9.

Weichel points to two collective bargaining agreements ("CBAs") between Boston and its police officers, both of which contain the following provision: "The City will represent and indemnify bargaining unit members to the extent permitted by M.G.L. c. 258 § 9." Pl.'s Reply, Ex. 2 at 45, § 13 [Doc. No. 297-2]; id., Ex. 3 at 58, § 11 [Doc. No. 297-3].[3] Boston argues that the contractual language "essentially state[s] that the City will represent and indemnify based on § 9 on a discretionary basis, not a mandatory one." Boston Surreply at 2 [Doc. No. 303] (emphasis in original). Boston contends that if the parties wanted to allow for mandatory representation and indemnification, they could have bargained instead for Boston's ratification of the mandatory indemnification provision of M.G.L. c. 258, § 13. Id. But the two statutory provisions are quite different: § 13 covers claims for acts or omissions within the scope of official duties or employment "except an intentional violation of civil rights of any person" (emphasis added), while § 9 covers claims for acts or omissions within the scope of official

---

[3] Although these CBAs were first cited in Weichel's reply, the court has allowed Boston to file a surreply. See Elec. Order [Doc. No. 301].

9

duties or employment including "an intentional tort . . . or violation of the civil rights of any person under any federal or state law," unless "he acted in a grossly negligent, willful or malicious manner." Section 9 thus covers claims like the civil rights claims and intentional torts at issue here (and as generally alleged in police misconduct cases), while § 13 would not.

Boston also cites Mazza v. City of Bos., 2024 WL 4505328, at *6 (D. Mass. Oct. 15, 2024), which found identical CBA language "makes indemnification permissive, not mandatory, and permits [Boston] to indemnify or not on a case-by-case basis." This court reads the CBAs slightly differently, finding the discretion limited, but nonetheless finds the CBAs of no assistance to Weichel.

Under the CBAs, Boston is obligated to indemnify bargaining unit members "to the extent permitted by M.G.L. c. 258 § 9." Section 9 does not allow for indemnification where the officer "acted in a grossly negligent, willful or malicious manner," but otherwise provides for indemnification "from personal financial loss" for claims for intentional torts and civil rights violations for acts in an officer's official duties or employment. M.G.L. c. 258 § 9. Accordingly, this court finds Boston is required under the CBA to indemnify officers "from personal financial loss" for claims for intentional torts, except where the officer "acted in a grossly negligent, willful or malicious manner." Id.[4]

---

[4] The court notes that the only officer identified by Boston who was denied a defense and indemnification for alleged on-duty misconduct was advised by the City of Boston Law Department that it would not be representing him "in light of [his] recent termination . . . in part due to the allegations as alleged in the [civil matter]." See Megee Decl., Ex. B [Doc. No. 237-3]. This denial appears to be consistent with the court's reading of the mandatory aspect of the CBAs' coverage. And Boston's current representation of the Estate of Officer Walsh in this matter is also consistent with the CBA obligations.

Based on the facts in the record, Boston is not obligated under the CBA to defend or indemnify Derby where there is no possibility of "personal financial loss" to him or his estate. Because the record does not support a finding that Boston is obligated to indemnify Derby, the court finds that Weichel has failed to properly serve him.[5] Weichel's <u>Motion for Summary Judgment</u> [Doc. No. 237] against Derby is therefore denied.

### IV.    Conclusion

For the foregoing reasons, Weichel's <u>Motion for Summary Judgment</u> [Doc. No. 237] is DENIED as to Defendant Derby, and DENIED as moot as to terminated Defendants Buker, Polio, and Wilson.

IT IS SO ORDERED.

March 18, 2025                                          /s/ Indira Talwani
                                                        United States District Judge

---

[5] Weichel's reply seeks to disaggregate Boston's indemnification obligation from Weichel's right "to pursue his action . . . regardless of whether he ever gets paid." Pl.'s Reply at 2 [Doc. No. 297]. But Weichel cannot pursue this action without proper service. And because the defendant was deceased more than a year at the time the action was brought, service can only be made "upon the entity providing the insurance or bond." M.G.L. c. 190B, § 3-803(d)(2). Plaintiff has not shown that Boston is such an entity for Derby.